United States District Court Northern District of California

**FILED**

MAR 11 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

Dr. Rhawn Joseph, Ph.D. pro se
408-286-9833
677 Elm St. San Jose, CA    95126
RhawnJoseph@Gmail.com

Case Number:
Filed:
Judge:

**CV 19 1294 LHK**

----------------------------------------------}

Dr. Rhawn Joseph, Ph.D.                          }
Plaintiff                                                     }
                                                                   }
                                                                   }
v                                                                }
                                                                   }
City of San Jose, a municipal                    }
corporation; Dave Sykes; Rosalynn          }
Hughey; Mollie McLeod; Sean               }
Flanagan; Jason Gibilesco, sued in          }
their individual capacities; Does              }
1-10.                                                         }
Defendants                                               }
                                                                   }
_____}

PLAINTIFF'S COMPLAINT:

VIOLATIONS OF PLAINTIFF'S FIRST, FOURTH, FIFTH,

AND FOURTEENTH AMENDMENT RIGHTS.

(42 U.S.C. § 1983 AND MONELL 436 U.S. 658 (1987))

VIOLATIONS OF THE BANE ACT

(CAL CIV. CODE § 52.1)

VIOLATIONS OF THE RALPH ACT

(CAL CIV. CODE § 51.7)

VIOLATION OF DUE PROCESS, EQUAL PROTECTION,

PERSONAL INJURY

NEGLIGENCE

DEMAND FOR INJUNCTIVE, DECLARATORY RELIEF

## INTRODUCTION

### I.   OVERVIEW: DEFENDANTS VIOLATIONS OF PLAINTIFF'S RIGHTS

1. As exemplified by the case of Hernandez vs San Jose, the City of San Jose, which is managed by Defendant Dave Sykes, has a recent and well documented history of employing a city department and the Chief of that Department and its officers, to selectively target and violate the First and Fourteenth Amendment rights of private citizens and groups of citizens who are disliked by top city officials and employees (HERNANDEZ et al vs City of San Jose, United States Court of Appeals for the Ninth Circuit, No 17015576, D.C. 5:16-cv03957-LHK).

2. In the present case, the City of San Jose, Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and code enforcement officers Sean Flanagan and Jason Gibilesco have engaged in a criminal conspiracy and a personal vendetta to make false allegations; to attribute alleged complaints of alleged code violations to citizens who don't exist; and to manufacture fake evidence; and to erase, alter and backdate that fake evidence; to harass and expose this Plaintiff to physical and emotional harm; have used threats and intimidation in attempts to force Plaintiff to destroy his property including his healthy Cypress trees, wrought iron fencing, and beautiful park-like landscaping; and have selectively targeted and violated this Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment Rights including his rights to due process and equal protection under the law. Moreover, this policy of retribution has been officially ratified and directed by Dave Sykes and Rosalynn Hughey in order to selectively retaliate against and harm this Plaintiff and his property.

3. Plaintiff was targeted for injury as part of a personal vendetta, as he defied the Defendants' threats, harassment, and acts of intimidation to which most private citizens, who, lacking the financial and legal resources to resist, succumb when bullied by the Department of Code Enforcement.

4. Specifically, in October of 2018, Defendants sought to force Plaintiff to remove a back-side-yard abatement which is completely legal and protected by law (California Civil Code § 3501, 3502; CPC § 198.5 – 199). This legal abatement prevents Plaintiff's next door neighbor Mr. Gene Kasrel from trespassing, and threatening and intimidating Plaintiff, and from tossing dogs feces and rocks into Plaintiff's yard and against his house, and which prevents Kasrel from shining powerful flood lights into Plaintiff's windows at night—crimes for which there is ample documentation in San Jose police and Neighborhood Mediation reports.

5. Demanding that Plaintiff remove his legal abatement, while allowing Kasrel to harrass Plaintiff with his illegal lights, is a violation of the Equal Protection Clause of the Fourteenth Amendment.

6.  Plaintiff, citing California law, informed the Defendants he had erected and was now refusing to remove his legal abatement because Code enforcement had, for two years, repeatedly refused to order Kasrel to remove his illegal and quite powerful flood lights which were directed at and brightly illuminating Plaintiff's house, yard, and windows at night (Figures 1, 2).

7. Plaintiff has lived in his Elm St home since 1986. However, when Plaintiff refused to remove his legal abatement when so ordered in October of 2018, the Defendants, beginning in November 2018, maliciously retaliated and filed two fake code violations and repeatedly threatened and sought to force Plaintiff to destroy his beautifully maintained and completely healthy 33-year old Cypress trees when there are no San Jose codes regulating the height or number of trees a citizen may grow. Defendants also sought to force Plaintiff to destroy his front yard wrought iron fence which in all respects is code compliant and which has been in place since Plaintiff purchased his home over 30 years ago. And Defendants have threatened Plaintiff with $2,500 a day fines if Plaintiff did not destroy his property in less than 30 days.

8. Defendants, therefore, acting on a personal vendetta, retaliated, engaged in fraud, and acting under color of law violated this Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights including due process and equal protection under the law.

9. Specifically, and in further defiance of the Equal Protection Clause, Defendants ignored the fact that every home on Plaintiff's side of the street, including the home of Plaintiff's next door neighbor, Kasrel, has a front yard fence or fence adjacent to the sidewalk which is in violation of code and two to four feet taller than Plaintiff's fence which is completely code compliant (Figures 3-11). And Defendants ignored the fact that Kasrel has an illegal 12-14 foot hedge serving as a secondary illegal fence adjacent to the sidewalk as do other neighbors (Figures 3). In effect, Defendants have decreed that Plaintiff is the only citizen of San Jose who is not allowed to have trees or a front yard fence—and this is a violation of Plaintiff's right to due process and equal protection.

10. The Defendants have severely and profoundly injured this Plaintiff and are also seeking to expose him to and cause him future injury and this is actionable (see Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); Lujan v. Defenders of Wildlife, 504 U.S. 555, 564, n. 2 (1992); see also 42 U.S.C. § 7408 (a)(1)(A); 42 U.S.C. § 7521(a)(1); see Zook v. EPA, 611 F. App'x 725, 726 (D.C. Cir. 2015); Massachusetts v. EPA, 549 U.S. 497, 528 (2007)).

11. If forced to remove his expensive wrought iron fencing, which has been in place since 1986 and is completely code-compliant, nearly $100,000 in front-yard statuary will be exposed to theft and will have to be removed. Coupled with the forced-removal of Plaintiff's Cypress trees, landscaping, which has

been in place since 1986 will be destroyed and Plaintiff will be subject to additional damages and personal injuries. Moreover, nearly $100,000 in decorative cedar stained wood "moulding" used as a decorative facade to beautify the outside of Plaintiff's 100+ year old home, will be exposed to direct sunlight for much of the day and will be damaged and destroyed. In addition, as Plaintiff's Cypress trees also serve to legally abate excessive noise (California Civil Code § 3501, 3502), if destroyed, airport noise levels will increase by 15db, to 85 db, well over the legal limit, thereby causing Plaintiff additional injury.

12. By demanding that Plaintiff remove his legal abatements, Defendants' are exposing Plaintiff to harm and aiding and abetting Kaserl which makes the Defendants party to his crimes. By removing the legal back-side-yard abatement, Plaintiff would again be subject to Kasrel's illegal flood lights, and Kasrel would feel protected and encouraged to escalate his already violently destructive and harmful conduct.



Figure 1. 665 Elm St. Photographed from Street at approximately 11 PM in October, 2018, approximately 35 yards from Kasrel's high powered flood lights which are attached to the side of his home (approximately 25 feet set back from the font of his house) facing and illuminating Plaintiff's abatement erected in Plaintiff's yard.



Figure 2. Photographed in 2017, prior to abatement. Kasrel's high powered flood lights illuminating side of Plaintiff's house, and the tops of Plaintiff's front yard Italian cypress trees, 25 yards to 35 yards distant from Kasrel's flood light fixture.

13. The actions of the Defendants has caused harm and are creating additional dangers, including future harm; and this is actionable (L.W. v. Grubbs, 974 F.2d 119, 121-22 (9th Cir. 1992); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); Lujan v. Defenders of Wildlife, 504 U.S. 555, 564, n. 2 (1992); see also 42 U.S.C. § 7408 (a)(1)(A); 42 U.S.C. § 7521(a)(1); see Zook v. EPA, 611 F. App'x 725, 726 (D.C. Cir. 2015); Massachusetts v. EPA, 549 U.S. 497, 528 (2007))..

14. On November 10, 2018, when Plaintiff contacted and emailed a community group devoted to the protection of trees, and publicly accused Code Enforcement and Jason Gibilesco of acting on an illegal personal vendetta so as to harm Plaintiff and illegally destroy his trees—and which was cc to Gibilesco--the Defendants subsequently altered the date of the alleged code violation and backdated official records (e.g. from November 6 to October 6, 2018) to hide Gibilesco's and the Defendants'

criminal culpability and to make it look as if these alleged violations were part of the original complaint about the abatement; conduct which is a violation of California PC 132-135 which makes it a crime to fake, forge, or incorrectly date written evidence in any kind of legal proceeding. The Defendants altered evidence they thought would be used against them.

15. In February of 2019, after Defendants finally realized that "trees" are not "bushes" or "shrubs", and that "trees" and that "Cypress trees" are not regulated by code, the Defendants created then again altered and backdated (to October 6, 2018) an additional complaint specifically targeting Plaintiff's "Cypress trees," and in so doing, again violated CPC 132-135, and Plaintiff's rights to due process and equal protection.

16. When Plaintiff demanded an Administrative hearing, Defendants again violated Plaintiff's rights to Due Process, and refused to provide any records, memorandum, photographs, factual evidence, or identify any alleged citizens who allegedly filed the alleged code-violation complaints. Further, Defendants have been unable to provide any evidence or identify any wording in Code which forbids Plaintiff's Cypress trees or the height of his wrought iron fence which in fact are code compliant. Defendants also refused Plaintiff's demand that the Administrative hearing be chaired by a neutral arbitrator/lawyer/mediator listed on the Santa Clara County Superior Courts website. Instead, the Defendants appointed themselves judge, jury, prosecutor, witness, executioner—and as such they have also violated California Administrative Law and Procedure § 38, at 75-79 (1952).

17. Plaintiff appealed this illegal Administrative hearing to no avail.

18. Plaintiff has exhausted all administrative remedies.

19. In all respects the Defendants have behaved fraudulently, dishonestly, maliciously, whimsically, unreasonably, and their fraudulent claims of code violations are arbitrary, capricious, oppressive and unjust and as such they have violated and continue to seek to violate this Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights including the right to free speech, freedom of religion, the right to due process, the right to equal protection under the law, California Administrative Law, and 42 U.S.C. § 1983, and have aided and abetted hate crimes against Plaintiff (see 2 CAL. JuR. 2d, Administrative Law and Procedure § 38, at 75-79 (1952); Ontario v. Quon, 130 S.Ct. 2619, No. 08-1332, 560 U.S. 746 (2010); Mapp v. Ohio, 367 U.S. 643 (1961)

20. The Defendants' violation of Plaintiff's First, Fourth, Fifth and Fourteenth Amendment Rights are actionable and must be heard by this Court as they concern Federal Questions (see 28 U.S.C. § 1331 and §1343; 42 U.S.C. § 1983).

## JURISDICTION AND VENUE

**21.    Jurisdiction and Venue**

22.    This action arises under 42 U.S.C. § 1983 § 1988 in relation to the Defendants' violation of and deprivation of Plaintiff's constitutional rights, the First, Fourth, Fifth, and Fourteenth Amendments, and the Civil Rights Act. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction pursuant to 28 U.S.C. 1367 over the related claims.

23. This action is also brought pursuant to the United States Constitution and the laws of California.

24. This action details ten causes of action and seeks damages as well as declaratory and injunctive relief (Federal Rule of Civil Procedure 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 ,570 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

25.    This action is also authorized by Article III, Section 2, which extends the federal judicial power to all cases arising in equity under the Constitution. "The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution." Obergefell v. Hodges, 576 U.S. ____, slip. op. at 10 (2015).

26.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (creation of a remedy), and 28 U.S.C. § 2202 (further relief) as this action arises under the laws of the United States.

27.    This Court has original jurisdiction over these Federal claims pursuant to 28 U.S.C. § 1331 and §1343.

28.    This Court has authority to grant the requested declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

29.    This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

This Court has personal jurisdiction over the Defendants, because each Defendant is domiciled in the State of California,

30.    Supplemental jurisdiction is asserted over state law claims pursuant to 28 U.S.C ' 1367.

31.    Venue is proper pursuant to 28 U.S.C. 1391(b,e) and Section 552(a)(4)(B), and 5 U.S.C. § 552(a)(2)(A), (3)(A),(C), (6)(A)(ii), (F), in that the Plaintiff's claims arose in the Northern Judicial District of California and as all Defendants are incorporated or live in California.

32. Plaintiff is entitled to obtain injunctive relief and damages (see Alexander v. Sandoval, 532 U.S. 275, 279-80 (2001) as the city of San Jose is a recipient of federal funding and subject to Title VI.

## INTRADISTRICT ASSIGNMENT

32. This Action is properly assigned to the San Jose Division of the Court, as the conduct giving rise to this dispute occurred in Santa Clara County, California.

## PARTIES

### 34.   Plaintiffs

35.     Plaintiff Dr. Rhawn Joseph, Ph.D. in a resident of and since 1986 has lived in his home at 677 Elm St., San Jose, CA 95126

### 36.   City Defendants

37. Defendant City of San Jose, is a municipal entity duly organized and existing under the laws of the State of California, and subject to Federal Laws and the United States Constitution and Bill of Rights.

38. Defendant Dave Sykes who served as Director of Code Enforcement, was at all times relevant to this Complaint the San Jose City Manager, and is believed to be a resident of San Jose. Sykes is being sued in his individual capacity

39. Defendant Rosalynn Hughey, and at all times relevant to this Complaint was the Director of San Jose Code Enforcement, and is believed to be a resident of San Jose. Hughey is being sued in her individual capacity.

40. Defendant Mollie McLeod, and at all times relevant to this Complaint was the San Jose Code Enforcement Division Manager, and is believed to be a resident of San Jose. McLeod is being sued in her individual capacity.

41. Defendant Sean Flanagan, and at all times relevant to this Complaint was a San Jose Code Enforcement Officer, and is believed to be a resident of San Jose. McLeod is being sued in his individual capacity.

42. Defendant Jason Gibilesco, and at all times relevant to this Complaint was a San Jose Code Enforcement Officer, and is believed to be a resident of San Jose. Gibilesco is being sued in his individual capacity.

43. Plaintiff is not aware of the true names and capacities of Defendants sued as Does 1 through 10, but will amend this complaint when their true names and capacities are discovered.

Plaintiff has not named Gene Kasel as a Defendant, but may amend this complaint and name Kasrel as a Defendant when further details are discovered.

44. Plaintiff believes and alleges that each of the named Defendants are legally responsible and liable for the damages and injuries set forth in this complaint; and that each Defendant proximately caused or aided and abetted the injuries and damages set forth in this Complaint, because of his or her active participation, and/or because of his or her negligence, breach of duty, negligent supervision, management or control, violation of public policy, and tortious conduct. Each Defendant is liable for his/her personal conduct, vicarious or imputed, including negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, entrustment, custody, care or control or upon any other act or omission.

45. In committing the acts alleged herein, Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco inclusive, and each of them, acted under color of law, within the course and scope of their employment with the City and conspired together, aided and abetted, participated in and/or approved of the illegal acts and/or omissions alleged herein thus making these acts official policy, and acted as the agent, servant, and employee and/or in concert with each of the other Defendants whom they aided and abetted.

46. Dave Sykes, Rosalynn Hughey, Mollie McLeod, Sean Flanagan, Jason Gibilesco, and the City of San Jose are referred to collectively as the "Defendants."

## FACTUAL BACKGROUND
### 47. Abatement: Gene Kasrel, Hate Crimes, Harassment, Assault, Property Damage.

48. As detailed in the samples of the many police reports, complaints, and requests Plaintiff has filed for mediation from city-affiliated Neighborhood Mediation services dept: Gene Kasrel who is obese, unemployed, and often intoxicated, has harassed Plaintiff and female visitors to Plaintiff's home, physically attacked and assaulted this Plaintiff, issued death threats, demanded and attempted to extort large sums of money on threat of violence, has climbed onto the adjoining fence and issued death threats while waving dangerous implements at Plaintiff; has pounded on the adjoining fence (which separates his home from Plaintiff's own) and has climbed the fence with a rake in his hand and while leaning over the fence and trespassing has destroyed tree limbs and grape vines on Plaintiff's property; and in the summer of 2016 began shining high powered flood lights into Plaintiff's yard, home and windows at night. Kasel is Plaintiff's next door neighbor.

49. On or about October 1, 2018, Plaintiff erected a legal abatement, on Plaintiff's property, to prevent Kasrel from harassing and shining flood lights at Plaintiff home; an abatement authorized by California Civil Codes §§ 3501, 3502

50. On or about October 19, 2018, Defendants demanded the removal of the legal abatement which protects Plaintiff from Gene Kasrel, despite official complaints by this Plaintiff to Code Enforcement beginning in the summer of 2016 and their knowledge that Kasrel was shining his flood lights at Plaintiff's home and into Plaintiff's windows at night. Defendants were completely indifferent to Kasrel's threatening, damaging conduct, and violation of code; i.e. light pollution.

51. On October 20, 2018, Plaintiff provided to Defendants Sean Flanagan and Rosalynn Hughey a 12 page letter detailing the danger and threats Kasel posed, the damage he had done, and his use of illegal flood lights to illuminate Plaintiff's home and windows, the laws giving Plaintiff the right to abate his criminal activity; and Plaintiff included just a sample of the many complaints filed against Kasrel with the San Jose Police Department, and Neighborhood Mediation Services whom Plaintiff contacted in the hope of bringing the violence against him to an end via mediation intervention. Defendants were completely indifferent

### SAMPLE OF SJPD AND NEIGHBOROOD MEDIATION COMPLAINTS AGAINST GENE KAREL / 665/667 ELM ST, 95125

52. COMPLAINT: NEIGHBORHOOD   DISPUTE RESOLUTION PROGRAM: (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / MAY 22, 2015
-Gene Kasrel, residing at 665 Elm St, harassment, threats, vandalism, yelling and screaming at Dr. Joseph and his female companion

53. COMPLAINT: NEIGHBORHOOD   DISPUTE RESOLUTION PROGRAM (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / MAY 22, 2015

54. I've attached two photos taken this month of me and my GF/Fiancee---I met her in 2009 and I've been dating her for the last 2 years, and I believe she is the # 1 reason my neighbor has been going KrAzy and yelling and screaming at me about how I am a horrible person and how life is unfair.   When yelling he has made specific references to her breasts and body and has referred to her as a slut and a whore. He is also upset about the women who visited my home in the past, and he has a delusion I am sexually attracted to his mother (I assure you, I am not).

55. He has yelled and screamed at me in front of other neighbors and on four separate occasions when I was outside with my fiancee, with the most recent incidence taking place when he saw us walking in the street, arm-in-arm- going to my house---and this is when he ran up and attacked me in front of my house after she had gone inside---and when I defended myself he ran away yelling and laughing: "I got you. I got you."

56. He is obsessed with me, and he is borderline delusional--I also know he has a significant problem with alcohol, and he is grossly obese and has no job, but lives off his mother's income in one of the two units of the duplex she purchased around 2002 (I've lived in my home since 1986).

57. Specifically his name is:
58. Gene Kasrel,
59. 665 elm s
60. San Jose, CA   95126

61. COMPLAINT: NEIGHBORHOOD DISPUTE RESOLUTION PROGRAM: MAY 26, 2015
62. On Tuesday, Mr Kasrel stood outside my house yelling about my new Camero and screaming that I want to have sex with his mother. I called the San Jose Police who arrived and calmed him down.

63. "When the cops asked him what if anything I had done to him, he just stared at them as if he was in a daze. He couldn't come up with anything, except that "life is unfair", and then he began the litany about his mother, my gf, the women, my driving down the street slowly.... He's nuts. Very dangerous. And he's getting worse."

64. "My neighbor across the street has told me he is often drunk and a few months ago was jumping up and down his own vehicle, yelling in a friendly drunken fashion at "Sally" who lives directly across the street from him; yelling "Look at me Sally! Look at me!!!"

65. COMPLAINT: NEIGHBORHOOD   DISPUTE RESOLUTION PROGRAM (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / June 3, 2015

66. "Yesterday, around 3 PM, Mr. Gene Kasrel climbed partially up onto the fence separating my yard from his and using a rake began attacking my plum tree, tearing off branches and knocking down fruit, and using the rake to pull fruit-laden branches into his side of the fence at which point he tore entire branches away and collected the fruit which I heard him putting into a container. I went to retrieve a camera but he climbed down before I could take pictures.

67. I've kept my trees and plants trimmed so everything is on my side of the fence, and had this tree braced to keep it leaning to far in his direction, but he was actually attempting to pull the tree to his side of the fence so he could attack the tree and steal fruit. I know stealing fruit from neighbors is illegal, but I didn't bother calling the police. But just the same, to look up and see his angry, enraged face and his upper body hanging over this fence into my yard and swinging that rake like a weapon---IT IS VERY STRESSFUL. He is crazy and dangerous.

68. I am presuming he has not yet responded to the request for Neighborhood Mediation. I remain hopeful, but skeptical, that mediation will prove successful."

69. COMPLAINT: NEIGHBORHOOD   DISPUTE RESOLUTION PROGRAM (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / June 26, 2015
Dear Ms. Alverez, Please send a second letter to Mr. Kasreal

70. "On or about June 22, Mr. Kasrel stood in front of my gate yelling "Fuck you. Fuck you. Fuck You God dam you." Later that same day he stood next to our common fence (in the same area

where he attacked my plum tree) yelling over and over: "Fuck you. Fuck you. Fuck You God dam you."

71. On or about June 13, my female companion told me he was looking at her over the fence and she was afraid he was trying to take pictures of her."

72. COMPLAINT: NEIGHBORHOOD   DISPUTE RESOLUTION PROGRAM (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / July 13, 2016
-Gene Kasrel: Continued Harassment, Dearth Threats

73. Dear Ms. Alverez,

74. Last year, I opened a case for mediation, regarding the continual harassment and bizarre behavior of my next door neighbor, Mr. Gene Kasrel, who has harassed me for years, harassed my girlfriend, and who assaulted me in front of my home on or about May of 2015.

75. After your offices sent two letters to Mr. Kasrel, the harassment ceased; but began again in April of this year, 2016.

76. In April and May of 2016, there were repeated instances of someone yelling "fuck you" "asshole" and so on, as well as rattling the front gate, late at night, in front of my home.   My convertible Camaro was also vandalized in April. I cannot say for sure, that Mr. Kasrel is responsible for these incidents.

77. However, on or about July 8, 2016, in the evening, Mr. Kasrel began marching back in forth in front of my home, and then stood in my driveway, screaming at me, pointing at my Camaro, and demanding that I give him $1,000 because I bought a "new" car. Actually the car was purchased in 2013.

78. On or about July 9, 2016, around 8 PM. he stood next to our common fence, yelling that I was a "cheat" and a "crook" and then he began chanting "your dead. Your dead."

79. On or about July 10, 2016, as I was working in my yard, Mr. Kasrel again stood at my gate, screaming insults and obscenities and demanding I give him money. When I refused he spit on me and said I was "a dead man." I called the police.

80. Before the police arrived, he began marching back and forth in front o my house, chanting "your dead."

81. Over the years, and since he moved next door, Mr. Gene Kasrel has repeatedly demanded money from me, including to pay for painting his house and for a new roof to his house, because, according to Kasrel, improving his house adds to the value of my house, therefore I should pay him. He is crazy.

82. Mr. Gene Kasrel is profoundly mentally ill and he is obsessed with me. I do everything I can to ignore him, even when he stands at my gate screaming.

83. The help of your organization is desperately needed.

84. COMPLAINT: NEIGHBORHOOD    DISPUTE RESOLUTION PROGRAM (EMAIL TO DIRECTOR V. ALVEREZ / Viola.Alvarez@ohr.sccgov.org) / August 8, 2016
-Gene Kasrel: Continued Harassment, USING FLOOD LIGHTS

85. RE: Joseph (677 Elm St) v Kasrel (665 Elm St) -Continued Harassment USING FLOOD LIGHTS

86. Dear Ms. Alvarez,

87. Last night, he [Gene Kasrel) attached a high powered Search light, which points upward and illuminates the entire side of my house, the roof of my house, and even the trees in my front yard (above the fence line).

88. His side porch area must be less than 6 feet by 8 feet--and there is no way anyone needs a search light for an area so small. Fact is, it could illuminate part of a football field.

89. I have been searching for any codes or laws regarding "light pollution" but so far have not found anything actionable--- If you know of any codes or laws which govern this conduct, I'd appreciate knowing about them.

90. SAN JOSE POLICE REPORT: 143249550 / NOV 20, 2014 – HARASSMENT, THREATS, PHYSICAL ASSAULT
91. -Gene Kasrel, residing at 665 Elm St, yelling and screaming at Dr. Joseph and his female companion, marching back and    forth in front of Dr. Joseph's home yelling threats, physically attacked Dr. Joseph in front of his home at 677 Elm St.

93. SAN JOSE POLICE REPORT: T18019989 / SEPT 10, 2018 – HARASSMENT / DISTURBING THE PEACE / LIGHT POLLUTION / FLOOD LIGHTS DIRECTED AT HOUSE
93. -Gene Kasrel, residing at 665 Elm St, Banging on adjacent fence around 3 AM on 9/9/2018 and 9/10/2018 and shining high powered flood lights on the home and trees of Dr. R. Joseph, residing next door at 677 Elm St.

94. Kasrel has yelled at female visitors to Plaintiff's home, calling them "whores" and "prostitutes" and commenting on their breasts and asking how much they charge. While threatening this Plaintiff, Kasrel claimed he knew these women were "high priced prostitutes" because they drove "expensive cars." In point of fact, these ladies were highly educated, and worked as doctors, lawyers, engineers, nurses, and journalists. In one instance, when Kasel saw Plaintiff walking with a lovely woman, Kasrel began yelling at her saying: "Do you know how old he is? Do you know how old he is?" Kasrel then attacked Plaintiff from behind and then ran away. The Police were called.

95. In yet another incident reported to Neighborhood Mediation, Kasrel stood in front of Plaintiff's driveway gate, a few feet from Plaintiff's convertible Camaro, screaming that Plaintiff's should pay Kasrel a "thousand dollars" because Plaintiff could afford a "new car." Kasrel then stood on his side of the

adjacent fence yelling death threats at Plaintiff. Subsequently the Camaro was vandalized with estimated damages of $4,600 (Geico Insurance Claim Number: 0132868910101030),

96. Kasrel has also expressed hatred for "Arabs" and "Muslims" who he believed should be "exterminated" and accused Plaintiff of being an "Arab" and a "Muslim" because of Plaintiff's last name and dark hair and skin. After Plaintiff erected two small Celtic Crosses deep in Plaintiff's yard on two sides of the back driveway, Kasrel accused Plaintiff of being a Christian and expressed hatred for Christians and for Plaintiff.

97. Mr. Kasrel has also repeatedly tossed dog feces onto the roof of Plaintiff's garage which abuts the fence, and dog feces and rocks over the fence into Plaintiff's yard, with rocks sometimes striking the roof and side of Plaintiff's house. In addition, Mr Kasrel who is unemployed and often intoxicated, smokes copious amount of marijuana while standing next to the adjoining fence, laughing, making strange sounds, and has repeatedly burned noxious, foul smelling substances in containers adjacent to the fence, causing horrifically foul and horrible odors to waft into Plaintiff's yard and the open windows of Plaintiff's home.

98. Kasrel while drugged or intoxicated, has also climbed up on the fence, and has said to Plaintiff in a drugged voice: "I can see you. I feel better now" and one evening he did the same, saying "I see see you" while shining a high powered flashlight into Plaintiff's yard and windows.

## 99. LIGHT POLLUTION, NUISANCE AND CALIFORNIA CIVIL CODE 3501, 3502.

100. In the summer of 2016, Plaintiff placed small, multi-colored solar lighting at ground level in Plaintiff's side yard, backyard and front yard, and in the lower branches of the limbs of Plaintiff's front yard trees. Approximately two weeks later (and as reported to Neighborhood Mediation, SJPD, and Code Enforcement), Kasrel erected two high powered, powerful flood lights on the side of his home, and directed those lights upward, above the adjoining fence just three feet away, and into and illuminating Plaintiff's yard, trees, and the windows and side and roof of Plaintiff's house just 15 feet away (Figures 1, 2). Even Plaintiff's front yard trees, over 30 yards distant, were brightly illuminated.

101. San Jose Municipal Code is explicit regarding "light pollution" and Mr. Kasrel has violated San Jose law; i.e. "The use of low-pressure (LPS) sodium lighting for outdoor, unroofed areas shall be required." "No light source shall be directed skyward." "All light sources that produce more than 4,050 lumens shall be fully shielded (full cutoff) to prevent light aimed skyward." "All light sources that produce less than 4,050 lumens must be at least partially shielded." "Outdoor lighting shall be fully

shielded regardless of the lumen output and reduced to the minimum level necessary by 10:00 p.m" (https://www.sanjoseca.gov/DocumentCenter/View/3865).

102. Beginning in the summer of 2016, Plaintiff filed the first of approximately 5 complaints with San Jose Code Enforcement demanding they take action to force Kasrel to remove his lights which are in violation of Code. Inexplicably, San Jose Code Enforcement refused to take any corrective action.

103. On October 29, 2018, when Plaintiff bitterly complained about this pattern of inaction, he was informed, in writing by Defendant Gibilesco, that "If the property owner does not allow us onto the property and if we cannot confirm that the lights are a violation by other means (e.g. inspection from neighboring property or from the sidewalk), the case will be closed."

104. As exemplified by Figures 1, 2, Kasrel's lights which are extremely bright and powerful and can be easily seen from the street.

## 105. CCC § 3502 § 3501: PLAINTIFF LEGALLY ABATES A PRIVATE NUISANCE

106. According to California Civil Code § 3502 A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace, or doing unnecessary injury.

107. CCC Section 3501 explicitly states "The remedies against a private nuisance are: Abatement." The definition of "abate" is to "lessen", "decrease," "diminish," and "remove."

108. Therefore, Plaintiff acted according to and as authorized by California Civil Code § 3501 and 3502, and erected three sheets of polyurethane to legally abate these illegal lights and to abate Kasrel's harassing and threatening behavior and intrusions into Plaintiff's property via the adjoining fence.

109. California Penal Code Section 198.5 - 199, also allows home owners to utilize whatever means are necessary for self-defense. California's "castle doctrine," applies to one's home, place of business, or other real property (California Penal Code § 198.5 – 199). California law explicitly states that property owners may engage in any self-defensive action which any reasonable person may resort to, when necessary to protect their person or their property from harm.

110. Thwarted in his attempts to continue harassing Plaintiff, on or about October 6, 2018, Kasrel contacted San Jose Code Enforcement and demanded that Plaintiff's abatement remedy be removed. Code Enforcement quickly came to Kasrel's aid, but did so in a manner that enabled to Kasrel to avoid citations for numerous code violations, e.g. Kasrel's illegal front yard fence, Kasrel's illegal 14 foot front yard

hedge, Kasrel's illegal flood lights, and Kasrel's illegal jerry-rigged "jaccuzi" which, along with illegal wiring and plumbing and a washing machine (used as a pump) is attached to the adjoining fence.

111. Defendants, therefore, have aided and abetted and conspired with Kasrel to violate the law and to inflict harm on this Plaintiff.

## 112. VIOLATIONS OF DUE PROCESS, EQUAL PROTECTION: DEFENDANTS' CONDUCT IS FRADULENT, ARBITRARY AND CAPRICIOUS

113. On or about October 19 2018, Code enforcement officer Sean Flanagan arrived at Plaintiff's home without notice, but was prevented from approaching the house because of a locked wrought iron gate. Despite a mailbox and "catch" for cards and leaflets on the outside gate, Flanagan reached his arm and hand through that locked gate, thus trespassing into Plaintiff yard (California Penal Code Section 602; Katz v. United States 1967), and left a card on the inside concrete pathway, referring to the Kasrel-abatement Plaintiff had erected in Plaintiff's back-side yard.

114. Plaintiff, upon discovering the card immediately, and repeatedly called and left messages for Flanagan that same day. Plaintiff also composed a 12 page letter which contained a detailed description and documentation of Kasrel's threatening, damaging, and illegal behavior and which was hand-delivered to San Jose Code on October 22, 2018. That letter also detailed California laws permitting abatement.

115. Thus, Code had been and was fully aware that Kasrel had harmed and was still harming Plaintiff, that Kasrel posed a danger to Plaintiff, that Kasrel's lights were illegal, and Plaintiff was legally justified to abate this private nuisance (see CCC Section 3501 CPC § 198.5 – 199), and removal of the abatement would expose and cause Plaintiff damage and injury.

116. On or about October 23, 2018, Flanagan sent Plaintiff a threatening letter falsely claiming Plaintiff had never contacted Flanagan or Code, and threatened retribution; and Flanagan did so in an attempt to frighten and intimidate Plaintiff. Flanagan and Code also completely ignored Plaintiff's letter, exhibits and legal justification, and instead demanded that Plaintiff remove the legal abatement so Kasrel could continue his attacks unabated. Defendants were completely indifferent.

117. On or about October 24, 2018, Plaintiff spoke by phone with Code Enforcement Officer Jason Gibilesco and the two exchanged emails and at no time did Gibilesco mention Plaintiff's Cypress trees or wrought iron fence but focused exclusively on the Kasrel-abatement.   Gibilesco did acknowledge that it was Dept of Code policy to send threatening, intimidating letters when Plaintiff complained of the false statements in Flanagan's letter.

118. On or about October 30, 2018 after receiving four emails from Gibilesco, Plaintiff emailed Gibilesco photos of Kasrel's illegal lights, the illegal illumination of Plaintiff's home and trees, and described the damage Kasrel had caused and the dangers Kasrel posed and reiterated the legal justification for the abatement. Gibilesco brushed aside the law and these concerns and instead threatened, lied to, and sought to deceive and intimidate Plaintiff and warned Plaintiff that Gibilesco would find a way to get into Plaintiff's yard so he could inspect the abatement and force its removal.

119. Plaintiff warned Gibilesco, on October 30, about the legal consequences of trespassing and informed Gibilesco. "take me to Court." Seven days later, in November 2018 Gibilesco retaliated by filing fake code violation for Plaintiff's front yard wrought iron front yard fence and Plaintiff's "shrubs" and "bushes" (AKA Italian Cypress trees) all of which hae been in place since Plaintiff purchased his home in 1986.

**120. Cypress Trees Are Not Bushes or Shrubs.**

121. In 1986, Plaintiff Dr Joseph planted 6ft tall Italian Cypress trees in his front yard adjacent to and behind the front yard wrought iron fence. These trees are now over 30 years old and completely healthy. Between 1986 and October of 2018, four different Code Enforcement officers observed these trees and wrought iron fence when inspecting (or in the case of Defendant Flanagan, attempting to inspect) Plaintiff's property and home. Three of these Officers strolled through that fence and those trees on the pathway leading to Plaintiff's front door. Hence, for over 30 years, not one code inspector noticed any code violations involving the Cypress trees or wrought iron fence. None of these Code Enforcement officers regarded the fence or these trees as being in violation of code.

122. Likewise. Defendant Gibilesco sent Plaintiff 4 emails in October, the last received on October 30 2018; and none of these emails made any reference to "bushes", "shrubs" "trees" "Cypress trees" or Plaintiff's wrought iron fence. Gibilesco faked these violations in November to retaliate against Plaintiff.

123. The City of San Jose has no laws or codes which regulate the height or width or circumference or location of front yard trees. In fact. the City requires homes to have at least one tree, or at least three for corner homes and forbids the killing and removal of trees without a permit (see http://www.treeremovalpermit.com/california/san-jose-ordinance-permit-city-arborist/) following inspection by an arborist. The City, therefore, favors trees and there are no codes or ordinances which limit the number of trees a citizen may plant on their property.

124. According to San Jose Code, front yard "bushes" and "shrubs" can be no taller than 3 feet in height. Trees are not "bushes" or "shrubs" and there is no reference in San Jose code regulating or limiting front yard trees or their height.

125. However, on or about November 6, 2018, after Plaintiff told Gibilesco "take me to Court" the Defendants, acting under color of law, illegally manufactured fake code violations and sent Plaintiff a letter illegally charging that Plaintiff's trees were "bushes" and "shrubs" and would have to be cut to 3 feet in height, which would kill them. Defendants also threatened $2,500 a day fines if Plaintiff did not destroy his property in less than 30 days.

126. On November 19, 2018, a licensed arborist employed by Davey Tree Services (1055 Commercial St, SJ 95112), inspected Plaintiff's Cypress trees and in a written report, stated "front yard Italian Cypress are considered trees. Cutting them to 3 feet in height will kill them."

127. On November, 20, 2018, Gibilesco was informed, by email, of that Arborist report and that Plaintiff had no "bushes" or "shrubs" in his front yard, and thus, Plaintiff was not in violation of Code. Defendants were also informed that numerous homes within 100 yards of Plaintiff's property, had front yard bushes and shrubs, adjacent to sidewalks, over 3 feet in height; and that Kasrel's has a solid illegal hedge consisting of bushes 12 to 14 feet in height adjacent to the front sidewalk and so do neighbors (Figure 3). Defendants were accused of violating Plaintiff's 14th amendment rights to equal protection under the law.

128. As stated in an email from Gibilesco, dated October 30, 2018, violations of code can be determined by "inspection from neighboring property or from the sidewalk." Gibilesco and Flanagan had to have observed the obvious code violations of Kasrel and other neighbors.

129. On or about February 11, 2019, Defendants, now aware that Plaintiff had no "bushes" or "shrubs" and despite being warned of 14th amendment violations, nevertheless, and specifically claimed that "Cypress trees" are a violation of code when no such code exists, and issued (and then backdated) that fake code violation to October 6, 2018, and in which "Cypress trees" in general, are identified as violating code and must be destroyed, when no such code exists.

130. Therefore, Defendants created fake code violations, misidentified "trees" as "bushes" and "shrubs", arbitrarily and capriciously misinterpreted code to include "Cypress trees," altered and backdated evidence, and knowingly violated Plaintiff's rights to due process and equal protection under the law.



Figure 3. Photographed March 10, 2019. Photograph of Kasrel's and other neighbors' hedges, shrubs and bushes, adjacent to fences, and which range from 7 to 14 feet in height. Note structure (left) attached to fence.

### 131. Plaintiff's Wrought Iron Fence is Code Compliant.

132. San Jose Code allows for front yard gates and driveway gates to be four feet in height, that front yard fence posts may be four feet in height, and limits to 3 feet the height of fencing which is not a gate, and limits trellises to eight feet in height and five feet in length (San Jose Ord 26248). Plaintiff's wrought iron fence, gating, and trellises are completely code compliant (Figures 4,5,6).

133. On Plaintiff's side of the street, every front yard fence of every neighbor and every neighbors' fence facing or adjacent to the sidewalk is from five feet to 7 feet in height (Figures 7-10). These illegal fences, include front yard gates that are 5 feet in height, and driveway fences 7 feet in height.

134. Dozens of homes within 100 yards of Plaintiff's home, have fences facing or adjacent to the sidewalk, which are five feet to seven feet in height. The front yard gate and fence of Gene Kasrel

(665/667 Elm St), is five feet to six feet in height (Figures 7, 8).   There are likely tens of thousands of homes in San Jose with front yard fences, adjacent to the side walk, which are in violation of Code and much taller than Plaintiff's wrought iron fence.

135. Moreover, neighbors on Plaintiff's side of Elm (Figures 3, 9, 11) have structures 10-14 feet in height adjacent to fences and sidewalks, and likely tens of thousands of other citizens do likewise.

136. However, on or about November 6, 2018, after Plaintiff told Gibilesco "take me to Court" the Defendants retaliated and acting under color of law, informed Plaintiff his wrought iron fence would have to be removed. Defendants also threatened $2,500 a day fines if Plaintiff did not destroy his property in less than 30 days.

137. On or about November 20, 2018, Plaintiff took precise measurements and reduced the height of Plaintiff's front yard wrought iron fence to below 3 feet and the front yard gates and driveway gates and fence posts to below 4 feet in height so there would be absolutely no question that these fences are not allowed by Code. Plaintiff's trellises are less than 6-feet high are two feet wide. Therefore, as proved by Figures 4,5,6, Plaintiff's front yard wrought iron fence, gates, and posts are 100% completely code compliant (San Jose Ord 26248) and Defendants were informed.

138. On or about February 11, 2019, the Defendants again filed fake code violations, falsely claiming Plaintiff's front yard wrought iron fence was in violation of code and warned of $2,500 a day fine if not removed.   Hence, the height of the fence was irrelevant to the Defendants whose purpose was only the destruction of Plaintiff's property.

139. Defendants have behaved fraudulently, dishonestly, maliciously, whimsically, unreasonably, and their fraudulent claims of a code violations are arbitrary, capricious, oppressive and unjust and as such they have violated and continue to seek to violate this Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights including due process, equal protection under the law, and California Administrative Law (2 CAL. JuR. 2d, Administrative Law and Procedure § 38, at 75-79 (1952); Ontario v. Quon, 130 S.Ct. 2619, No. 08-1332, 560 U.S. 746 (2010); Mapp v. Ohio, 367 U.S. 643 (1961).

140. As explicitly guaranteed by the 14th Amendment, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."



Figure 4. Photograph of Plaintiff's front yard fence, a Celtic Cross, trunks of two Italian cypress trees and 3 foot yardstick. Plaintiff's fence is less than 3 feet in height.



Figure 5. Photograph of Plaintiff's front gate pathway, gate post, adjacent fence, 3ft yardstick and 12 inch ruler.   Fence is less than 3 feet and post is less than 4 feet in height, as mandated by code.



Figure 6. Photograph of Plaintiff's front yard double driveway gate, 3ft yardstick and 12 inch ruler. The double gates is less than 4 feet in height, as mandated by code.



Figure 7. Photograph March 10, 2019. Next door Neighbor, Kasel's front yard gate and 3ft yardstick. The gate is over 5 feet in height.



Figure 8. Photograph March 10, 2019. Kasel's front yard fence and 3ft yardstick. The front fence is over 5 feet in height, the redwood side fence is 6ft height adjacent to sidewalk.



Figure 9. March 10, 2019. Photograph of Elm st. Neighbors 8 ftt front fence, 7 ft. gate, and 3ft yardstick adjacent to sidewalk. Note overhead structure attached to fence.



Figure 10. March 10, 2019.   Photograph of Elm st. Neighbors 7 ft front fence, 7 ft. gate, and 3ft yardstick adjacent to sidewalk. Note illegal overhead structure attached to fence.



Figure 10. March 10, 2019. Photograph of Elm st. Neighbor's 7 ft front fence facing sidewalk and 10 foot structure (upper left) adjacent to fence.

## 141. DEFENDANTS' DESTROY, ALTER, BACKDATE RECORDS / EVIDENCE & VIOLATE CPC § 132.

142. Offering false written evidence and preparing false evidence is a crime according to California law and CPC 132-135. "132. Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of felony. 133. Every person who practices any fraud or deceit, or knowingly makes or exhibits any false statement, representation, token, or writing, to any witness or person about to be called as a witness upon any trial, proceeding, inquiry, or investigation whatever, authorized by law, with intent to affect the testimony of such witness, is guilty of a misdemeanor. 134. Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever,

authorized by law, is guilty of felony. 135. Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor. 136. As used in this chapter: (1) "Malice" means an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice."

143. There is absolutely no mention of the wrought iron fence, or any "shrubs" or "bushes" or "hedges" in any of the correspondence from Gibilesco, Flanagan, or Code during the month of October 2018, nor was there any reference or mention in the complaint log maintained by the Dept of Code during the month of October.

144. In response to being accused of a personal vendetta, and to hide his culpability, Gibilesco erased the fake code violations from San Jose Code website which he had personally filed in November, then backdated these fake code violations to October 6, 2018 to make it appear that a private citizen, and not Gibilesco, had filed a complaint against the "bushes" and "shrubs" and "wrought iron fence" on the same day Kasrel filed a complaint about the abatement on or about October 6. Hence Defendants sought to make it appear Kasrel issued the complaints about Plaintiff's Cypress trees and front yard wrought iron fence in October. The Defendants, therefore, falsified evidence and willfully made themselves co-conspirators and accomplices of Kasrel and are in violation of CPC 132-135.

## 145. DEFENDANTS' RATIFY UNCONSTITIONAL CONDUCT AS OFFICIAL POLICY

146. On December 6, 2018, Plaintiff emailed a document and legal brief to Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), and Richard Doyle (City Attorney) detailing the illegal and harassing conduct of Defendant Gibilesco and violations of due process and equal protection, and the 14th Amendment. Further, Plaintiff provided extensive details proving his property was code compliant and that the charges were faked, altered, and then backdated by Gibilesco.

147. Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), and Richard Doyle (City attorney), despite the charges, authorized Gibilesco to continue contacting, harassing and threatening Plaintiff and to lurk outside Plaintiff's property—actions which took place in February of 2019 and the purpose of which was to maliciously harm Plaintiff and destroy his property. Thus, the City officially ratified these violations of the 14th Amendment of the U.S. Constitution and state law.

148. CPC § 422.6: "A) No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States in whole or in part... B) No person, whether or not acting under color of law, shall knowingly deface, damage, or destroy the real or personal property of any other person for the purpose of intimidating or interfering with the free exercise or enjoyment of any right or privilege secured to the other person by the Constitution or laws of this state or by the Constitution or laws of the United States."

149. On or about February 11, 2019, Plaintiff was again contacted by Gibilesco who sent a letter repeating the same false charges and who again demanded the destruction of Plaintiff's property and who threatened $2,500 a day fines.

150. By giving authority to Gibilesco to continue threatening Plaintiff and to alter additional records, then, in all respects, these Defendants and thus the City of San Jose, have explicitly endorsed and ratified this illegal unconstitional conduct as official City policy.

**151. Noise Abatement. Plaintiff's Cypress Trees Protected by California Civil Code § 3502; California Code of Regulations, Title 21; and the Noise Control Act 42 U.S.C. §4901**

152. In the official demand for an Administrative hearing (dated February 22, 2019) Plaintiff summarized all the issues referred to so far in this complaint and which had been previously brought to the attention of Defendants Sykes, Hughey, Flanagan, and Gibilesco.

153. Plaintiff cited laws and case law in support of his demand for an Administrative hearing, and which included laws, rules, and regulations which protects Plaintiff's Cypress trees i.e. California Code of Regulations, Title 21, sections 5000 – 5090; Public Utilities Code, Division 9, Part 1, Chapter 4; The Noise Control Act 42 U.S.C. §4901 et seq. (1972)

154. The Noise Control Act 42 U.S.C. §4901 et seq. (1972) established a national policy to promote an environment for all Americans free from noise that jeopardizes their health and welfare. As mandated by California Health and Safety Code (division 28, chapter 1, 4600): "(a) Excessive noise is a serious hazard to the public health and welfare. (b) Exposure to certain levels of noise can result in physiological, psychological, and economic damage. (f) All Californians are entitled to a peaceful and quiet environment without the intrusion of noise which may be hazardous to their health or welfare." The California NOISE CONTROL ACT (Division 28) goes on to admit "(d) Government has not taken the steps necessary to provide for the control, abatement, and prevention of unwanted and hazardous noise."

155. According to Section 46022 of the Noise Control Act: "Noise" means and includes excessive undesirable sound, including that produced by...aircraft."

156. As detailed in California Code of Regulations, Title 21, sections 5000 – 5090, the state's standard for the acceptable level of aircraft noise for persons living in the vicinity of airports is 65 decibels.

157. Plaintiff's home is 300 yards distant from and faces San Jose International Airport's arrival and departure flight paths (Figure 12). Air craft noise in this area has been measured at 75 to 80 dB (see Norman Y. Mineta San José International Airport San José, CA Master Plan 10th Addendum to the Environmental Impact Report City of San José October 2013), i.e. 10 to 15 db above that allowed by law.

158. As admitted by the International Airport (https://www.flysanjose.com/south-flow) air plane noise has dramatically increased and so have community complaints with over 44,000 noise complaints a month including in January of 2017 (See T&E AGENDA: 09/11/2017 ITEM: d (3) CITY OF Memorandum CAPITAL OF SILICON VALLEY TO: TRANSPORTATION AND ENVIRONMENT COMMITTEE FROM: John Aitken Interim Director of Aviation SUBJECT: FORMATION OF THE AD HOC ADVISORY COMMITTEE ON SOUTH FLOW ARRIVALS DATE: August 21, 2017).

159. Citizens living near the flight paths have demanded noise abatement measures to be enforced but have been completely unable to get any assistance from the city of San Jose which has behaved with negligence and complete helplessness.

160. According to California Civil Code § 3502 "A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace, or doing unnecessary injury. The definition of "abate" is to "lessen", "decrease," "diminish," and "remove." CCC Section 3501 explicitly states "The remedies against a private nuisance are: Abatement."

161. Plaintiff is a scientist with foresight and knew of published research which demonstrated that trees with a height of 30 feet can reduced noise levels by 8 to 15 db; findings which have been repeatedly replicated (Landscape and Urban Planning Volume 63, Issue 4, 15 May 2003, Pages 187-195; Environmental Monitoring and Assessment November 2008, Volume 146, Issue 1–3, pp 67–75|; Acta Acustica united with Acustica, Volume 89, Number 5, September/October 2003, pp. 764-778).

162. Noise abatement, and realizing airline noise levels would increase, were major factors in Plaintiff's decision to plant these trees in 1986, as they can grow to heights of 30 feet.



Figure 12. San Jose International Airport Flight Paths, and Elm St. depicted.

163. As the city of San Jose, the State of California, and the Federal Government have failed to abate air plane noise which is harmful to health, Plaintiff had a legal right to abate that noise with the trees he planted in 1986 for exactly that purpose (see CCC 3501 - 3502). If Plaintiff were forced to destroy his Cypress trees noise levels would increase by 15 db, i.e. to over 85 db, well over the legal limit and which is the source of hundreds of thousands of complaints from citizens. Plaintiff would suffer profound personal and physical injury if his Cypress trees were destroyed..

**164. DEFENDANTS' ADMINISTRATION HEARING: A VIOLATION OF DUE PROCESS:**

165. Plaintiff, in his demand for an impartial administrative hearing, detailed the laws which guarantee him the right to due process and to be informed of and provided all evidence, document, records, memorandum, photographs, a list of witnesses and the names of those who have allegedly accused Plaintiff of any alleged code violations (see Morgan v. United States, 304 U.S. 1 (1937); ICC v. Louisville & N.R.R., 227 U.S. 88, 91, 93 (1912); La Prada v. Department of Water & Power, 27 Cal. 2d

47, 51-52, 162 P.2d 13, 16 (1945); Desert Turf Club v. Board of Supervisors, 141 Cal. App. 2d 446, 455, 296 P.2d 882, 887 (1956).

166. Defendants were informed that Case law and the U.S. Constitution guarantees Plaintiff the right to examine all documents, even in civil actions regardless of any city code or statutory rule the Defendants may offer up as an excuse not to provide these emails, memorandum, and documents (see CAL. Gov'T CODE §11513(c) (West 1966); 2 CAL. JuR. 2d, Administrative Law and Procedure, § 140, at 242-43 (1952). See Werner v. State Bar, 24 Cal. 2d 611, 615, 150 P.2d 892, 893-94 (1944); Suckow v. Alderson, 182 Cal. 247, 251, 187 P. 965, 967 (1920).

167. Plaintiff also demanded that the hearing be chaired by a neutral mediator, i.e. a lawyer listed on the Santa Clara County Court's list of approved mediators and arbitrators; and that any administrative hearing in which facts are to be determined must be conducted in a manner that is fair, just and appropriate under the circumstances and which meets the requirements of fair play (see Morgan v. United States, 304 U.S. 1, 14-15 (1937); Vick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886) ; Desert Turf Club v. Board of Supervisors, 141 Cal. App. 2d 446, 455, 296 P.2d 882, 887 (1956); Bandini Estate Co. v. County of Los Angeles, 28 Cal. App. 2d 224, 229-30, 82 P.2d 185, 188-89 (1938).

168. The Defendants cannot act judge, jury, prosecutors and witness as they themselves are responsible for the fake complaints and backdating fake code violations. There is an obvious conflict of interest.

169. The Defendants ignored all these demands which are guaranteed by law. Instead, the Defendants scheduled an illegal, extrajudicial hearing, designed to deny Plaintiff his rights under the U.S. constitution, and State and Federal Laws, including his 14th Amendment Rights to Due Process.

170. The Defendants refused to provide any records, emails, memorandum, photographs, names of any citizens who allegedly filed code complaints, and refused to allow a neutral mediator to administer the hearing.

171. The U.S. Supreme Court has broadly interpreted the "due process clause" as guaranteeing citizens, which includes this Plaintiff, the right to procedural due process even in civil cases (Snyder v. Massachusetts, 291 U.S. 97, 105 (1934)).

172. On February 28, 2019, Plaintiff issued an appeal, demanding a fair hearing, according to law.

173. Defendants ignored that demand and chose instead to act as judge, jury, prosecutor and witness and to deny this Plaintiff his right to examine any alleged evidence or question any alleged witnesses or to be informed of who filed the complaints of alleged code violations.

**174. Plaintiff Has Shown Cause, Standing.**

175. The Courts have ruled that at the pleading stage, general factual allegations of injury suffice as the Court must presume that Plaintiff's general and specific allegations embrace and are supported by specific facts which directly support the claim (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

176. Plaintiff has demonstrated standing for each claim and for each form of relief sought and thus has "standing" (DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978).

177. Plaintiff has provided specific and general factual allegations of the numerous injuries suffered and which resulted from the Defendants' conduct and thus has cause and standing (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978).

178. Plaintiff has also met Article III criteria for standing and has shown that **A)** Plaintiff has suffered numerous injuries that are not abstract, but factual, concrete, actual, specific, particularized, and imminent; **B)** Plaintiff has suffered several actual as well as threatened injuries all of which are a direct result of the illegal conduct of the Defendants and which are easily traceable to the conduct and challenged conduct of the Defendants who have aided and abetted Kasrel's hate crimes—and this is actionable; (see Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978).

179. The Defendants` malicious, odious conduct is not protected by the CDA and meets the standards for violations of California law and civil code (CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g).

180. Plaintiff has also documented the concrete harms already suffered and which will be suffered in the future (See Federal Election Com'n v. Akins, 524 U.S. 11, 24 (1998); Public Citizen, 491 U.S., at 449-450, 109 S.Ct., at 2564-2565);   Shaw v. Hunt, 517 U.S. 899, 905, 116 S.Ct. 1894, 1900-1901, 135 L.Ed.2d 207 (1996).   . . .

181. Plaintiff has repeatedly suffered "injury in fact" and is under continual emotional stress.

182. Thus, Plaintiff has suffered and will continue to suffer injuries particular to himself, and which is not shared equally by others, and this is actionable and demonstrates Plaintiff has standing (Warth v. Seldin, 422 U.S., at 499, 95 S.Ct., at 2205; Arlington Heights v. Metropolitan Housing Dev. Corp., supra, 429 U.S., at 263, 97 S.Ct., at 561); Federal Election Com'n v. Akins, 524 U.S. 11, 24 (1998).

183. Plaintiff has met the legal standards to show cause and standing as outlined in Federal Rule of Civil Procedure 8(a)(2) and as based on case law (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 ,570 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); (see also Florida Foundation Seed Producers,

Inc. v. Georgia Farms Services, LLC, No. 1:10-CV-125, 2012 WL 4840809, at \*21 (M.D. Ga. Sept. 28, 2012) (Sands, J.) (citing Nat'l. Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982); Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989).

184. This complaint also meets the requirements of Article III of the U.S. Constitution and established case law (Evident Corp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1313 (Fed.Cir.2005); Lujan v Defenders of Wildlife, 504 U.S. 555, 650-61 (1992); Valley Forge Christian College v American United For Separation of Church and State, Inc 454, 482 (1982).

185. Plaintiff has also met Article III criteria for standing (see Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978); Lujan v. Defenders of Wildlife, 504 U.S. 560-561 (1992).

186. Plaintiff has demonstrated "constitutional standing" (see Allen v. Wright, 468 U.S. 737, 757 (1984).

## 187. DAMAGES

188. Plaintiff is entitled to damages according to the Federal Torts Claims Act, and California law (See Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008); Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007).

189. Defendants interfered with prospective rights, property rights, and existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

190. The Defendants also maliciously inflicted personal and emotional injuries, and interfered with existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

191. Defendants have engaged in fraud, filed false code violations, and are liable for damages to or loss of property or personal injury or professional injury caused by the negligent or wrongful acts or omissions of any employee of the government while acting within the scope of his/her office or employment, under circumstances where, if a private person, they would be liable to the claimant in accordance with the law of the place where the act or omission occurred (28 U.S.C. §1346 (b). 10 U.S.C. §2733).

192. A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative" (CAL. GOV. CODE § 815.2(a).

193. Plaintiff has been severely and profoundly injured by the malicious, harassing, and negligent actions of the Defendants and this is actionable (see Alpine Indus. Computers, Inc. v. Cowles Pub. Co., 57 P.3d 1178, 1188 (Wash. App. Ct. 2002); Herron v. KING Broad. Co., 746 P.2d 295 (Wash. 1987); Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708], and a violation of California Civil Code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)).

194. Defendants have caused Plaintiff percuniary damage (Leonardi v Shell Oil Co., 216 Cal. App 3d 457, 572 (19800), and Plaintiff is entitled to Economic or Special Damages for losses related to the injuries inflicted.

195. Plaintiff is also entitled to future damages, including those economic and noneconomic damages.

196. Plaintiff is also entitled to "compensatory damages" for emotional and mental distress.

197. The Plaintiff is entitled to General damages, Economic and Special Damages, Punitive and Exemplary damages, as well as injunctive relief and a declaration that Defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights, and rights guaranteed by the California Constitution, Article 1, Sec 2 (a).

198. The Defendants have also violated California Civil Code, 3294. (c)(1)(2).

199. Defendants repeatedly engaged in fraud and harmed, violated, and deprived Plaintiff of his rights and sought to deprive him of his property; and in so doing, repeatedly caused injury and this is actionable according to CCC1714. (a), CCC3294 9(c)(3).

200. Defendants have interfered with prospective rights, property rights, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964)).

201. The Plaintiff has been severely and profoundly injured by the malicious, harassing, and negligent actions of the Defendants and this is actionable [see Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708], and a violation of California Civil Code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g).

202. The Plaintiff is entitled to future damages, including those economic and noneconomic damages that the Defendants sought to inflict.

203. Plaintiff is entitled to damages for loss of consortium which relates to factors such as loss of enjoyment of life (see Molzof v. United States, 501 U.S. 301 (1992).

204. Plaintiff is entitled to substantial damages including punitive (Molzof v. United States, 502 U.S. 301, (1992).

## FIRST CLAIM FOR RELIEF
### Violation of the Fourteenth Amendment (42 U.S.C. § 1983)

205. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

206. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and officers Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound personal injury, and violated Plaintiff's rights to due process and equal protection under the law.

207. A) The conduct of the Defendants harmed, violated and deprived this Plaintiff of his constitutional rights and B) the Defendants actions were conducted under color of law (Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987), and D) carried out with the knowledge and approval of Dave Sykes (City Manager), and Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager), and thus according to approved City policy.

208. Plaintiffs' claim under 42 U.S.C. § 1983 is premised on the facts that the Defendants retaliated against the Plaintiff and sought to suppress and deprived Plaintiff of his constitutional rights to free speech, freedom of religion, equal protection under the law, guarantees against the seizure and destruction of property, and violations of due process under the First, Fourth, Fifth and Fourteenth Amendments.

209. Plaintiff has a legal right to grow trees in his yard, there are no codes baring the number or height of trees.   Plaintiff's trees are also an expression of speech, religious belief, and serve as a lawful abatement of excessive aircraft noise (California Civil Code § 3501, 3502). Defendants have maliciously sought to violate Plaintiff's First, Fourth, Fifth and Fourteenth amendment rights, to cause injury and destruction of property, and to expose Plaintiff to dangerously high levels of illegal noise and to be harmed by Kasrel.

210. Plaintiff is authorized by law to protect himself and his property, against the hate crimes and ongoing harassment, threats, and property damage inflicted by Kasrel, and Plantiff did so via lawful abatement (California Civil Code § 3501, 3502; CPC § 198.5 – 199)..

211. For two years, beginning in 2016, Plaintiff filed violations with San Jose Code Enforcement repeated complaints regarding Kasrel's use of upturned high powered flood lights to illuminate Paintiff's home and property. Code failed to take any action or enforce the law.

212. Defendants had been repeatedly informed and were provided extensive documentation of Kasrel's outrageous, damaging and harmful conduct, including assault and battery and Kasrel's use of high powered flood lights to illuminate Plaintiff's home, windows, and yard at night. Nevertheless, Defendants demanded that Plaintiff remove the protective abatement while making no requirement of Kasrel to remove his lights. Thus, Defendants violated the Equal Protection Clause of the 14th Amendment and sought to deliberately maintain and create a danger where Kasrel could continue to harm and harass this Plaintiff.

213. This deliberate indifference to and attempts to expose Plaintiff to the dangerous, assaultive, and illegal conduct of Kasrel was malicious, and is also a violation of Plaintiff's right to equal protection, due process and 42 U.S.C. § 1983 (see Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006).

214. Defendants also know, and were repeatedly informed by Plaintiff in writing, that "tress" are not "bushes" or "shrubs" and there are no Codes regulating the height, width, or number of trees a citizen may have in their front yard. Nevertheless, Defendants continued to harass, issue threats, intimidate, and seek to force Plaintiff to destroy his property.

215. Moreover, Plaintiff was selectively targeted by the Defendants who ignored obvious code violations of Plaintiff's neighbors, thus violating Plaintiff's right to due process and equal protection under the law.

216. Thus, Plaintiff has suffered and will continue to suffer injuries particular to himself, has been denied equal protection under the law, and this is actionable and demonstrates Plaintiff has standing (Warth v. Seldin, 422 U.S., at 499, 95 S.Ct., at 2205; Arlington Heights v. Metropolitan Housing Dev. Corp., supra, 429 U.S., at 263, 97 S.Ct., at 561); Federal Election Com'n v. Akins, 524 U.S. 11, 24 (1998).

217. "Willful ignorance" "deliberate indifference" to the laws and the harm caused and impending harm to this Plaintiff coupled with the Defendants active role in aiding, abetting, and tacitly encouraging Kasrel "shocks the conscience" and constitutes a substantive violation of due process (see Porter v Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-852 (1998)) and the Fifth Amendment and 28 U.S.C. § 1331). As based on rulings by the 9th Circuit Court, "deliberate indifference" in-itself, is sufficient, to establish a due process violation (L.W. v. Grubbs, 92 F.3d 894, 896, 900 (9th Cir. 1996).

218. The Defendants have a legal duty of care toward the Plaintiff which is to not cause injury to the Plaintiff (Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508).    According to California Civil Code, 3281. "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

219. By demanding that Plaintiff destroy his property and remove his abatement so that Kasrel could continue to violate this Plaintiff, the City and the other Defendants, "committed or threatened violent acts against Plaintiff" (Campbell, 75 F. Supp. 3d at 1205; see also Ramirez v. Wong, 188 Cal. App. 4th 1480, 1486 (2010).

220. That additional injury and damage will take place in the future, because of the actions and demands of the Defendants--if Plaintiff is forced to comply with their illegal demands--is also a violation of law as the Courts have already ruled that an "impending" future injury, and "certainly impending" injury is actionable (see Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); Lujan v. Defenders of Wildlife, 504 U.S. 555, 564, n. 2 (1992); see also 42 U.S.C. § 7408 (a)(1)(A); 42 U.S.C. § 7521(a)(1); see Zook v. EPA, 611 F. App'x 725, 726 (D.C. Cir. 2015); Massachusetts v. EPA, 549 U.S. 497, 528 (2007)).

221. **Violation of Equal Protection Clause**: Every neighbor on Plaintiff's side of the street has front yard and side-walk-facing fences which are five to seven feet in height including Kasrel who also has an illegal 12-14 foot bush/shrubs forming a secondary fence in his front yard. Defendants ignored these violations and instead created fake violations to harm this Plaintiff.

222. The Equal Protection Clause of the Fourteenth Amendment provides that similarly situated persons are entitled to receive similar treatment at the hands of government employees, agents, and officers (See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Plaintiff has shown he "was treated differently from others similarly situated . . . based on impermissible considerations." (Clark v. Boscher, 514 F.3d 107, Case 1:17-cv-11921-FDS Document 26 Filed 06/26/18 Page 13 of 27 14 114 (1st Cir. 2008).

223. Plaintiff in this and earlier complaints filed or submitted to the city of San Jose, has provided facts demonstrating that the Defendants acted with discriminatory intent (See Hayden v. Grayson, 134 F.3d 449, 453 (1st Cir. 1998).

**224. VIOLATION OF DUE PROCESS**

225. In Davis v. Passman, 442 U.S. 228, 241 (1979), the Courts ruled that a Plaintiff has a right to due process, equal protection, as guaranteed by the Fifth Amendment, and that: "the judiciary is clearly

discernible as the primary means through which these rights may be enforced". In the present case, it is these Constitutional rights which are at issue.

226. The Due Process Clause protects fundamental rights and liberties which are "deeply rooted in this Nation's history and tradition...so rooted in the traditions and conscience of our people as to be ranked as fundamental" (Moore, 431 U.S. at 503; Snyder v. Massachusetts, 291 U.S. 97, 105 (1934), and "neither liberty nor justice ... implicit in the concept of ordered liberty... would exist if they were sacrificed" (Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937).

227. Plaintiff demanded an Administrative hearing, and informed the Defendants that by law, he has "the legal right to question and cross examine all witnesses and those who have made allegations against and/or who have harassed me and who have been alleged to have altered records, and who have sought to destroy my property and violate my legal, constitutional and civil rights; i.e. Dave Sykes, Richard Doyle, Rosalynn Hughey, Sean Flanagan, Jason Gibiliso, Gene Kasrel and Does 1-10 (see Morgan v. United States, 304 U.S. 1 (1937); ICC v. Louisville & N.R.R., 227 U.S. 88, 91, 93 (1912); La Prada v. Department of Water & Power, 27 Cal. 2d 47, 51-52, 162 P.2d 13, 16 (1945); Desert Turf Club v. Board of Supervisors, 141 Cal. App. 2d 446, 455, 296 P.2d 882, 887 (1956).... Case law and the U.S. Constitution guarantees me the right to examine all documents, even in civil actions regardless of any city code or statutory rule you or your offices may offer up as an excuse not to provide these emails, memorandum, and documents (see CAL. Gov'T CODE § 11513(c) (West 1966); 2 CAL. JuR. 2d, Administrative Law and Procedure, § 140, at 242-43 (1952). See Werner v. State Bar, 24 Cal. 2d 611, 615, 150 P.2d 892, 893-94 (1944); Suckow v. Alderson, 182 Cal. 247, 251, 187 P. 965, 967 (1920)."

228. Defendants were further informed, that "Any administrative hearing in which facts are to be determined must be conducted in a manner that is fair, just and appropriate under the circumstances and which meets the requirements of fair play (see Morgan v. United States, 304 U.S. 1, 14-15 (1937); Vick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886) ; Desert Turf Club v. Board of Supervisors, 141 Cal. App. 2d 446, 455, 296 P.2d 882, 887 (1956); Bandini Estate Co. v. County of Los Angeles, 28 Cal. App. 2d 224, 229-30, 82 P.2d 185, 188-89 (1938).   It is impossible for San Jose Planning, Building, Code Enforcement and its director and employees, Rosalynn Hughey, Sean Flanagan, Jason Gibilisco, to chair, administer or conduct a fair an unbiased hearing, as they have been accused by Plaintiff of engaging in a number of crimes and civil offenses against Plaintiff and for which there is substantial evidence" [and] " would constitute an obvious violation of Due Process (2 CAL. JuR. 2d, Administrative Law and Procedure § 38, at 75-79 (1952)."

229. Defendants chose to ignore the law and on or about February 26, 2019 scheduled an illegal hearing. When Plaintiff appealed the illegal hearing on February 28, 2019, and demanded his right to due process and a fair unbiased hearing to be chaired by a neutral, Court-approved mediator, Defendants ignored that appeal.

230. The claims before the Court, therefore, entail specific violations of Plaintiff's right to "due process" as guaranteed by the Fifth and Fourteenth Amendments, and the Defendants' contempt for due process is actionable (Hurtado v. California, 110 U.S. 516 (1884); Snyder v. Massachusetts, 291 U.S. 97, 105 (1934); Washington v. Glucksberg, 521 U. S. 702, 720).

231. As dictated by the Fifth and Fourteenth Amendments, "due process" acts as a safeguard against, and were written so as to prevent the government or any government agency, from suppressing, interfering with, or harming Plaintiff's liberty or property or his rights to free speech and a free press. Since 1884, the Supreme Court has consistently held that Fifth Amendment due process means substantially the same as Fourteenth Amendment due process (Hurtado v. California, 110 U.S. 516 (1884). The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests" (Washington v. Glucksberg, 521 U. S. 702, 720). The U.S. Supreme Court has broadly interpreted the "due process clause" as guaranteeing citizens, which includes this Plaintiff, the right to procedural due process even in civil cases (Snyder v. Massachusetts, 291 U.S. 97, 105 (1934)).

**232. Interference with Rights:** The Defendants have maliciously and deliberately interfered and sought to oppress Plaintiff's right of action and to exercise or enjoy or benefit from rights secured by the Federal or California state constitution and laws and they have done so via threats, intimidation and coercion. A "threat" means "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; "intimidation" means "putting in fear for the purposes of compelling or deterring conduct"; and "coercion" means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." (Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994).

**233.** Liability may be found where] (1) the defendants threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that he has legal and constitutional right to do." (Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).

234. Defendants have repeatedly threatened and have sought to intimidate and coerce this Plaintiff into giving up his rights and maliciously force him to destroy his property or face $2,500 a day fines.

**SECOND CLAIM FOR RELIEF**

**Conspiracy, Aiding and Abetting Hate Crimes (CPS Part 1, Title 2 Section 31,**
**CPS §§ 182 422.6; 42 U.S.C. § 1981)**

235. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

236. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damaged and injury.

237. 42 U.S.C. § 1981 "prohibits both public and private discrimination based on sexual orientation, religion, or race (see Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).

238. Gene Kasrel has harassed, threatened, damaged property and attacked and engaged in hate crimes against this Plaintiff, in part, because of his misperceptions about Plaintiff's race, ethnicity, religion, and due to Plaintiff's sexual orientation and perceptions about Plaintiff's sexual activity with the lovely ladies who have frequented Plaintiff's home.

239. Penal Code 422.6 PC makes it a stand-alone crime to interfere with someone else's civil rights, or damage or destroy their property, because of race, ethnicity, religion, and sexual orientation.

240. The Defendants have through negligence and direct aid, have aided and abetted the hate crimes committed by Kasrel, and backdated alleged code violations to October 6, 2018, to make it appear Kasrel filed these complaints, and thus the Defendants joined with and conspired with Kasrel to violate Plaintiff's rights, and this is a violation of CPC **31** – Aiding and Abetting:

245. "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission... are principals in any crime so committed."

246. The Defendants, therefore, are guilty of hate crimes against this Plaintiff, according to 42 U.S.C. § 1981 (see Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).

247. The Defendants are also in violation of California Penal Code 422.55: "(a) No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate,

interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55.   (b)  No person, whether or not acting under color of law, shall knowingly deface, damage, or destroy the real or personal property of any other person for the purpose of intimidating or interfering with the free exercise or enjoyment of any right or privilege secured to the other person by the Constitution or laws of this state or by the Constitution or laws of the United States, in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55."

248. The Defendants also formed a conspiracy, involving Kasrel to violate Plaintiff's rights and deprive Plaintiff of property, and this is a violation of law, a felony, according to California Penal Code Section 182 PC: "(a) If two or more persons conspire: (1) To commit any crime. (2) Falsely and maliciously to indict another... (3) Falsely to move or maintain any suit, action, or proceeding. (4) To cheat and defraud any person of any property... (5) ... or to pervert or obstruct justice, or the due administration of the laws."

249. The Defendants engaged in a conspiracy to falsely charge Plaintiff with fake code violations, to alter and backdate those false charges to the date Kasrel complained of the legal abatement, attempted to force Plaintiff to remove his legal abatement while taking no action to force Kasrel to remove his illegal lights, and in so doing they aided and abetted abett Kasrel in the commission of hate crimes.

### THIRD CLAIM FOR RELIEF
### Violation of the First Amendment, Civil Rights Claim (42 U.S.C. § 1981)

250. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

251. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

252. **Civil Rights Claim:** 42 U.S.C. § 1981. 5 Section 1981 guarantees "equal rights under the law." 42 U.S.C. § 1981 "prohibits both public and private discrimination based on sexual orientation, religion, or race (see Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002) and interference with the

ability to enjoy "the full and equal benefit of all laws" and "the security of persons and property," (General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

253. Plaintiff has converted his yard into a beautiful, artistic, spiritual park-like setting. Plaintiff has numerous Celtic crosses made of stone, as well as other spiritual works of art, including those symbolizing Buddhism and Taoism in his beautifully landscaped front yard..

254. The Celtic "religion" includes a special reverence for trees. Plaintiff loves trees, believes trees have a spiritual essence, has planted dozens of trees in his yard, often spends time hiking in the forests, and believes it is a crime, a sin, and a violation of his spiritual beliefs to kill trees without good reason, and only if they are diseased, dying, or pose a hazard. Plaintiff's trees are not only beautiful to behold, but are expressions, symbols of his religious beliefs and are a protected form of speech.

255. The Defendants' demand that Plaintiff destroy these trees is not only criminal, fraudulent, arbitrary capricious, but a violation of the First Amendment: Freedom of religion and freedom of speech (42 U.S.C. § 1981. 5 Section 1981; Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002;General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

## FOURTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress, Malice, Harassment

256. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

257. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

**258. Emotional Distress, Injury to Health, Safety, Wellbeing:** Plaintiff and his home have been under siege by Gene Kasrel for over 10 Years. In June of 2016 the city of San Jose and the other named Defendants began aiding and abetting and in 2018 joined with Kasrel to harm this Plaintiff.

259. Plaintiff fears destruction of his property and has suffered profound emotional stress and injury to his health and physical and emotional well being, is unable to sleep, or work, and feels insecure in his own home due to the conduct of the Defendants who have subjected him to profound emotional stress, fear, anguish, and personal, physical and psychological injury; and this is actionable:

260. (A) The Defendants intended to inflict emotional distress and knew or should have known that emotional distress was the likely result of his conduct; (B) the conduct of Defendants and Kasel whom they aided and abetted, was extreme and outrageous, was beyond all possible bounds of decency... and was utterly intolerable in a civilized community; (C) that the actions of the defendants were the cause of the plaintiff's distress detailed in this complaint; and (D) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it (Brown v. Hearst Corp., 54 F.3d 21, 27 (1st Cir. 1995).

261. Plaintiff, therefore, is entitled to damages for personal injury, suffering, loss of enjoyment of life, emotional distress, and mental anguish (see Bush v. Lucas, 462 U.S. 367 (1983); Molzof v. United States, 501 U.S. 301 (1992).

262. As Plaintiff works from his home, Defendants have interfered with his ability to perform his professional duties, and have maliciously inflicted personal and professional injuries, and interfered with existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

263. Plaintiff Dr. Rhawn Joseph has been profoundly injured, emotionally, psychologically, and physically, by the aggregate acts of the Defendants and this is actionable (Hoyen v. Manhattan Beach City School District (1978) 22 Cal.3d 508), Bush v. Lucas, 462 U.S. 367 (1983), California Civil Code, 3281, 1708).

264. **Malice and Harassment:** The conduct of the Defendants was sadistic, odious, and malicious; the purpose of which was to retaliate against Plaintiff and make him feel unsafe and his property under threat of destruction. Moreover, Defendants City of San Jose, Dave Sykes (City Manager) and Rosalynn Hughey (Director of Planning, Building, Code Enforcement) affirmed, encouraged and affirmed that this illegal conduct was official policy.

265. On December 6, 2019, the City Attorney (Richard Doyle), Dave Sykes, and Rosalynn Hughey received a criminal and civil complaint in which Plaintiff detailed evidence of harassment, personal injury, and the filing and backdating of fake code violations by Jason Gibilisco and the Dept of Code Enforcement.

266. In response, these city officials officially sanctioned the violation of San Jose's own policies regarding harassment and discrimination: "The City of San Jose, as a public employer and a provider of services, WILL NOT TOLERATE NOR CONDONE DISCRIMINATION OR HARASSMENT from any employee, regardless of employment status (City of San Jose City Administrative Policy Manual). Instead, harassment was affirmed by Dave Sykes and Rosalynn Hughey as official policy.

267. There was absolutely no investigation by the City or Defendants Dave Sykes and Rosalynn Hughey even though it was their duty to do so. Instead, in February of 2019 the Defendants directed and gave authorization to Gibilisco to continue contacting, harassing and threatening Plaintiff, to lurk outside Plaintiff's home, and to issue more threats and fake and fraudulent code violations which were again backdated to October of 2018.

268. Defendants have behaved maliciously, fraudulently, and with oppression and are in violation of California Civil Code, 3294. (c)(1) "Malice" (2) "Oppression" (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

269. The Defendants maliciously caused Plaintiff profound personal injury.

270. Malicious, harassing, and negligent actions of the Defendants are actionable (see Alpine Indus. Computers, Inc. v. Cowles Pub. Co., 57 P.3d 1178, 1188 (Wash. App. Ct. 2002); Herron v. KING Broad. Co., 746 P.2d 295 (Wash. 1987); Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708], and a violation of California Civil Code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)).

271. The Defendants' malicious, odious conduct is not protected and meets the standards for violations of California law and civil code (CPC 125; CCC 43, 46(1)(5),527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g).

### FIFTH CLAIM FOR RELIEF
#### Violation of the Fourth and Fifth Amendment

272. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

273. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

274. **Seizure and Interference with Plaintiff's Property - Cypress Trees:** The Fourth Amendment proscribes unreasonable seizure of any person, person's home, or property (Jacobsen, 466 U.S. at 113) and any "meaningful interference with an individual's possessory interests in that property"

(Soldal v. Cook County, 506 U.S. 56, 61,1992). The fifth and fourteenth amendments forbid any government agency from depriving any person of life, liberty or property.

275. After 30 years and after passing inspections by five different code enforcement officers, San Jose Code and Rosalynn Hughey and Jason Gibilisco, suddenly decided Plaintiff's Cypress trees are not trees, but "bushes" and "shrubs" and must be destroyed. And these same Defendants ignored the obvious violations of these same codes by Plaintiff's neighbors and other citizens of San Jose. Their conduct is clearly arbitrary and capricious. The courts have ruled that if administrative enforcement of laws or codes or the actions of public officers have been arbitrary, capricious, whimsical, unreasonable, fraudulent or dishonest, then any attempt to enforce these unlawful actions is contrary to and a violation of due process (2 CAL. JuR. 2d, Administrative Law and Procedure § 38, at 75-79, 1952; Ontario v. Quon, 130 S.Ct. 2619, No. 08-1332, 560 U.S. 746 (2010); Mapp v. Ohio, 367 U.S. 643 (1961).

276. Likewise, the administrative hearing, scheduled by and based on the arbitrary and capricious actions of these Defendants, is a violation of due process and the Fourth, Fifth and Fourteenth Amendments (see Morgan v. United States, 304 U.S. 1, 14-15 (1937); Vick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886) ; Desert Turf Club v. Board of Supervisors, 141 Cal. App. 2d 446, 455, 296 P.2d 882, 887 (1956); Bandini Estate Co. v. County of Los Angeles, 28 Cal. App. 2d 224, 229-30, 82 P.2d 185, 188-89 (1938).

277. The Courts have determined that laws and Federal regulations which protect the rights of citizens, including 42 U.S.C. § 1983 (1871) must be interpreted and applied liberally so as to achieve its goal of protecting official violations of federally protected rights (Dennis v. Higgins, 498 U.S. 439 (1991)).

278. There are no laws which trump or cancel out the primacy and supremacy of the U.S. Constitution and the First, Fourth, Fifth and Fourteenth Amendments which guarantee the Plaintiff's constitutional and civil rights, which the Defendants have clearly violated, and this is actionable (Butz v. Economou, 438 U.S. 478, 507 (1978); Davis v. Passman, 442 U.S. 228 (1979); Gomez v. Toledo, 446 U.S. 635 (1980). 42 U.S.C. § 1983 (1871); Daniels v. Williams, 474 U.S. 327 (1986)).

279. Defendant's conduct is also a direct assault on the Fifth Amendment which protects Plaintiff's rights to due process, as well as life, liberty, and property, against the actions of the government which causes or will cause, infringements of Plaintiff's Constitutional rights and individual liberty (see U.S. Const. amend. V; Reno v. Flores, 507 U.S. 292, 302 (1993); Wang v. Reno, 81 F.3d 808, 818 (9th Cir. 1996); Hurtado v. California, 110 U.S. 516, 531- 532 (1884)).

## SIXTH CLAIM FOR RELIEF

### Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Monell Liability
### and Constitutional Torts

280. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

281. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

282. "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative" (CAL. GOV. CODE § 815.2(a).

283. A government body may be held liable under 42 U.S.C. § 1983, when the execution of government policy or custom that may be fairly said to represent its official policy inflicts injury on a plaintiff. Section 1983 also allows liability for constitutional violations committed by government employees if the government body itself is responsible for causing constitutional deprivations.

284. Monell liability can further rest on ratification by a final policymaker, or for damages caused by a failure to train employees that leads to the deprivation of constitutional rights (Monell v. Department of Social Services, 436 U.S. 658 (1978). City Manager Dave Sykes and Rosalynn Hughey (Director of San Jose Code Enforcement), affirmed the policy that harmed and which has sought to cause future harm to this Plaintiff.

285. The city of San Jose also has a recent and well documented history of violating Civil Rights including the First and Fourteenth Amendment rights of those they hate, dislike or view as enemies (JUAN HERNANDEZ et al vs City of San Jose, United States Court of Appeals for the Ninth Circuit, No 17015576, D.C. 5:16-cv03957-LHK). As in the present case, City Manager Dave Sykes, had the ultimate responsibility for ratifying that illegal policy.

286. The City of San Jose, and the Dave Sykes, via the Dept. of Code Enforcement, have created an extrajudicial entity that acts outside State and Federal law, and which acts as judge, jury, prosecutor, and witness and which, as a matter of policy, threatens, harasses, bullies, intimidates and violates the rights of citizens who are generally powerless to resist. Plaintiff was targeted and damaged by this policy

which was affirmed by the City Manager and the Director of the Dept of Code, despite twice being warned that it was in violation of Plaintiff's rights.

287. In the present case, the Defendants conspired, as a matter of policy, to violate Plaintiff's rights to due process and equal protection under the law. The actions of the Defendants is consistent with past behavior and represents the City's official policy of causing constitutional torts and violating citizens First and Fourteenth Amendment right as also exemplified by JUAN HERNANDEZ et al vs City of San Jose, United States Court of Appeals for the Ninth Circuit, No 17015576, D.C. 5:16-cv03957-LHK).

288. Dave Sykes, as the former director of Code Enforcement, and now as City Manager has direct power and control over all administrators and city employees, who also must do his bidding: "the City Manager shall appoint all officers and employees of the City; and, when he or she deems it necessary for the good of the service, (a) the City Manager may, subject to the above-mentioned limitations, suspend without pay, demote, discharge, remove or discipline any City officer or employee..." (Article VII CITY MANAGER): (b) Except as otherwise provided elsewhere by this Charter, the City Manager shall direct and supervise the administration of all departments, offices and agencies of the City; (d) The City Manager shall be responsible for the faithful execution of all laws, provisions of this Charter (Article VII CITY MANAGER).

289. Dave Sykes City Manager, is responsible for and the final policymaker for the City and its departments. Sykes was in fact, three times contacted by email, and provided documentation of the violations, and either directly, or tacitly provided approval.

290. Dave Sykes was twice contacted by Plaintiff (on 12/6/18), and provided documentation of criminal conduct and violations of Federal and State law, and the U.S. Constitution by Gibilisco, Hughey, and the Dept of Code. In response, Defendants Sykes either tacitly or overtly again approved the policy of continued lawlessness.

291. In February of 2019. Gibilisco and the Dept of Code, were again authorized to continue violating Plaintiff's rights and to create an additional fake code violation specifically targeting Plaintiff's Cypress trees; a complaint which was backdated to October of 2018

292. Thus, (1) City Manager, Dave Sykes is not only the policy maker for city departments, but was the former head of the Dept of Code Enforcement and served as the policymaker. 2) City Manager, Dave Sykes directly controls and is responsible for the actions of Department heads and city employees. 3) City Manager, Sykes, and Hughey were informed, in writing, that tthe Dept of Code, and two employees, were violating the law, altering records, creating fake code violations, threatening and harassing Plaintiff, and were violating Plaintiff's rights to Due Process and Equal Protection under the

law. 4) Nevertheless, City Manager, Dave Sykes, and director of code, Hughey, did not order an investigation, did not disapprove, took no corrective action, and Defendant Gibilisco was directed to continue harassing and threatening Plaintiff and additional records were altered and back dated. 5) Thus, Dave Sykes, as a final policymaker for the City, and Hughey the Director of Code Enforcement, directed and approved these illegal actions including exposing Plaintiffs to dangers conditions by demanding that Plaintiff removed his abatement, and 6) by not intervening by forcing Kasrel to remove his illegal lights (City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); (7) In addition, the City failed to adequately train or supervise its code enforcement officers; and (8) the City ratified the officers' actions (see Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) and 9) thus the City and its City Manager and the Director of Code Enforcement, adopted and approved an unconstitutional policy designed to unlawfully destroy Plaintiff's property and to cause Plaintiff profound injury

293. Clearly, Defendants Sykes and Hughey were responsible for making and enforcing policy and although informed of illegal activity, ratified it either through negligence, completely indifference, tacit or overt approval, and this meets the criteria for Monel Liabilty (see Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991); City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Moreover, the City planned, directed and encouraged these injuries and this is actionable (see Nat'l Audubon Soc., Inc. v. Davis, 307 F.3d 835, 849 (9th Cir. 2002; Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

294. Via this selective and dishonest policy endorsed by the city's Manager and Ms Hughey the head of the Dept of Code, Defendants have willfully and knowingly violated Plaintiff's 14th Amendment rights to equal protection under the law. The 14th Amendment, i.e. Equal Protection: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

295. Plaintiff has also demonstrated that the City was negligent, failed to properly train its Code enforcement officers and/or familiarize them with the law and this training deficiency was so egregious that it "amount[ed] to deliberate indifference to the rights of persons with whom the" officers "come into contact." (City of Canton v. Harris, 489 U.S. 378, 388 (1989).

296. The Defendants in fact engaged in a pattern of illegal activity and committed a litany of Constitutional torts, and this further demonstrates that the City and the Defendants demonstrated a "deliberate indifference" (Connick v. Thompson, 563 U.S. 51, 62 (2011).

297. Defendants defied and violated the law, faked, altered and backdated code violations, didn't know the difference between a "shrub" and "bush" vs a trees, behaved maliciously, and so on.; and which can only lead to the reasonable conclusion that "...the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (City of Canton, 489 U.S. at 390; see also Flores v. Morgan Hill Unified School District, 324 F.3d 1130, 1136 (9th Cir. 2003).

298. This pattern of lawless indifference is also exemplified by the case of Hernandez vs the City of San Jose; and which demonstrates the City has previously and recently violated the constitutional rights of citizens as a matter of affirmed policy.

**299. Monell Claim:** "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." (Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (citing Monell, 436 U.S. at 690-91).   Specifically, the general policies or customs of the city caused the constitutional violations at issue: (1) maintained an unconstitutional policy, custom, and practice and (2) failed to properly train, supervise, or discipline officers.

300. The policymaking officials of San Jose had "actual or constructive knowledge of these violations yet did nothing to end the practice." (Whitfield v. Melendez-Rivera, 431 F.3d 1, 13 (1st Cir. 2005); see also Monell, 436 U.S. at 691). That failure to take corrective action caused several constitutional violations and injuries and "amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" DiRico v. City of Quincy, 404 F.3d 464, 468 (1st Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).   In addition, the city of San Jose customs and policies were the "moving force" behind the constitutional injury." (Beal v. Blache, 2005 WL 352861, at *2 (D. Mass. Feb. 14, 2005; see also Polk County. v. Dodson, 454 U.S. 312, 326 (1981)).

301. Plaintiff has provided evidence and as evidence of an affirmative link between the constitutional violation and the supervisor's and city managers actions, omissions, and tacit approval, and this is actionable "whether through direct participation or through conduct that amounts to condonation or tacit authorization" (Camilo–Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).

302. The Defendants are liable and do not have immunity (FTCA, 28 U.S.C. §§ 1346(b), 2671-2680; 42 U.S.C. § 1983 (1871). Each of the individual Defendants are liable for constitutional torts, and are responsible for their intentional actions and liable according to 42 U.S.C. § 1983 (1871).

303. The Supreme Court, in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) held that government employees and officials who commit constitutional torts, and

who violate Plaintiff's constitutional rights as guaranteed by the Bill of Rights, and any violation of these amendments, are liable and Plaintiff is entitled to recover money damages for any injuries he has suffered as a result of their violation of the First Amendment (Id. at 397.59)

304. The intentional tort exception, 28 U.S.C. § 2680(h), does not apply to cases involving abuse of process, misrepresentation, deceit, or interference. The Defendants are liable (28 U.S.C. § 1346(b).

305. Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his subordinates if (1) the behavior of subordinates results in a constitutional violation, and (2) the supervisor's action or inaction are affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. (Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.2008).

306. "The requirement of an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'" (Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995)). This means that the supervisor's behavior must amount to "supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Id. A finding of deliberate indifference requires a showing that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." (Hegarty, 53 F.3d at 1380). Such indifference by a supervisor can be shown if the supervisor had actual knowledge of or was willfully blind to the alleged constitutional violations.   Plaintiff has provided that evidence and thus has cause (See Feliciano–Hernandez v. Pereira-Castillo, 663 F.3d 527, 535 (1st Cir. 2011); Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998).

**307. Defendants Violations of California Code, Penal Code - PEN § 422.6:** A) No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States in whole or in part... B) No person, whether or not acting under color of law, shall knowingly deface, damage, or destroy the real or personal property of any other person for the purpose of intimidating or interfering with the free exercise or enjoyment of any right or privilege secured to the other person by the Constitution or laws of this state or by the Constitution or laws of the United States.

308. Defendants, acting under color of law, have sought to use force, threat, intimidation, to cause this Plaintiff harm, and to destroy his property.

309. The Defendants have behaved whimsically, unreasonably, fraudulently dishonestly, and their claims of code violations are fake, arbitrary, oppressive and unjust and as such they have violated and continue to seek to violate this Plaintiff's Fourth and Fourteenth Amendment rights (see Ontario v. Quon, 130 S.Ct. 2619, No. 08-1332, 560 U.S. 746 (2010); Mapp v. Ohio, 367 U.S. 643 (1961).

### SEVENTH CLAIM FOR RELIEF
### Violation of Bane Act (Cal. Civ. Code § 52.1)

310. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

311. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

312. The evidence indicates that Dave Sykes, Rosalynn Hughey, Mollie McLeod, Sean Flanagan, Jason Gibilisco have conspired to violate California and Federal Law, and to maliciously harass and violate the dignity and security of this Plaintiff, to spy on Plaintiff, to keep Plaintiff and his property under surveillance, and to falsify evidentiary records and violate due process, and have behaved maliciously and arbitrarily to destroy his property --and this is a violation of California Administrative law (2 CAL. JuR. 2d, Administrative Law and Procedure § 38, at 75-79 (1952) and the Fourth, Fifth, and Fourteenth Amendment.

313. In Katz v. United States (1967) the U.S Supreme Court has also ruled that the concept of privacy and property are linked, and that invasions of privacy and destruction of property, are a violation of the Fourth Amendment.

314. Plaintiff's Cypress trees, like all trees, provides a semblance of privacy. Plaintiff's trees are his private property.

315. Defendants interfered with prospective rights, property rights, and interfered with existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).   The Defendants also maliciously inflicted personal and professional injuries, and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

316. The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or

coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." CAL. CIV. CODE § 52.1(a). The Bane Act also provides a cause of action for anyone whose rights are harmed in this way. CAL. CIV. CODE § 52.1(b).

317. As required by the Bane Act, Plaintiff has alleged and provided evidence of "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion" (Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015)).

### EIGHTH CLAIM FOR RELIEF
### Violation of Ralph Act (Cal. Civ. Code § 51.7)

318. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

319. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

320. Defendants have retaliated against, threatened, sought to intimidate and destroy Plaintiff's property, and encouraged and aided and abetted Kasrel in his ongoing harassment of Plaintiff which has been motivated by Kasrel's belief about Plaintiff's race, religion, and sexual orientation.

321. It is also highly likely that Defendants thought Plaintiff was an Arab or Jewish--because of his dark color and last name--and were angered by the religious symbols in Plaintiff's yard.

322. The Ralph Act guarantees, that " b) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property... or on account of any characteristic listed or defined in subdivision (b)...of Section 51" [i.e. " sex, race, color, religion, ancestry...sexual orientation..."] "...The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive (CAL. CIV. CODE § 51.7).

323. Plaintiff may state a claim under the Ralph Act, because the (1) Defendants committed harm and threatened to harm the Plaintiff and his property; or (3) Plaintiff was harmed; or (4) Defendants' conduct was a substantial factor in causing this Plaintiffs harm (see Campbell v. Feld Entm't, Inc., 75 F.

Supp. 3d 1193, 1205(N.D. Cal. 2014); Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 881 (2007).

324. By refusing and failing to take any corrective action regarding the violations of Code committed by Kasrel, by aiding, abetting, and encouraging Kasrel, and by threatening fines of $2,500 a day and demanding the violent destruction of Plaintiff's property so as to inflict injury on this Plaintiff, and by demanding that Plaintiff remove his abatement so that Kasrel could continue to violate this Plaintiff, the City, "committed or threatened violent acts against Plaintiff." (Campbell, 75 F. Supp. 3d at 1205; see also Ramirez v. Wong, 188 Cal. App. 4th 1480, 1486 (2010) ("There can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property.")

325. Under the Ralph Act, "violence . . . clearly involves some physical, destructive act." Campbell, 75 F. Supp. 3d at 1205 (quoting OSJ PEP Tenn. LLC v. Harris, 2014 WL 4988070, at *5 (C.D.Cal. Oct. 7, 2014)), i.e. the destruction of Plaintiff's wrought iron fence and trees; the emotional, psychological and physical stress Defendants' threats have caused.

## NINTH CLAIM FOR RELIEF

## NEGLIGENCE (42 U.S.C. § 1983) Constitutional Torts, Liability, Damages: No Immunity

326. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

327. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

328. The intentional tort exception, 28 U.S.C. § 2680(h), does not apply to cases involving abuse of process, misrepresentation, deceit, or interference. The Defendants are liable (28 U.S.C. § 1346(b).

329. Negligence is not a defense, and is also actionable as Defendants owed the Plaintiff a duty of care (See North American Chemical Co. v. Superior Court, 59 Cal. App. 4th 764, 786, 69 Cal. Rptr. 2d 466 (1997)); and as their actions were unlawful, illegitimate, wrongful, and blameworthy (imandri v. Judkins, 52 Cal. App. 4th 326, 348, 60 Cal. Rptr. 2d 539 (1997); Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg. 216 Cal. App. 3d 1139, 1153—1154, 265 Cal. Rptr. 330 (1989); San Francisco Design Center Associates v. Portman Companies, 41 Cal. App. 4th 29, 42, 50 Cal. Rptr. 2d 716 (1995); Lange v. TIG Insurance Co., 68 Cal. App. 4th 1179, 1187, 81 Cal. Rptr. 2d 39 (1999).

330. The Defendants maliciously and negligently caused and continue to cause Plaintiff profound

injury, stress and emotional harm, and Plaintiff and his property remain under threat, And as detailed in this complaint, the Defendants attempts to force Plaintiff to destroy his trees and wrought iron fence, were arbitrary, capricious, and without any legal foundation, and violated Plaintiff's rights to equal protection and due process. Moreover, by demanding that Plaintiff remove his abatement would place Plaintiff and his property in danger, and would encourage Kasrel to escalate his attacks.

331. Defendants have and had a duty of care to avoid causing unnecessary physical harm and distress and yet they maliciously did so, and actively sought to place Plaintiff and his property in foreseeable danger; and this is actionable (see Ingham v. Luxor Cab Co., 93 Cal. App. 4th 1045, (2001); Lolli v. Mkt. St. Ry. Co., 43 Cal. App. 2d 166, 168 (1941).

332. By demanding that Plaintiff remove his legal abatement despite knowing the well documented history of attacks and assaults by Kasrel, Defendants failed to exercise reasonable care and violated their duty not to place Plaintiff in harm's way—and this is actionable according to California case law ( People v. Oliver, 210 Cal. App. 3d 138, 147 (1989); Lugtu v. California Highway Patrol, 26 Cal. 4th 703, 716 (2001); McCorkle v. Los Angeles, 70 Cal.2d 252, 260-62 (1969).

333. Further, by demanding the Plaintiff kill his Cypress trees—despite the fact that no code explicitly forbids "trees"—and knowing that these trees also serve as a legal abatement against the well documented and dangerous noise from departing and arriving airlines, Defendants also sought to place Plaintiff in harms way, and knowingly sought to injure Plaintiff.

334. Therefore, Defendants failed in their duty of care, breached their duty of care by demanding Plaintiff subject himself to danger, harm, and the destruction of his property; and sought to exacerbate the damage already inflicted by Kasrel; and caused personal and emotional injury to Plaintiff, and breached their duty be failing to intervene by demanding that Kasrel remove his illegal flood lights. Instead, Defendants sought to place Plaintiff and his property in harms' way, and aided and abetted Kasel, and inflicted additional harm on Plaintiff on Kasrel's behalf.

335. Moreover, Defendants had a duty not to violate Plaintiff's rights to equal protection under the law, and to abide by the law. Instead, the arbitrarily and capriciously, grossly misinterpreted the law so that they could retaliate against and profoundly harm this Plaintiff and his property.

336. Defendants have interfered with prospective rights, property rights, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964)).

337. Defendants were clearly negligent (CCC1714. (a)

338. The Plaintiff has been severely and profoundly injured by the malicious, harassing, and negligent actions of the Defendants and this is actionable [see Quelimane Co. Inc., v Stewart Title Guar.

Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708],   and a violation of California Civil Code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g).

339. Clearly, Plaintiff has been profoundly injured by the aggregate and negligent conduct of the Defendants who showed complete and affirmative indifference, and Plaintiff has demonstrated duty, breach of duty, and causation (see Strong v. State, 201 Cal. App. 4th 1439, 1449 (Cal. Ct. App. 2011); . S. Coast Framing, Inc. v. WCAB, 61 Cal. 4th 291, 298 (2015); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1066 (9th Cir. 2006).

340. Plaintiff has established motive, cause, negligence, duty, breach, standing and damages and has met the standard for proving negligence and injury (see Florida Foundation Seed Producers, Inc. v. Georgia Farms Services, LLC, No. 1:10-CV-125, 2012 WL 4840809, at *21 (M.D. Ga. Sept. 28, 2012) (Sands, J.) (citing Nat'l. Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982)); Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989).

### TENTH CLAIM FOR RELIEF
### Demand for Injunctive and Declarative Relief

341. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

342. This claim is brought by the Plaintiff against the City of San Jose and Dave Sykes (City Manager), Rosalynn Hughey (Director of San Jose Code Enforcement), Mollie McLeod (San Jose Code Enforcement Division Manager) and City employees Sean Flanagan and Jason Gibilesco in their individual capacities. Each of these Defendants, acting under color law, have conspired together to cause and have caused Plaintiff profound damages and injury.

343. The City of San Jose, under the management of Sykes has a history of flagrantly violating the rights of citizens and specifically targeted this Plaintiff for retaliation and injury. The best predictor of the future is the past. Therefore, it can be predicted that the City of San Jose, and departments managed by Mr. Sykes, will continue to harass, threaten, and seek to destroy the property of Plaintiff via the creation of additional fake code violations and other harmful acts.

344. Plaintiff must be protected and asks the Court to provide declarative relief and issue a permanent injunction, and order that (1) Plaintiff's trees, wrought iron fence, and abatements are protected by law. (2) The City and its departments, officials, and employees, must cease and desist from contacting, harassing, annoying, and threatening this Plaintiff; (3) the City must cease and desist from filing or

investigating any additional allegations of violations of code by this Plaintiff; (4) the City must close all code-related cases against this Plaintiff; (5) that the City must declare Plaintiff's property 100% code compliant, (6) that with the exception of police, fire and other first responders, all other departments and employees of the City must never again approach or photograph or trespass or attempt to enter or inspect Plaintiff's property by any means without a search warrant unless there is an emergency or crime in progress.

345. This Court has authority to grant the requested declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

346. This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays on behalf of himself, for the following:

347. Plaintiff is entitled to damages according to the Federal Torts Claims Act, and California law (See Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008): Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007).

348. For all damages legally and/or proximately caused to Plaintiff by Defendants in an amount to be determined at trial;

349. Plaintiff is entitled to future damages;

350. Plaintiff is entitled to "compensatory damages" for emotional and mental distress;

351. The Plaintiff is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and Exemplary damages;

352. Plaintiff is entitled to injunctive relief and a declaration that Defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights;

353. For civil penalties under CCC 52(b)

353. For time-compensation and costs of suit incurred

354. For requested declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

355. For permanent injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

356. For other such additional relief as the Court deems proper.

**JURY DEMAND**

    Plaintiff demands a trial by jury on all issues so triable.

DATED: March 10, 2019

                                          Respectfully submitted

                                      By:

                                            DR. RHAWN JOSEPH, Ph.D., Plaintiff


**VERIFICATION AND PLAINTIFF'S DECLARATION**

I, Dr. Rhawn Joseph, Ph.D. am the plaintiff in the above-entitled action. I have read the foregoing

complaint and know its contents. I declare the same is true of my own knowledge and those matters that

are alleged in the complaint on information and belief, and as to those matters, I believe to be true. I

declare under penalty of perjury under the laws of the United States of America and the State of

California that the foregoing is true and correct to the best of my knowledge and belief.

3/10/19 [date]

March 10, 2019

                                    Plaintiff: Dr. Rhawn Joseph, Ph.D