UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RHAWN JOSEPH,<br><br>              Plaintiff,<br><br>      v.<br><br>CITY OF SAN JOSE, et al.,<br><br>              Defendants. | Case No. 19-CV-01294-LHK<br><br>**ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART**<br><br>Re: Dkt. Nos. 48, 49, 52 |

Plaintiff Rhawn Joseph ("Plaintiff") brings the instant action against Defendants City of San Jose, City Manager Dave Sykes, City Attorney Richard Doyle, Director of San Jose Code Enforcement Rosalynn Hughey, San Jose Code Enforcement Division Manager and Administrative Hearing Officer Mollie McLeod, Code Enforcement Inspector Sean Flanagan, and Code Enforcement Inspector and Supervisor Jason Gibilesco (collectively, the "Named Defendants"); and Does 1–10. ECF No. 45. Before the Court is Plaintiff's motion to recuse, motion for disqualification, and motion for default judgment. Before the Court is also the Named Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). The Court

1

DENIES Plaintiff's motion to recuse, motion for disqualification, and motion for default judgment. The Court GRANTS in part and DENIES in part the Named Defendants' motion to dismiss. The Court also STAYS the instant case in part.

## I. BACKGROUND

### A. Factual Background

Plaintiff Rhawn Joseph ("Plaintiff") appears to be party to a long-running dispute with his neighbor, Gene Kasrel ("Kasrel"). ECF No. 45 ("SAC") ¶ 8. Kasrel is not a party to this lawsuit. According to Plaintiff, during the time that Plaintiff and Kasrel have been neighbors in San Jose, California, Kasrel engaged in a lengthy campaign of harassment and abuse. Among other things, Plaintiff alleges that Kasrel "has repeatedly harassed, threatened, and physically assaulted Plaintiff"; climbed onto the adjoining fence and threatened Plaintiff; and threw rocks and dog feces into Joseph's yard. *See id.* Eventually, in 2016, Kasrel erected two bright floodlights near the fence adjoining Plaintiff's yard. *Id.* Although Plaintiff repeatedly complained to the City of San Jose about Kasrel's floodlights, which Plaintiff alleges were in violation of municipal code, the City of San Jose took no action. *Id.* ¶ 12.

In response to these indignities, on October 16, 2018, Plaintiff erected an "abatement consisting of three sheets of 24 inch polyurethane which Plaintiff erected in Plaintiff's yard, thereby legally abating Kasrel's illegal lights and preventing Kasrel from harassing, threatening, or harming Plaintiff and his property." *Id.* ¶ 14. On October 19, 2018, Named Defendant Jason Gibilesco ("Gibilesco"), "acting under 'color of authority' and without a search warrant and in the absence of exigent circumstances or statutory authority," searched Plaintiff's locked and gated yard. *Id.* ¶ 2. On October 22, 2018, Plaintiff delivered letters that complained of the October 19, 2018 search to the offices of Named Defendants Sean Flanagan ("Flanagan") and Rosalynn Hughey ("Hughey"). *Id.* ¶ 3. On that same day, October 22, 2018, however, Named Defendants Flanagan and Gibilesco again searched Plaintiff's locked, gated yard. *Id.* ¶ 4. In doing so, Named Defendants Flanagan and Gibilesco "dislodged and knocked down a portion of Plaintiff's fencing

2

and a six foot tall, three panel-hand carved wooden screen thereby damaging property." *Id.*

On October 24, 2018, Named Defendant Gibilesco spoke with Plaintiff over the phone and indicated that "if Plaintiff had enough money, Plaintiff could avoid fines and problems with the city and maybe obtain a 'variance'" for the abatement. *Id.* ¶ 5. Plaintiff construed this as a solicitation for a bribe. *Id.* ¶ 6. According to Plaintiff, when Plaintiff rejected the bribe, Named Defendant "Gibilesco likely solicited and accepted money from and entered into a conspiracy with Kasrel" to violate many of Plaintiff's constitutional rights. *Id.* ¶ 17.

Specifically, Plaintiff claims that the Named Defendants "filed fake code violations against Plaintiff" notwithstanding numerous municipal code violations committed by Plaintiff's neighbors. *Id.* ¶ 19. According to Plaintiff, on November 6, 2018, Named Defendant Gibilesco filed a compliance order that warned "if Plaintiff's trees were not destroyed and his legal abatement removed, Plaintiff would be fined $2,500 a day for each fake violation, plus administrative costs." *Id.* ¶ 25. Additionally, the compliance order demanded that Plaintiff cut his wrought iron fence to a height of three feet or less or Plaintiff would be fined $2,500 each day. *Id.* ¶ 27. To support the order, Plaintiff argues that the Named Defendants altered evidence and backdated alleged violations. *Id.* ¶ 26.

Later in the month of November 2018, and in response to the Compliance Order, Plaintiff claims that Plaintiff sawed the wrought iron fence to below three feet and notified Named Defendant Gibilesco of this fact. *Id.* ¶ 28. Plaintiff also "filed official complaints with [Named] Defendants Hughey, Sykes and City of San Jose, documenting that [Named Defendants] Gibilesco and Flanagan were harassing Plaintiff, and conspiring with and faking and backdating fraudulent code violations," but "[n]o investigation took place." *Id.* ¶ 29.

In February 2019, Plaintiff received another letter from Named Defendant Gibilesco indicating that Plaintiff's trees and wrought iron fence still exceeded the maximum height under the municipal code. *Id.* ¶ 31. In response, Plaintiff demanded an administrative hearing to address the alleged violations, *see id.* ¶ 35, and an enforcement proceeding concerning the alleged

3

violations indeed occurred on May 1, 2019. *Id.* ¶ 40. At the hearing, Plaintiff avers that Plaintiff was not permitted to present certain evidence or cross-examine witnesses, and Plaintiff complains that the enforcement proceeding was tainted by fabricated evidence and ex parte communications. *Id.* ¶¶ 40–52. The enforcement proceeding has yet to result in a final decision. *Id.* ¶ 54.

**B. Procedural History**

On March 11, 2019, Plaintiff filed an initial complaint in this Court. *See* ECF No. 1. Several weeks later, on March 29, 2019, the Named Defendants requested a thirty-day extension to respond to the original complaint. *See* ECF No. 5. On April 1, 2019, the Court issued an order extending the deadline to respond to the original complaint until May 2, 2019. ECF No. 6. On May 1, 2019, the Named Defendants filed a motion to dismiss the original complaint. ECF No. 11.

On June 10, 2019, Plaintiff then requested leave to file a First Amended Complaint ("FAC"), ECF No. 27, which the Court granted on June 24, 2019. ECF No. 29. Upon doing so, the Court also denied the Named Defendants' motion to dismiss the original complaint as moot. *Id.*

Plaintiff filed the FAC on June 28, 2019. ECF No. 30 ("FAC"). The Named Defendants filed their motion to dismiss the FAC several weeks later, on July 10, 2019. ECF No. 31. On August 12, 2019, Plaintiff filed a motion for default judgment. ECF No. 36.

On August 23, 2019, the Court denied Plaintiff's motion for summary judgment and granted the Named Defendant's motion to dismiss the FAC with leave to amend. ECF No. 43. The Court determined that Plaintiff's FAC violated Federal Rule of Civil Procedure 8 and failed to give the Named Defendants notice of the claims pleaded against them. *Id.* at 7. The Court gave Plaintiff thirty days to file an amended complaint. *Id.* at 10.

On September 10, 2019, Plaintiff filed a Second Amended Complaint ("SAC"). ECF No. 45 ("SAC"). The SAC alleges twelve Claims for Relief: (1) "Violation of the First Amendment, Civil Rights Claim (42 U.S.C. § 1981)"; (2) "Conspiracy, Hate Crimes (CPS Part 1, Title 2

4

Section 31, CPS §§ 182 422.6; 42 U.S.C. § 1981)"; (3) Violation of the Fourth Amendment; (4) Violation of the Fifth Amendment; (5) Violation of the Sixth Amendment; (6) Violation of the Eighth Amendment; (7) Violation of the Fourteenth Amendment; (8) "Monell Liability, Constitutional Torts, Violation of Fourteenth Amendment (42 U.S.C. § 1983)"; (9) "Violations of Bane Act (Cal. Civ. Code § 52.1), and Ralph Act (Cal. Civ. Code § 51.7)"; (10) "Negligence (42 U.S.C. § 1983) 'Willful Indifference'"; (11) "Intentional Infliction of Emotional Distress, Malice, Harassment"; and (12) "Demand for Declarative and Injunctive Relief." SAC ¶¶ 182–325. The parties stipulated that the Named Defendants would have until October 14, 2019 to respond to the SAC. ECF No. 47.

On September 17, 2019, Plaintiff filed a declaration that the Court construes as a motion for recusal or disqualification of the Court. ECF No. 48. On September 23, 2019, Plaintiff then filed a "motion for summary judgment," which the Court construes as another motion for default judgment. ECF No. 49. The Named Defendants opposed the motion for default judgment on October 14, 2019, ECF No. 56, and Plaintiff replied on October 18, 2019, ECF No. 62.

On October 11, 2019, the Named Defendants filed a motion to dismiss the SAC. ECF No. 52. On October 18, 2019, Plaintiff opposed the Named Defendants' motion to dismiss the SAC, ECF No. 61, and on October 31, 2019, Named Defendants replied, ECF No. 64.

## II.    LEGAL STANDARD

### A. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk of the Court, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of

a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### III.     DISCUSSION

In the instant Order, the Court resolves three filings. The Court begins with a declaration filed by Plaintiff that the Court liberally construes as a motion to recuse under 28 U.S.C. § 144 and a motion for disqualification under 28 U.S.C. § 455. The Court then turns to Plaintiff's motion for

6

United States District Court
Northern District of California

United States District Court
Northern District of California

default judgment. Third, and finally, the Court resolves the Named Defendants' motion to dismiss the SAC.

### A. Motion to Recuse and Motion for Disqualification

On September 17, 2019, Plaintiff filed a declaration that asserted that the Court must be "disqualified pursuant to 28 U.S. § 351, § 352, § 455." ECF No. 48 at 1.[1] The Court liberally construes this declaration as a motion to recuse under 28 U.S.C. § 144 and a motion for disqualification under 28 U.S.C. § 455. First, the Court addresses the motion to recuse under 28 U.S.C. § 144. The Court then turns to the motion for disqualification under 28 U.S.C. § 455.

### 1. Motion to Recuse under 28 U.S.C. § 144

First, as to Plaintiff's motion to recuse under 28 U.S.C. § 144, "Section 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980). "An affidavit filed pursuant to that section is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source." *Id.* at 868. "[A] determination of the sufficiency of the facts and reasons given in the sworn statement must be made by the judge to whom the affidavit is presented." *Grimes v. United States*, 396 F.2d 331, 333 (9th Cir. 1968) (citing *Berger v. United States*, 255 U.S. 22, 36 (1921)); *see also United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978) (rejecting argument that affidavit must be referred to another judge to determine legal sufficiency). "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for determination of its merits." *Sibla*, 624 F.2d at 868. Thus, this Court's review "is addressed to the facial sufficiency of the affidavit[,] not to the truth or falsity of the facts stated therein." *Azhocar*, 581 F.2d at 738.

---

[1] Plaintiff then filed a subsequent declaration on November 12, 2019, which contains substantially overlapping allegations. ECF No. 65.

7

As best the Court can discern, Plaintiff asserts three reasons that recusal under 28 U.S.C. § 144 is warranted. First, Plaintiff argues that the Court "is protecting and serving the interests of [the Named Defendants'] politically powerful criminal enterprise" because the Named Defendants "can do favors for those promoting [the Court's] ambitions." ECF No. 48 ¶¶ 8–10. Plaintiff's assertions that the Court "is protecting and serving the interests" of the Named Defendants because of the alleged influence wielded by the Named Defendants is speculative. In support, Plaintiff muses that the Named Defendants "can do favors" for the Court, because "[i]t is highly probable" that "the businesses in which [the husband of Dianne Feinstein] has invested, have had, or will have, direct dealings with" the Named Defendants. *Id.* ¶ 9. Recusal under 28 U.S.C. § 144 is not warranted based on speculation of this nature. *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (recusal not warranted under 28 U.S.C. § 144 or § 455 based on speculation); *see also United States v. Kubon*, No. 18-cv-04788-PJH, 2019 WL 3387651, at *3 (N.D. Cal. July 10, 2019) ("And the fourth, defendants' 'conspiracy' assertion, amounts to rank speculation that lacks any factual support and thus is insufficient to support recusal or disqualification.").

Second, Plaintiff argues that "this relationship sets the stage for ex parte communications, between [the Court] an intermediary [*sic*] and the [Named] Defendants." According to Plaintiff, "there is evidence [of ex parte communications] between the hours of 1:35 to 3:00 PM on 3/29/19; i.e. soon after [the Court] received Defendants' 'Administrative Motion', the Defendants were advised to amend and change the wording thereby giving Judge Koh and the Defendants greater leeway to obtain more time to file a motion to dismiss thus circumventing the rule 12 deadline." ECF No. 48 ¶¶ 8–10.

Plaintiff's declaration studiously and conspicuously avoids ever actually alleging that the Court engaged in ex parte communications with the Named Defendants. Instead, Plaintiff resorts to vague conjecture. Plaintiff asserts that the Court's alleged relationship with the Named Defendants "sets the stage for ex parte communications," that "there is evidence" of unspecified ex parte communications, and that the Court "has likely engaged in ex parte communications." *Id.*

8

¶¶ 8–10, 16.  The thrust of Plaintiff's argument appears to be that the Named Defendants "were advised [by an unspecified individual] to amend and change the wording" of an administrative motion that the Named Defendants filed on March 29, 2019.  *Id.*  Plaintiff seems to refer to the fact that on March 29, 2019, the Named Defendants refiled an administrative motion for an extension of time they had made an hour-and-a-half earlier that day in order to correct "a typographical error in the caption."  ECF No. 5 at 1 n.1.  Specifically, the Named Defendants changed the caption of the administrative motion to clarify that it was a motion to extend the time for filing a "responsive pleading," not just for filing a "dispositive motion."  *Id.*  Because Plaintiff does not actually allege ex parte communications by the Court, Plaintiff's argument on this score is legally insufficient.  *See, e.g.*, *Hiramanek v. Loftus*, No. 5:13-CV-00228-RMW, 2015 WL 4881469, at *2 (N.D. Cal. Aug. 14, 2015) ("First, plaintiff's declaration contains no legally sufficient allegations of any ex parte communications.  The allegations are entirely conclusory and not supported by facts relevant to the conclusion plaintiff seeks to draw.").[2]

Third, Plaintiff argues that the Court has misrepresented Plaintiff's briefing, "adopted the Defendants' talking points and distorted the material facts of this case," "refused to reprimand or levy sanctions or strike," "refused this Plaintiff's Fifth Amendment right to be 'heard,' refused to allow Plaintiff to engage in Discovery, and refused to hear a motion that Defendants are in default because of their brazen violation of American Bar Association and California Bar Association Rule 1.7."  ECF No. 48 ¶¶ 2–4, 13–17.  Assertions of this nature amount to arguments about the Court's prior rulings in the instant case.  However, it is well established that a "judge's prior adverse ruling is not sufficient cause for recusal."[3]  *Taylor v. Regents of Univ. of Cal.*, 993 F.2d

---

[2] Further, although the Court need not address "the truth or falsity of the facts stated" in Plaintiff's declaration, *Azhocar*, 581 F.2d at 738, the Court nevertheless notes that the Court did not engage in any ex parte communications with the Named Defendants concerning the administrative motion for an extension of time.

[3] To the extent that Plaintiff's subsequent declaration makes any new allegations, these allegations concern the Court's rulings in other, unrelated cases.  ECF No. 65.  These, too, are legally insufficient to warrant recusal.  *See, e.g.*, *Price v. City of Red Lodge, Mont.*, No. CV 14-00058-BLG-SPW-CSO, 2014 WL 4656479, at *2 (D. Mont. Sept. 17, 2014) (allegations of bias from

9

710, 712 (9th Cir. 1993) (per curiam) (internal quotation marks omitted).

In sum, and as outlined in the foregoing, Plaintiff fails to make any legally sufficient allegations that state adequate grounds for recusal under 28 U.S.C. § 144. Accordingly, the Court need not refer Plaintiff's motion to another judge, and the Court DENIES the motion for recusal. *See, e.g.*, *Sibla*, 624 F.2d at 868 ("An affidavit filed pursuant to that section is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source."). The Court now proceeds to address Plaintiff's motion for disqualification under 28 U.S.C. § 455.

### 2. Motion for Disqualification under 28 U.S.C. § 455

Second, the Court addresses Plaintiff's motion for disqualification under 28 U.S.C. § 455. Under 28 U.S.C. § 455, a judge must be disqualified "in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), including where the judge "has a personal bias or prejudice concerning a party," *id.* § 455(b)(1). Unlike 28 U.S.C. § 144, 28 U.S.C. § 455 is "directed to the judge, rather than the parties, and is self-enforcing on the part of the judge." *Sibla*, 624 F.2d at 867–68. Section 455 does not provide a procedural mechanism to refer the recusal question to another judge. *Id.* at 868 ("Moreover, section 455 includes no provision for referral of the question of recusal to another judge; if the judge sitting on a case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself.").

Plaintiff's motion for disqualification under 28 U.S.C. § 455 fares no better than plaintiff's motion to recuse under 28 U.S.C. § 144. This is so because the same substantive standard applies to motions made under 28 U.S.C. § 144 and motions made under 28 U.S.C. § 455. *Id.* at 867 (noting that "[t]he same substantive standard" applies to both 28 U.S.C. § 144 and 28 U.S.C. § 455). Because the Court previously determined that Plaintiff's declaration does not make any

_____

"prior rulings in this and other prior proceedings" inadequate to warrant recusal).

Case No. 19-CV-01294-LHK
ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

legally sufficient allegations to warrant recusal, the Court necessarily concludes that Plaintiff does not make any legally sufficient allegations to warrant disqualification under 28 U.S.C. § 455. Accordingly, the Court DENIES Plaintiff's motion for disqualification.

Next, the Court turns to Plaintiff's motion for default judgment.

## B. Motion for Default Judgment

On September 23, 2019, Plaintiff filed a "motion for summary judgment" against Defendants Sykes, Hughey, McLeod, Flanagan, and Gibilesco. ECF No. 49. Although Plaintiff styles this motion as a motion for summary judgment, it is clear that the motion is in actuality a motion for default judgment. As an initial matter, discovery in the instant case has been stayed pending the Court's decision on the Named Defendants' motion to dismiss the SAC. ECF No. 63; *see, e.g., Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) ("As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" (quoting *In re TMJ Litig.*, 113 F.3d 1484, 1490 (8th Cir.1997)).

Thus, tellingly, Plaintiff does not argue that the record contains no genuine issue of material fact as to the allegations made in Plaintiff's SAC. Instead, Plaintiff simply argues that the Named Defendants "failed to file responsive pleadings by April 3, 2019." ECF No. 63 ¶ 10. Indeed, Plaintiff specifically cites "Rule 55(a)(b)(1)(2)" at various points in Plaintiff's motion, and Federal Rule of Civil Procedure 55 is the rule that governs default and default judgment. *Id.* ¶¶ 1, 2. Plaintiff also claims that the basis of the motion is that "Defendants Dave Sykes, Rosalynn Hughey, Mollie Mcleod, Sean Flanagan, [and] Jason Gibilesco *were in default* as of April 3, 2019." *Id.* ¶ 1 (emphasis added). Accordingly, the Court construes Plaintiff's motion as a motion for default judgment.

Default judgment is improper in the instant case. The Court reconstructs Plaintiff's default judgment theory as follows. "Rule 1.7 of the American Bar Association and California Bar Association . . . requires attorneys to obtain 'informed consent, confirmed in writing,' from any and all clients, before they can represent these clients, when there is a probability of a conflict of

United States District Court
Northern District of California

interest." *Id.*  According to Plaintiff, in the instant case, "there are obvious conflicts of interest as to who authorized or initiated the conspiracy, what pressures were placed on the different Defendants to participate, who orchestrated the cover up of these crimes, who might be fired because of or held responsible for this conduct and for each individual crime, and so on." *Id.* ¶ 3.

Hence, Plaintiff argues that counsel for the Named Defendants should be disqualified. Plaintiff asserts that Plaintiff requested "proof that conflict of interest waivers were signed" from counsel for the Named Defendants, but that Named Defendants declined to supply the requested proof to him. *Id.* ¶¶ 4, 5.  Accordingly, in the absence of such proof, Plaintiff now claims that the Court must determine that counsel for the allegedly conflicted Named Defendants was "never legally authorized" to file responsive pleadings. *Id.* ¶ 6.  Because the responsive pleadings are "null and void," Plaintiff appears to believe that default judgment logically follows. *Id.* ¶ 10.

First, and most fundamentally, Plaintiff fails to demonstrate that counsel for the Named Defendants must be disqualified.  As an initial matter, it is highly unclear whether Plaintiff even has standing to raise an argument concerning disqualification of counsel for the Named Defendants. *See Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010) ("Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney."); *Colyer v. Smith*, 50 F. Supp. 2d 966, 972 (C.D. Cal. 1999) ("The majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client.").

Even assuming that Plaintiff has standing to raise the argument, however, disqualification of counsel for the Named Defendants is unnecessary.  Disqualification of counsel is strongly disfavored and is considered a "drastic measure." *Yumul v. Smart Balance, Inc.*, No. CV 10–00927 MMM (AJWx), 2010 WL 4352723, at *3 (C.D. Cal. Oct. 8, 2010).  This is so because arguments for disqualification are often made for improper purposes. *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (noting concern for the "misuse

12

ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

of the rules for tactical purposes"); *Multimedia Patent Trust v. Apple, Inc.*, No. 10–CV–2618 H(CAB), 2011 WL 1636928, at *1 (S.D. Cal. Apr. 29, 2011) ("Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is considered to be a drastic measure that is generally disfavored and imposed only when absolutely necessary."). Plaintiff therefore must bear the "heavy burden" required to show that disqualification is necessary. *SEC v. King Chuen Tang*, 831 F. Supp. 2d 1130, 1139 (N.D. Cal. 2011) (referring to "the heavy burden that must be met to justify disqualification of opposing counsel").

Under Civil Local Rule 11-4, attorneys that practice in the Northern District of California must "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California." L.R. 11-4(a)(1). California has not adopted the American Bar Association model rules. *See, e.g.*, *Real Estate Training Internat'l, LLC v. Nick Vertucci Cos., Inc.*, 124 F. Supp. 3d 1005, 1006 (C.D. Cal. 2015) ("Much to the chagrin of countless practitioners inside and outside of California, however, California has not adopted the ABA model rules."). Thus, the California Rules of Professional Conduct provide the operative framework for the ethical issue Plaintiff raises here.

"[T]he fact that an attorney is jointly representing multiple clients—either in the same or different litigations—does not necessarily mean that an actual conflict exists." *Frank Gari Prods., Inc. v. Smith*, No. CV 12–248–GHK (FFMx), 2012 WL 12895903, at *3 (C.D. Cal. June 15, 2012). However, California law imposes on counsel the duty to secure informed consent from parties "when a single attorney represents two parties in a matter because of the very real possibility that the interests of the clients in the litigation may at some point diverge and come into conflict." *In re GFI Mortgage LLP*, No. C 12–03956 SI, 2013 WL 4647300, at *4 (N.D. Cal. Aug. 29, 2013) (internal quotation marks and citations omitted). Specifically, under Rule 1.7(b) of the California Rules of Professional Conduct, "[a] lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a

13

United States District Court
Northern District of California

significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." Cal. Prof. Conduct, 1.7(b).

Here, counsel for the Named Defendants has filed a declaration under penalty of perjury that counsel is unaware of any current conflicts between the Named Defendants, and that each of the Named Defendants has signed an engagement agreement with a conflict waiver provision. ECF No. 56-1 ¶¶ 2–4. The Court is satisfied that in light of the early stage of litigation in the instant case, and the fact that counsel for the Named Defendants has sworn under penalty of perjury that each of the Named Defendants has provided informed written consent to counsel's concurrent representation, the actual engagement agreements need not be filed on the docket. In the event that an actual conflict develops between the various Named Defendants such that counsel's representation of one Named Defendant is "directly adverse" to others, counsel for the Named Defendants is advised that further informed written consent is required. Cal. Prof. Conduct 1.7(a), cmt. 2 ("If a lawyer initially represents multiple clients with the informed written consent as required under paragraph (b), and circumstances later develop indicating that direct adversity exists between the clients, the lawyer must obtain further informed written consent of the clients under paragraph (a).").

Second, the Court notes that disqualification of counsel, even in the event it were warranted, would not automatically result in the Named Defendants' responsive pleadings becoming "null and void" such that default judgment would then be appropriate. Indeed, other courts have squarely rejected this sweeping assertion. *See Cal Pure Pistachios, Inc. v. Primex Farms, LLC*, No. CV 09–7874–GW(RCx), 2010 WL 11523590, at *1 (C.D. Cal. Jan. 7, 2010) ("Defendants have not cited any case authority that supports granting the relief they request—*i.e.*, disqualifying counsel, striking all of the pleadings they have filed, and granting all of Defendants' motions."). Further, as the Court previously explained in an order denying Plaintiff's earlier motion for default judgment, the Court's decision whether to grant a default judgment is

14

discretionary, not automatic. *Aldabe*, 616 F.2d at 1092. This discretion is constrained by the "general rule that default judgments are ordinarily disfavored," and that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1471. When "a defendant demonstrates a clear purpose to defend themselves, a court may not enter default against them." *Best Deals on TV, Inc. v. Naveed*, No. C 07-01610 SBA, 2008 WL 2477390, at *7 (N.D. Cal. June 18, 2008). In this case, the Named Defendants have repeatedly demonstrated a clear purpose to defend themselves by filing motions to dismiss the original complaint, the FAC, and the SAC. ECF Nos. 11, 31, 52. Plaintiff's motion for default judgment contains virtually no argument that this case represents the appropriate circumstance for the Court to exercise its discretion to grant default judgment.

Moreover, Plaintiff filed the SAC on September 10, 2019, before Plaintiff filed the instant motion for default judgment, and Plaintiff does not allege that the Named Defendants were untimely in responding to the SAC. *See* ECF Nos. 45, 49. Instead, as in Plaintiff's earlier motion for default judgment, Plaintiff appears to focus on a failure to respond to Plaintiff's original complaint. *Id.* ¶ 7 ("Defendants failed to file any motion or responsive pleading within the 21 days Rule 12 deadline (i.e. April 3, 2019)."). However, the effect of Plaintiff filing the SAC is that Plaintiff's original complaint and FAC have been superseded. Therefore, any "default based on the original complaint must also be rendered ineffectual and non-existent." *ThermoLife Intern., LLC v. Sechel Holdings, Inc.*, 2015 WL 1521779, at *1 (D. Ariz. Apr. 3, 2015); *accord Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (explaining that an amended pleading supersedes the original pleading such that "after amendment the original pleading no longer performs any function and is treated 'thereafter as nonexistent'"). Thus, Plaintiff may not rely on the Named Defendants' alleged failure to timely respond to his original complaint to move for default judgment.

Moreover, as the Court previously explained, it is the Clerk of the Court, not the Court, who must determine that a party has defaulted as an initial matter. *See* Fed. R. Civ. P. 55(a)

15

ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." (emphasis added)).  Here, the Clerk of the Court has not entered default against the Named Defendants, so the Court lacks any authority to grant default judgment.  *See Eitel* 782 F.2d at 1471 (explaining the two-step default process required by Rule 55).

In sum, for all of the reasons outlined above, the Court must DENY Plaintiff's motion for default judgment.  The Court now turns to the Named Defendants' motion to dismiss.

**C. Motion to Dismiss the SAC**

Next, the Court turns to the Named Defendants' motion to dismiss the SAC.  The SAC alleges twelve Claims for Relief: (1) "Violation of the First Amendment, Civil Rights Claim (42 U.S.C. § 1981)"; (2) "Conspiracy, Hate Crimes (CPS Part 1, Title 2 Section 31, CPS §§ 182 422.6; 42 U.S.C. § 1981)"; (3) Violation of the Fourth Amendment; (4) Violation of the Fifth Amendment; (5) Violation of the Sixth Amendment; (6) Violation of the Eighth Amendment; (7) Violation of the Fourteenth Amendment; (8) "Monell Liability, Constitutional Torts, Violation of Fourteenth Amendment (42 U.S.C. § 1983)"; (9) "Violations of Bane Act (Cal. Civ. Code § 52.1), and Ralph Act (Cal. Civ. Code § 51.7)"; (10) "Negligence (42 U.S.C. § 1983) 'Willful Indifference'"; (11) "Intentional Infliction of Emotional Distress, Malice, Harassment"; and (12) "Demand for Declaratory and Injunctive Relief."  SAC ¶¶ 182–325.

First, the Court concludes that dismissal of much of the SAC is warranted because Plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Second, the Court concludes that *Younger* abstention applies to the instant case to the extent that Plaintiff's SAC challenges an ongoing state enforcement proceeding.  Third, the Court concludes that *Younger* abstention does not apply to the extent that Plaintiff asserts a 42 U.S.C. § 1983 claim for damages under the Fourth Amendment that arises from the allegedly unlawful search of Plaintiff's fenced yard.  The Court discusses these issues in turn.

**1. The SAC Fails to State a Claim as to Numerous Causes of Action**

16

As the Court noted in the previous order dismissing Plaintiff's initial complaint, it is difficult to discern the causes of action that Plaintiff asserts in the instant case. Mindful that the Court must "construe pro se filings liberally when evaluating them" under Federal Rule of Civil Procedure 12(b)(6), *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the Court nevertheless concludes that much of Plaintiff's SAC fails to state a claim.

### a. First Claim for Relief: Civil Rights Claims under 42 U.S.C. § 1981

In Plaintiff's First Claim for Relief, Plaintiff repeatedly asserts a claim under 42 U.S.C. § 1981. *See, e.g.* SAC ¶¶ 182–197, 242. Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mercer v. Sw. Airlines Co.*, No. 13-CV-05057-MEJ, 2014 WL 4681788, at *7 (N.D. Cal. Sept. 19, 2014) (internal quotation marks and citation omitted). A plaintiff must also make a "showing of intentional racial discrimination." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff never alleges that Plaintiff is a member of a racial minority. Plaintiff also does not adequately allege that any of the Named Defendants acted with an intent to discriminate against Plaintiff. Instead, Plaintiff focuses only on the alleged racial animus of Plaintiff's neighbor, Kasrel, who is not a defendant in the instant case. *E.g.*, SAC ¶¶ 15, 20 (alleging "hatred of Plaintiff [] based on Kasrel's perceptions of Plaintiff's race, religion, and sexual orientation"). Accordingly, the Court GRANTS the Named Defendants' motion to dismiss the SAC to the extent

17

that the SAC alleges a claim under 42 U.S.C. § 1981.

### b. Second Claim for Relief: "Conspiracy, Hate Crimes"

Plaintiff's Second Claim for Relief alleges a claim for "conspiracy [and] hate crimes." SAC ¶¶ 191–97. To the extent that Plaintiff attempts to allege a claim under 42 U.S.C. § 1981, Plaintiff fails for the reasons outlined above. However, Plaintiff also invokes several state criminal laws, namely California Penal Code §§ 31, 182, 422.55, and 422.6. Two of these statutes, California Penal Code §§ 31 and 422.55, are merely definitional, and they provide the meaning of "principals" and "hate crime" under California criminal law, respectively. Cal. Penal Code §§ 31, 422.55. Neither provision contains any cause of action. Accordingly, dismissal is warranted. *See, e.g.*, *Sepehry-Fard v. Dept. Stores Nat'l Bank*, No. 13–cv–03131–WHO, 2013 WL 5537126, at *9 (N.D. Cal. Oct. 4, 2013) ("As to the 10th Cause of Action, for violation of 18 U.S.C. section 1961, section 1961 is simply the definitional section of RICO and not a cause of action. Therefore, this claim is DISMISSED WITH PREJUDICE.").

The other two statutes cited by Plaintiff define criminal offenses. California Penal Code § 182 is California's conspiracy statute. Cal. Penal Code § 182. California Penal Code § 422.6 is a California hate-crime statute. Neither statute contains a private right of action; only the government can prosecute criminal cases. *See Hoffman v. Lassen Adult Detention Facility*, No. 2: 15-cv-1558 JAM KJN P, 2017 WL 2535461, at *3 n.1 (E.D. Cal. June 12, 2017) (explaining that "California Penal Code section 422.6 provides no private right of action"); *Harvey v. City of South Lake Tahoe*, No. CIV S–10–1653 KJM EFB PS, 2011 WL 3501687, at *7 (E.D. Cal. Aug. 9, 2011) ("To the extent plaintiff seeks to state a claim against the City defendants for conspiracy pursuant to Penal Code section 182, that claim should be dismissed without leave to amend. A private right of action under a criminal statute has rarely been implied.").

Accordingly, the Court also dismisses Plaintiff's claims under the foregoing statutes. *See, e.g.*, *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of criminal causes of action "because these are criminal statutes that do not give rise to civil

United States District Court
Northern District of California

liability"); *see also, e.g.*, *Williams v. Ortega*, No. 3:18-cv-00547-LAB-MDD, 2019 WL 5704684 (S.D. Cal. Nov. 4, 2019) ("Williams argues that falsifying medical records violates California Penal Code sections 132 and 134.  The R&R correctly points out that these sections are not privately actionable.").

Accordingly, the Court GRANTS the Named Defendants' motion to dismiss the SAC to the extent that the SAC alleges a claim under California Penal Code §§ 31, 182, 422.55, and 422.6.

### c.  Ninth Claim for Relief: Violations of the Ralph Act

Plaintiff's Ninth Claim for Relief alleges violations of two California state laws: the Bane Act, Cal. Civ. Code § 52.1, and the Ralph Act, Cal. Civ. Code § 51.7.  The Court addresses the latter here.

The Ralph Act, California Civil Code § 51.7, states that persons within California have the right to be free from any "violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51."  Cal. Civ. Code § 51.7(a).  When claiming a violation of section 51.7, a plaintiff must show: "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's [protected characteristic]; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm."  *I.H. v. Oakland School for Arts*, 234 F. Supp. 3d 987, 995 (N.D. Cal. 2017) (internal quotation marks omitted).

As discussed, Plaintiff's SAC fails to adequately plead that the Named Defendants, as opposed to Kasrel, Plaintiff's non-defendant neighbor, were motivated by the perception of any protected characteristics under California law.  *E.g.*, SAC ¶¶ 15, 20 (alleging "hatred of Plaintiff [] based on Kasrel's perceptions of Plaintiff's race, religion, and sexual orientation").  Hence, Plaintiff's claim under the Ralph Act fails as a matter of law.

### d.  Conclusion and No Leave to Amend

In sum, and in light of the foregoing analysis, the Court GRANTS the Named County Defendants' motion to dismiss the SAC as to the following causes of action:

- Plaintiff's First Claim for Relief to the extent that it asserts a claim under 42 U.S.C. § 1981;

- Plaintiff's Second Claim for Relief in its entirety;

- Plaintiff's Seventh Claim for Relief to the extent that it asserts a claim under 42 U.S.C. § 1981;

- Plaintiff's Ninth Claim for Relief to the extent that it asserts a claim under the Ralph Act, Cal. Civ. Code § 51.7.

The Court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotation marks and alteration omitted).

Here, the Court previously dismissed Plaintiff's FAC because Plaintiff "fail[ed] to give the Named Defendants 'fair notice'" of the nature of Plaintiff's claims. ECF No. 43 at 7. The Court notified Plaintiff that failure to "cure the deficiencies identified" by the Court and the Named Defendants would result in "dismissal of [Plaintiff's] claims with prejudice." *Id.* at 10. The Named Defendants also previously explained that Plaintiff's FAC was "devoid of any facts that Defendants discriminated against Plaintiff because of race or ethnicity." ECF No. 31 at 6. Because Plaintiff's SAC fares no better in this regard, and because Plaintiff's claims under criminal statutes fail as a matter of law, the Court concludes that further amendment would be futile. Accordingly, the Court DENIES leave to amend the foregoing claims.

**2. *Younger* Abstention Applies**

The Court now turns to Plaintiff's remaining claims. The claims consist of 42 U.S.C. § 1983 claims under the First, Fourth, Fifth, Fifth, Sixth, Eighth, and Fourteenth Amendments, as

20

well as a California state law claim under the Bane Act, Cal. Civ. Code § 52.1, and a California state tort claim for intentional infliction of emotional distress. SAC ¶ 198–321.

The Named Defendants argue that "administrative exhaustion" bars all of Plaintiff's 42 U.S.C. § 1983 claims. The Named Defendants are incorrect. As the Ninth Circuit has explained, "[g]iven th[e] unique legislative intent to provide a federal forum for the vindication of federal rights, courts historically declined to require § 1983 plaintiffs to exhaust state remedies." *Ramirez v. Galaza*, 334 F.3d 850, 854 (9th Cir. 2003). It is true that Congress "altered this tradition in 1996 with the enactment of the Prison Litigation Reform Act by requiring *prisoners* to exhaust all administrative remedies before filing a § 1983 action." *Id.* (emphasis added). However, Plaintiff is not a prisoner and is not subject to the Prison Litigation Reform Act. Hence, "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982).

While exhaustion does not bar Plaintiff's claims, the Court nevertheless concludes that *Younger* abstention does apply to almost all of Plaintiff's remaining claims. *Younger* abstention "is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008). Federal courts may *sua sponte* consider whether *Younger* abstention is appropriate at any stage of the proceedings. *See, e.g.*, *Bellotti v. Baird*, 428 U.S. 132, 143 (1976) ("Indeed, it would appear that abstention may be raised by the court [s]ua sponte."). Here, at the heart of Plaintiff's SAC is a San Jose administrative proceeding that involves municipal code violations, which code enforcement officials allegedly assessed against Plaintiff. *Younger* abstention may apply to civil enforcement proceedings of this nature. *See, e.g.*, *San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d at 1091 (explaining that enforcement proceeding undertaken by San Jose Elections Commission required *Younger* abstention). The Court must undertake the analysis to determine whether abstention is required in the instant case.

Under Ninth Circuit precedent, *Younger* abstention applies if the four *Middlesex* factors are met: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, *i.e.*, would interfere with the state proceeding in a way that *Younger* disapproves." *Id.* at 1092. In the event that the *Middlesex* factors are met, abstention is mandatory. *See, e.g.*, *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005) (explaining that "*Younger* abstention imposes mandatory limits on the federal courts' ability to exercise jurisdiction").

In the instant case, as explained below, the Court concludes that all four requirements are met with respect to almost all of Plaintiff's claims in the instant case.

### a. A State-Initiated Proceeding Is Ongoing

First, it is clear that in the instant case, the state-initiated proceeding is ongoing. Indeed, Plaintiff specifically alleges that the "administrative hearing officer" involved in Plaintiff's case has not yet made a decision on Plaintiff's case. SAC ¶ 54. Plaintiff further acknowledges that once the administrative hearing does produce a decision, then Plaintiff will also have resort to "an appeals board." *Id.*; *see also* San Jose Municipal Code section 1.14.050 ("If full compliance is not achieved within the time specified in the compliance order, or the person subject to the compliance order has filed a timely request for hearing from the decision of the director, the director shall advise the secretary to the appeals board to set a hearing before the [appeals] board.").[4]

The Court thus has little difficulty concluding that a state-initiated proceeding is ongoing in the instant case. *See San Jose Silicon Valley Chamber of Commerce Political Action Comm.*,

---

[4] The applicable city ordinances are the proper subject of judicial notice, which the Named Defendants request here. ECF No. 53; *see Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) ("[C]ity ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice."); *Hansen v. City of San Francisco*, 2014 WL 1310282 (N.D. Cal. Mar. 31, 2014) (relying on Newcomb to take judicial notice of San Francisco city regulations).

Case No. 19-CV-01294-LHK
ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

546 F.3d at 1093 ("There is no principled distinction between finality of judgments for purposes of appellate review and finality of state-initiated proceedings for purposes of *Younger* abstention. We therefore hold that the administrative proceeding is 'ongoing' for purposes of *Younger* abstention.").

Hence, the first requirement for the application of *Younger* abstention is met. Next, the Court must determine whether the state proceeding implicates important state interests.

### b. The State Proceeding Implicates Important State Interests.

Second, in order for *Younger* abstention to apply, the ongoing state proceeding must also implicate "important state interests." *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc). The importance of a state's interest "is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003). Here, the ongoing administrative proceeding concerns Plaintiff's compliance with local zoning regulations that involve Plaintiff's fence and trees. *See, e.g.*, SAC ¶ 31 (alleging that one Named Defendant "falsely claimed Plaintiff's wrought-iron fence was still above code requirements and must be destroyed in 30 days or Plaintiff would be fined $2,500 a day and falsely claimed Plaintiff's trees were a 'fence' and must be destroyed in 30 days or he'd be fined $2,500 a day plus administrative costs"); *see also* San Jose Municipal Code section 20.30.600 ("All fences on lots with a single one-family dwelling in any zoning district shall conform to the development regulations set forth below in Table 20-80.").

Courts have routinely held that cities' actions to enforce zoning ordinances implicate important state interests. *See, e.g.*, *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987) (explaining that "a civil action in order to obtain compliance with an ordinance which aims at avoidance of public nuisances" implicated important state interests); *see also Harper v. Public Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005) ("Similarly, property law concerns, such as land use and zoning questions, are frequently 'important' state

23

interests justifying *Younger* abstention.").

Additionally, if an ongoing proceeding is "judicial in nature," that fact also supports a finding that the proceeding implicates important state interests. *See Baffert*, 332 F.3d at 618 (explaining that "[w]hether the state proceedings are 'judicial in nature' or 'quasi-criminal' also plays a role in assessing the significance of the state interest"). Here, Plaintiff allegedly participated in "an adjudicatory hearing, which is quasi-judicial." *Id.* This fact, too, supports the conclusion that the ongoing state proceeding implicates important state interests.

Thus, the Court concludes that the second requirement for the application of *Younger* abstention is met. The Court now turns to the third requirement for *Younger* abstention.

### c. The Federal Plaintiff Is Not Barred from Litigating Federal Constitutional Issues in the State Proceeding.

Third, the Court must determine whether Plaintiff is barred from litigation of federal constitutional issues in the state proceeding. The Ninth Circuit has explained that whether Plaintiff may raise federal constitutional issues in the administrative proceeding itself does not resolve the inquiry. *See San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d at 1093 ("Plaintiffs correctly observe that the Elections Commission did not consider, and likely could not have considered, federal constitutional questions. But that observation does not resolve the inquiry."). Instead, the Ninth Circuit has held that it is sufficient that a plaintiff may "petition for a writ of mandate to challenge the administrative action in state court" under California Civil Code § 1094.5. *Id.* "That procedure suffices for purposes of *Younger* abstention." *Id.*

As Plaintiff himself appears to recognize, Plaintiff may invoke a writ of mandate under California Civil Code § 1094.5 to challenge alleged federal constitutional violations here. *See, e.g.*, SAC ¶ 105; *J. Arthur Props., II, LLC v. San Jose*, 21 Cal. App. 5th 480, 485 (2018) (examining writ of mandate from San Jose code enforcement proceeding involving municipal zoning). The Ninth Circuit has held this procedure to be sufficient to satisfy the third *Middlesex*

24

factor. *See Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) ("This statutory framework [established by California Civil Code § 1094.5] provides a meaningful opportunity for Kenneally to present his constitutional claims for independent judicial review prior to the Board's decision becoming effective."). Accordingly, the Court concludes that Plaintiff is not barred from litigating federal constitutional issues in the ongoing proceeding.

Thus, the third requirement for the application of *Younger* abstention is met. The Court proceeds to consider the fourth requirement.

### d. The Federal Court Action Would Enjoin the Proceeding or Have the Practical Effect of Doing So.

Finally, the Court must determine whether the requested relief in the instant action would "enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). Under Ninth Circuit case law, "'direct interference' is not required as a precondition for *Younger* abstention." *Gilbertson*, 381 F.3d at 978. Hence, "*Younger* principles may apply to claims for damages under § 1983." *Id.* at 979.

Almost all of Plaintiff's claims meet the fourth requirement for abstention. First, Plaintiff specifically seeks the following "declarative and injunctive relief": "(A) [] the Court declares the Administrative Hearing was illegal, and (B) violated CAPA [*i.e.*, California Administrative Procedure Act] statutes and (C) violated Plaintiff's Constitutional Rights and (D) that Plaintiff's wrought iron fence, Cypress trees, and abatement are legal and not in violation of code, and (E) Plaintiff[] owes no fines, and (F) due to Defendants' criminal misconduct Defendant San Jose can[]not, for a period of 10 years[,] file or charge Plaintiff and his property with any additional code violations." SAC ¶ 324; *see also* SAC ¶¶ 328–30.

In other words, Plaintiff specifically asks the Court to enjoin the ongoing enforcement proceeding and to issue declaratory relief that the enforcement proceeding is illegal. This represents the very paradigm of interference with an ongoing state proceeding that *Younger*

25

abstention is designed to prevent. *See, e.g.*, *Gilbertson*, 381 F.3d at 975 (explaining that "federal courts should almost never enjoin state criminal proceedings; federal courts should also refrain from exercising jurisdiction in actions for declaratory relief because declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment").

Plaintiff's SAC also seeks money damages under 42 U.S.C. § 1983 and state law. The Ninth Circuit has repeatedly explained that *Younger* abstention is required in claims for damages where "a determination that the federal plaintiff's [] rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings." *Gilbertson*, 381 F.3d at 968. Here, almost all of Plaintiff's claims for money damages meet this test. Plaintiff's claims under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments would generally require[] the district court to determine first whether violations of [Plaintiff's] civil rights have occurred in the course of the state enforcement proceeding." *Herrera*, 918 F.3d at 1048. Specifically, Plaintiff's constitutional claims would require determinations as to whether the enforcement proceeding violates Plaintiff's freedom of religion; whether the enforcement proceeding violates procedural due process; whether the enforcement proceeding constitutes an unlawful seizure of Plaintiff's property; whether the enforcement proceeding will result in excessive fines; whether the enforcement proceeding will result in a state-created danger to Plaintiff; whether the enforcement proceeding discriminates against Plaintiff on the basis of a protected characteristic; whether the enforcement proceeding constitutes malicious or selective prosecution; and whether these alleged constitutional violations arose from the City of San Jose's failure to train. SAC ¶¶ 182–281, 302–314. If the Court made determinations on any of these issues, the Court's decision would have preclusive effect on the enforcement proceeding. Accordingly, *Younger* requires that the Court abstain from resolving the foregoing questions.

Moreover, the Court concludes that resolution of Plaintiff's Bane Act and intentional infliction of emotional distress state law claims for money damages would also have the effect of a

26

declaration or injunction on pending state proceedings. Plaintiff's theory under the Bane Act

appears to depend on the same alleged constitutional violations connected to the enforcement

proceeding outlined above. SAC ¶ 284 ("Although the Bane and Ral[ph] acts are rooted in state

law claims, the branches, in this case, are entangled with violations of the U.S. Constitution . . .

."). Similarly, Plaintiff's intentional infliction of emotional distress claim would require the Court

to determine whether the Named County Defendants' conduct in connection with the enforcement

proceeding was sufficiently "outrageous" to warrant relief under state tort law. SAC ¶ 320

(asserting that because of the Named County Defendants' conduct related to enforcement

proceeding, "Plaintiff fears destruction of his property, has suffered emotional stress and injury to

his health and emotional well being"). Such a determination would require assessing whether the

Named County Defendants' conduct "exceed[ed] all bounds of decency usually tolerated by a

decent society," and whether Plaintiff's civil rights were violated in connection with the

enforcement proceeding. *See, e.g.*, *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590,

617 (1989) (deeming conduct "outrageous" in light of "an employee's fundamental, civil right" to

be free from discrimination).[5]

In light of the foregoing analysis, the Court concludes that the four *Middlesex* factors apply

to almost all of Plaintiff's claims. Thus, under *Younger*, the Court is required to abstain as to these

claims. *See San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d at

1089 (noting that because *Younger* applied, the district court "was required to abstain"). However,

"[i]f state proceedings are conducted in bad faith or to harass the litigant, or other extraordinary

circumstances exist, the district court may exercise jurisdiction even when the criteria for *Younger*

abstention are met." *Baffert*, 332 F.3d at 632. Accordingly, the Court must also address the

question of whether any exception to *Younger* applies such that the Court may nevertheless opt to

---

[5] The sole claim Plaintiff asserts that does not satisfy the fourth *Middlesex* factor, which the Court discusses further *infra* Section III.C.5, consists of Plaintiff's 42 U.S.C. § 1983 claim that arises from the allegedly unlawful searches conducted by two of the Named Defendants.

27

Case No. 19-CV-01294-LHK
ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

exercise jurisdiction.

### e. No Exception to *Younger* Abstention Applies.

In some cases, a district court may exercise jurisdiction even when *Younger* abstention would otherwise be warranted. The United States Supreme Court has explained that "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief appropriate." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). "[T]he bad-faith and harassment exceptions to *Younger* abstention are narrow." *Hason v. Superior Court*, No. CV 14-8446-SVW (JPR), 2015 WL 10607561, at *4 (C.D. Cal. Dec. 18, 2015). A plaintiff must provide something more than conclusory allegations that the state proceeding is the product of bad faith or harassment. *See, e.g.*, *Anderson v. McKim*, No. C-14-4463 EMC, 2015 WL 831227, at *4 (N.D. Cal. Feb. 23, 2015) (applying *Younger* abstention when petitioner did "not make any plausible non-conclusory allegation of irreparable harm, bad faith, harassment, or bias of the tribunal"). Moreover, "a claim of constitutional error during the ongoing state proceeding, by itself, is insufficient to invoke an exception to *Younger* abstention." *Bautista v. California*, No. CV 16-07068 PSG (AFM), 2016 WL 5661861, at *2 (C.D. Cal. Sept. 28, 2016).

Here, Plaintiff does assert that the enforcement proceeding was brought in bad faith, but the Court finds Plaintiff's claims to be conclusory and implausible. For instance, Plaintiff asserts that one of the Named County Defendants "explained if Plaintiff had enough money, Plaintiff could avoid fines and problems with the city and maybe obtain a 'variance' for Plaintiff's legal abatement." SAC ¶ 5. From this conversation, Plaintiff appears to infer that the Named County Defendant "solicited a bribe and attempted to extort money and was threatening to file a code violation if Plaintiff did not pay money." *Id.* ¶ 6. Plaintiff later goes on to assert that Plaintiff's neighbor, Gene Kasrel, "has (allegedly) claimed he has power and influence at San Jose Code. Thus, it can be assumed that [one Named County Defendant] received a bribe from Kasrel and

28

ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

1  agreed to act as Kasrel's agent, to act on Kasrel's hatred, and to harm Plaintiff on behalf of Kasrel

2  because Plaintiff refused to pay a bribe for protection." *Id.* ¶ 18.

3        Based on allegations of this nature, Plaintiff appears to assert that the enforcement

4  proceeding is the product of "a conspiracy to extort money and violate Plaintiff's rights." *Id.* ¶ 65.

5  Conclusory allegations like the foregoing, however, do not meet the high threshold to make the

6  instant case an "extraordinary circumstance" in which abstention is inappropriate. *See, e.g.*,

7  *Kihagi v. Francisco*, No. 15-cv-01168-KAW, 2016 WL 5682575, at *4 (N.D. Cal. Oct. 3, 2016)

8  ("Evidence of bad-faith harassment must be more than multiple prosecutions, must be more than

9  conclusory statements about motive, must be more than a weak claim of selective prosecution, and

10  must be more than the prosecution of close cases." (internal quotation marks omitted)); *Hason*,

11  2015 WL 10607561, at *4 (explaining that bad-faith and harassment exceptions to *Younger*

12  abstention "require more than mere conclusory allegations, . . . which is all Petitioner has

13  provided").

14        Moreover, Plaintiff has not demonstrated that Plaintiff will suffer "irreparable injury"

15  absent immediate federal intervention. *Ledesma*, 401 U.S. at 85. In order to show irreparable

16  injury, "a plaintiff must be facing an irreparable injury that is both 'great' and 'immediate.'"

17  *Choudhry v. Regents of the Univ. of Cal.*, No. 16-cv-05281-RS, 2016 WL 6611067, at *7 (N.D.

18  Cal. Nov. 9, 2016). In the instant case, there is no indication that any threatened injury to

19  Plaintiff, either in the form of potential fines or destruction of property, is "immediate."

20        Accordingly, the Court concludes that no exception to *Younger* abstention exists such that

21  the Court may exercise federal jurisdiction. The Court therefore finally turns to the impact of

22  *Younger* abstention in the instant case.

23            **f.  Application of *Younger* to the Instant Case.**

24        The Ninth Circuit has explained that the application of *Younger* abstention depends on the

25  nature of Plaintiff's claims. Specifically, "when a court abstains under *Younger*, claims for

26  injunctive and declaratory relief are typically dismissed." *Herrera*, 918 F.3d at 1042. However,

27                                          29

28  Case No. 19-CV-01294-LHK
ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING
MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS; STAYING IN PART

the Ninth Circuit "has also recognized that, when a district court abstains from considering a *damages* claim under *Younger*, it must *stay*—rather than dismiss—the damages action until state proceedings conclude." *Id.*

As noted, here, Plaintiff brings claims for injunctive, declaratory, and monetary relief. Accordingly, in light of the foregoing Ninth Circuit case law, the Court must GRANT without prejudice the Named County Defendant's motion to dismiss Plaintiff's twelfth Claim for Relief, which constitutes Plaintiff's request for "Declaratory and Injunctive Relief." SAC ¶¶ 322–25. By contrast, the Court must STAY the following Claims for Relief, which seek monetary relief and which would require the Court to "to determine first whether violations of [Plaintiff's] civil rights have occurred in the course of the state enforcement proceeding," *Herrera*, 918 F.3d at 1048:

- Plaintiff's First Claim for Relief to the extent that it asserts a claim under the First Amendment;
- Plaintiff's Third Claim for Relief to the extent that it asserts a claim under an unconstitutional seizure or malicious prosecution theory of the Fourth Amendment;
- Plaintiff's Fourth Claim for Relief in its entirety;
- Plaintiff's Fifth Claim for Relief in its entirety;
- Plaintiff's Sixth Claim for Relief in its entirety;
- Plaintiff's Seventh Claim for Relief in its entirety;
- Plaintiff's Eighth Claim for Relief in its entirety;
- Plaintiff's Ninth Claim for Relief to the extent that it asserts a violation of the Bane Act, Cal. Civ. Code § 52.1;
- Plaintiff's Tenth Claim for Relief in its entirety; and
- Plaintiff's Eleventh Claim for Relief in its entirety.

The Court now turns to Plaintiff's Fourth Amendment unlawful search claim, which is the sole remaining claim for relief to which *Younger* abstention does not apply.

### 3. Plaintiff Alleges a Fourth Amendment Unlawful Search Claim as to Defendants

Case No. 19-CV-01294-LHK
ORDER DENYING MOTION TO RECUSE; DENYING MOTION FOR DISQUALIFICATION; DENYING MOTION FOR DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING IN PART

United States District Court
Northern District of California

**Flanagan and Gibilesco**

Notwithstanding the foregoing analysis, the Court concludes that Plaintiff adequately states one claim under 42 U.S.C. § 1983 to which *Younger* abstention does not apply. Specifically, Plaintiff argues that "Gibilesco and Flanagan, acting under 'color of authority,' without a search warrant, in absence of exigent circumstances or statutory authority, twice trespassed into Plaintiff's locked and gated yard, [and] damaged property" during an allegedly unlawful search. SAC ¶ 201.

### a. Plaintiff Adequately States a Fourth Amendment Illegal Search Claim as to Defendants Flanagan and Gibilesco

Plaintiff adequately asserts a Fourth Amendment violation. The interior of a "locked and gated yard" represents Plaintiff's curtilage, which is "subject to Fourth Amendment protection." *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010); *see also Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 929 (D. Nev. 2012) ("Shafer's backyard constitutes the curtilage of his home."). "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). "Such conduct thus is presumptively unreasonable absent a warrant." *Id.* Plaintiff clearly asserts that Defendants Flanagan and Gibilesco searched the interior of Plaintiff's yard without a warrant and caused damage to Plaintiff's fence. SAC ¶¶ 2–4, 201. Plaintiff also asserts that Named Defendants Flanagan and Gibilesco acted in the absence of exigent circumstances. *Id.* The Named Defendants provide no argument whatsoever that these allegations should be dismissed.

To the extent that Plaintiff alleges that Defendants Hughey and City of San Jose were also involved in the allegedly illegal search, however, the Court finds such allegations to be inadequate. Specifically, Plaintiff merely asserts that Defendant Hughey "overtly or tacitly authorized Flanagan and Gibilesco" to conduct one of the searches. "Section 1983 suits, like *Bivens* suits, do not support vicarious liability." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). The rote claim that Defendant Hughey "overtly or tacitly authorized" one of

31

the searches, without more, is thus insufficient to state a claim based on Defendant Hughey's own unconstitutional conduct. *See, e.g.*, *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (explaining that "a police officer's '[b]eing a mere bystander [to his colleagues' conduct] was insufficient' to support § 1983 liability").

Similarly, Plaintiff appears to assert that Defendant City of San Jose "engaged in a criminal conspiracy" to violate Plaintiff's Fourth Amendment rights. SAC ¶ 4. To the extent Plaintiff seeks to assert a *Monell* claim, such a claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). In the SAC, Plaintiff provides little more than a recitation of the elements of various *Monell* theories. *See* SAC ¶¶ 256–81. Moreover, Plaintiff does not link the alleged policies to the allegedly unlawful searches. Instead, Plaintiff simply refers generically to policies and practices that led to violations of unspecified "constitutional rights." *Id.* In light of the sheer volume of constitutional deprivations alleged by Plaintiff in the SAC, an allegation of this nature is insufficient to provide "fair notice and enable the opposing party to defend itself effectively" against a *Monell* claim that arises from the allegedly unlawful searches. *Starr*, 652 F.3d at 1216. Hence, to the extent that Plaintiff alleges a *Monell* claim against Defendant City of San Jose that arises from the allegedly unlawful searches conducted by Defendants Flanagan and Gibilesco, the Court must conclude that Plaintiff fails to state a claim.

Thus, the Court GRANTS the Named Defendants' motion to dismiss the SAC as to Plaintiff's Fourth Amendment unlawful search claim against Defendants Hughey and City of San Jose. The Court previously dismissed Plaintiff's FAC because Plaintiff "fail[ed] to give the Named Defendants 'fair notice'" of the nature of Plaintiff's claims. ECF No. 43 at 7. The Court

notified Plaintiff that failure to "cure the deficiencies identified" by the Court would result in "dismissal of [Plaintiff's] claims with prejudice." Thus, the Court concludes that granting Plaintiff another leave to amend to plead with further specificity would be futile. The Court therefore DENIES leave to amend.

By contrast, for the reasons outlined above, the Court DENIES the Named Defendants' motion to dismiss the SAC as to Plaintiff's Fourth Amendment unlawful search claim against Named Defendants Flanagan and Gibilesco.

### b. *Younger* Abstention Does Not Apply to Plaintiff's Unlawful Search Claim

The Ninth Circuit has explained that when a plaintiff brings a Fourth Amendment claim that arises from an allegedly unlawful search made in the course of investigation of a municipal code violation, abstention with respect to that claim is improper. This is so because a "ruling in favor of [plaintiffs] on such claims would presumably not invalidate the basis for the code-violation enforcement proceedings, and the Fourth Amendment claims themselves are not at issue in such proceedings." *Herrera*, 918 F.3d at 1049. In other words, the fourth *Middlesex* prong is not satisfied as to Plaintiff's 42 U.S.C. § 1983 Fourth Amendment unlawful search claim against Named Defendants Flanagan and Gibilesco. *Id.* ("Thus, unlike a determination that the civil proceeding itself is constitutionally deficient, a determination that a Fourth Amendment violation occurred and that the Herreras are entitled to monetary damages would not have the same practical effect as a declaration or injunction on pending state proceedings." (internal quotation marks omitted)).

Accordingly, the Court also concludes that *Younger* abstention as to Plaintiff's 42 U.S.C. § 1983 Fourth Amendment unlawful search claim against Named Defendants Flanagan and Gibilesco is improper. Because *Younger* abstention is required as to all of the undismissed claims alleged in the SAC, the Court recognizes that the instant Order may result in "piecemeal litigation." *Id.* Because the Court is obligated to decide cases within the scope of federal jurisdiction, however, this conclusion is unavoidable.

33

**CONCLUSION**

For the foregoing reasons, the Court resolves the Plaintiff's motion to recuse, motion for disqualification, motion for default judgment, and the Named Defendant's motion to dismiss the SAC as follows.

First, the Court DENIES Plaintiff's motion to recuse and motion for disqualification.

Second, the Court DENIES Plaintiff's motion for default judgment.

Third, the Court rules as follows on the Named Defendant's motion to dismiss the SAC:

- The Court GRANTS without leave to amend the Named Defendants' motion to dismiss the SAC with respect to Plaintiff's First Claim for Relief to the extent that it asserts a claim under 42 U.S.C. § 1981;

- The Court STAYS Plaintiff's First Claim for Relief to the extent that it asserts a claim under the First Amendment;

- The Court GRANTS without leave to amend the Named Defendants' motion to dismiss the SAC with respect to Plaintiff's Second Claim for Relief in its entirety;

- The Court STAYS Plaintiff's Third Claim for Relief to the extent that it asserts a Fourth Amendment unlawful seizure or malicious prosecution claim;

- The Court GRANTS without leave to amend the Named Defendants' motion to dismiss the SAC with respect to Plaintiff's Third Claim for Relief to the extent that it asserts a Fourth Amendment unlawful search claim against Named Defendants Hughey and City of San Jose;

- The Court DENIES Named Defendants' motion to dismiss the SAC with respect to Plaintiff's Third Claim for Relief to the extent that it asserts a Fourth Amendment unlawful search claim against Named Defendants Flanagan and Gibilesco;

- The Court STAYS Plaintiff's Fourth Claim for Relief in its entirety;

- The Court STAYS Plaintiff's Fifth Claim for Relief in its entirety;

- The Court STAYS Plaintiff's Sixth Claim for Relief in its entirety;

United States District Court
Northern District of California

- The Court STAYS Plaintiff's Seventh Claim for Relief in its entirety;

- The Court STAYS Plaintiff's Eighth Claim for Relief in its entirety;

- The Court GRANTS without leave to amend the Named Defendants' motion to dismiss the SAC with respect to Plaintiff's Ninth Claim for Relief to the extent that it asserts a violation of the Ralph Act, Cal. Civ. Code § 51.7;

- The Court STAYS Plaintiff's Ninth Claim for Relief to the extent that it asserts a violation of the Bane Act, Cal. Civ. Code § 52.1;

- The Court STAYS Plaintiff's Tenth Claim for Relief in its entirety;

- The Court STAYS Plaintiff's Eleventh Claim for Relief in its entirety;

- The Court GRANTS without prejudice the Named Defendants' motion to dismiss the SAC with respect to Plaintiff's Twelfth Claim for Relief in its entirety.

The sole claim that the Court has not dismissed or stayed with the instant Order is Plaintiff's 42 U.S.C. § 1983 Fourth Amendment unlawful search claim against Named Defendants Flanagan and Gibilesco.

The claims that the Court stays in the instant Order shall remain stayed until the Court orders otherwise. The parties shall notify the Court when the underlying state proceedings are no longer ongoing and explain why *Younger* abstention is no longer warranted in light of the instant Order.

**IT IS SO ORDERED.**

Dated: March 3, 2020

_____
LUCY H. KOH
United States District Judge