UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| RHAWN JOSEPH,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, *et al.*,<br><br>    Defendants. | Case No.  19-cv-01294-RMI<br><br>**ORDER RE: PLAINTIFF'S REQUEST FOR RECUSAL OR DISQUALIFICATION**<br><br>Re: Dkt. No. 156 |

Now pending before the court is Plaintiff's "Demand for Voluntary Recusal" (dkt. 156), pursuant to 28 U.S.C. § 455. The document is remarkably short in that it consists of only seven sentences arranged into five numbered paragraphs. In essence, Plaintiff suggests – in conclusory fashion and without providing any hint of detail – that the undersigned: "has consistently demonstrated bias in the case"; that the undersigned has "engaged in conduct so dishonest and divorced from reality [] that it shocks even other attorneys who find this behavior [] inexplicable and astonishing"; that the undersigned has "consistently engaged in conduct that violates" judicial ethics cannons as well as Plaintiff's constitutional rights; that the undersigned has "interfered with Plaintiff's attempt to conduct discovery, and has bullied and treated this Plaintiff as if he is trash"; that the undersigned's "conduct is not just biased and dishonest, but malicious"; and, pursuant to § 455(a)(b) [sic] that the undersigned "has a legal and ethical responsibility to voluntarily recuse himself  from the case . . . immediately." Pl.'s Mot. (dkt. 156) at 1. The court finds that, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), Plaintiff's request is suitable for disposition without oral argument. For the reasons stated below, Plaintiff's request is meritless and therefore it is due to be denied.

There are two federal statutes that address standards for recusal: 28 U.S.C. §§ 144 and 455. While Plaintiff has only invoked §455, to give effect to liberal construction of Plaintiff's 1-page request, the undersigned will address both statutes. Generally speaking, a judge is required to recuse if he or she has a personal bias or prejudice against a party. *Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir. 1987). A motion to disqualify under § 144 requires the party to file a legally sufficient affidavit alleging facts supporting the claim that the judge is biased or prejudiced against that party. *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980). If the affidavit is legally insufficient or unsupported by a factual basis, the court must deny the motion. *Id.* at 868. In this case, Plaintiff did not reference § 144, or submit a § 144 affidavit, or set forth anything remotely resembling a factual basis; instead, Plaintiff's motion seeking disqualification is expressly based on § 455(a) and (b)(1). *See* Pl.'s Mot. (dkt. 156) at 1 (asserting that the undersigned should be disqualified from presiding over this case due to "personal bias or prejudice concerning a party."). Accordingly, the court will address Plaintiff's contentions under § 455.

In either case, "[t]he substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: Whether a _reasonable_ person with knowledge of all the facts would conclude that the judge's impartiality might _reasonably_ be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (emphasis added) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (*per curiam*)); *see also Sibla*, 624 F.2d at 867 ("The test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in section 144 are controlling in the interpretation of section 455(b)(1)"). For present purposes, it is important to note that, "[t]he 'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" *Clemens v. United States Dist. Court*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)). It should also not escape mention that, as explained by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. The *Litekey* Court explained that, "[i]n and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), [judicial rulings alone] cannot possibly show reliance upon an extrajudicial source; and

can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved." *Id*. Thus, while judicial rulings are almost invariably proper grounds for an appeal, they rarely constitute, by themselves, a proper basis for recusal. *Id*. Additionally, the opinions formed by a judge on the basis of events occurring in the course of the proceedings likewise do not constitute a basis for a bias or partiality motion except when they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Even "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*. However, such remarks may support such a motion "if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*.

By way of example, the *Litekey* Court cited to *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants wherein the trial judge had remarked to the following effect: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.'" *Liteky*, 510 U.S. at 555 (quoting *Berger*, 255 U.S. at 28). In this regard, the Court elaborated further that mere "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," are not suitable bases for recusal or disqualification motions. *Liteky*, 510 U.S. at 555-56. Lastly, and perhaps most importantly for present purposes, it should not go without mention that "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id*. at 556. Under these standards, Plaintiff's motion is baseless. Indeed, the motion is patently frivolous. As described below, Plaintiff's established pattern of over-the-top reactions stemming from his dissatisfaction with this court's "ordinary efforts at courtroom administration" are not a suitable basis for disqualification motions.

This case was filed in March of 2019. *See* Compl. (dkt. 1). Plaintiff has sued the City of San Jose as well as various individually-named defendants, under various theories, stemming from

3

1 interactions between the Parties that were rooted in various efforts by the City and the
2 individually-named defendants to enforce a number of alleged code violations associated with
3 Plaintiff's property. *See id*. at 2-59. The case was originally assigned to then district judge Lucy
4 Koh (*see* dkts. 3, 6, 7) (Judge Koh has since been confirmed as a judge on the Court of Appeals
5 for the Ninth Circuit). Very early in the case, Judge Koh granted a motion to dismiss Plaintiff's
6 FAC, while granting him leave to amend. *See* Order of August 23, 2019 (dkt. 43) at 1-10. Shortly
7 thereafter, Plaintiff filed an amended complaint (dkt. 45), however, he also demanded that "Judge
8 Koh must be disqualified and removed," while asserting (again, in rank conclusory fashion) that
9 she had defamed him, that she had a conflict of interest, that she had engaged in *ex parte*
10 communications, and that she had "displayed willful indifference to 22 counts of perjury and
11 falsification of material facts." *See generally* Pl.'s Aff. (dkt. 48) at 1-5. Judge Koh denied the
12 motion because it was baseless and frivolous. *See* Order of March 3, 2020 (dkt. 73) at 7-11 (". . .
13 Plaintiff's declaration does not make any legally sufficient allegations to warrant recusal . . .").
14       Thereafter, Plaintiff filed another lawsuit in this court against substantially the same
15 parties, while adding Judge Koh as a defendant and alleging that she had conspired with the San
16 Jose defendants to harass Plaintiff regarding the aforementioned code enforcement matters
17 attending Plaintiff's use of his residential property. *See generally Joseph v. Koh et al*., 3:20-cv-
18 03782-WHO (N.D. Cal.) (Date Filed: May 29, 2020) (hereafter referred to as "*Joseph v. Koh*").
19 The Complaint in that case includes scandalous and sensational – though utterly baseless –
20 accusations. *See generally Joseph v. Koh*, Compl. (dkt. 1) at 5 ("[Judge] Koh commits fraud,
21 obstructs justice."); 5 ("[Judge] Koh accepted bribes, gratuity to fix cases on behalf of powerful
22 special interests."); 7 ("Judge Koh] is on record ridiculing, expressing racist, sexist contempt for
23 [w]hite men . . ."); 10 ("[Judge Koh] made herself a willing co-conspirator when Defendants
24 conspired to recklessly endangered (sic) Plaintiff's life and property and to expose him to Corona
25 virus (sic)."); *see also* Pl.'s RFJN (dkt. 20) at 2 ("Plaintiff has documented that complaints against
26 [Judge] Lucy Koh are legion, with even the U.S. Department of Justice referring to her decisions
27 as a 'threat to [n]ational [s]ecurity'; whereas numerous others, including legal scholars have
28 accused her of incompetence and dishonesty, and those with cases before her having accused her

1    of conspiring with powerful special interests to violate civil rights, destroy evidence and fix cases
2    on their behalf."). When Judge DeMarchi entered a report and recommendation (dkt. 23) ordering
3    reassignment of *Joseph v. Koh* to a district judge and recommending that Plaintiff's claims be
4    dismissed, Plaintiff trained his ire at Judge DeMarchi. *See generally* Pl.'s Objections (dkt. 26) at
5    12-13 (referring to her analysis as "inept"; 15 (stating that "[t]he only one doing any sweeping is
6    [Judge] DeMarchi who repeatedly sweeps away the facts to protect her friends."); 17
7    (characterizing the judge as sanctimonious and decrying her "pattern of 'la-la land' reasoning");
8    19 (calling the judge disingenuous and accusing her of "ignoring the laws and facts"); 21 (
9    claiming that "[Judge] DeMarchi [was] continuing her campaign to defend her friends . . ."). In the
10   end, *Joseph v. Koh*, was reassigned to Judge Orrick (dkt. 25) who adopted Judge DeMarchi's
11   report and recommendation (*see* dkt. 29). Plaintiff then filed an amended complaint (dkts. 30, 31),
12   which Judge Orrick dismissed with prejudice (dkt. 43).

13         Turning the discussion back to the the instant case, on August 22, 2022, the matter was
14   reassigned to the undersigned (*see* dkt. 125). When the matter was reassigned, two motions were
15   pending – both were summary judgment motions filed by Plaintiff (*see* dkts. 110, 120). Shortly
16   after the reassignment, the court scheduled a status conference for September 20, 2022, such as to
17   coordinate the remainder of the case schedule (*see* dkt. 128). Plaintiff, however, was adamant that
18   his summary judgment motions should be heard at a time and in a manner of *his* choosing rather
19   than on a schedule determined by the court (*see* dkts. 132, 133, 134, 135, 136). On September 20,
20   2022, both at the status conference (dkt. 137) and in a case management order (dkt. 138) that
21   issued on the same date, the court established the different schedule for the progress of the case –
22   one that, in retrospect, appears to have been met with Plaintiff's profound displeasure. In essence,
23   the court noted that it would not yet render a decision on Plaintiff's summary judgment motions,
24   not until after discovery closed and Defendants' summary judgment motions were also on file –
25   such that the court would only render a single decision at the summary judgment phase. *See id*.
26   This unremarkable event of ordinary courtroom and case administration appears to have stirred
27   Plaintiff's ire. For example, immediately after the status conference, Plaintiff filed the first of his
28   many remonstrances. *See* Pl.'s Ltr. (dkt. 139) at 1 ("Mr. Illman's biased conduct and biased

rulings in what was supposed to be a 09/20/22 'status conference' 'shocks the conscious' (sic) and is an outrageous affront to any concept of truth and justice."). Several days later, came Plaintiff's threat to sue the undersigned as he did to Judge Koh, while stating, "[y]our conduct is criminally inexplicable. I won this case, I am owed summary judgment, I won. And now you come along and obstruct and pervert justice and refuse to hear my motions . . . Your orders are illegal." *See* Pl.'s Ltr. (dkt. 141) at 1. From there, the situation devolved further (much as was the case in *Joseph v. Koh*) with Plaintiff accusing the undersigned of lying (dkt. 155 at 1) as well as stating again that "Mr. Illman has perverted has perverted and obstructed justice . . . [and that] [i]t is impossible for Plaintiff to get a fair hearing from Illman who is 'in-your-face' biased and dishonest and alters a two sentence statement to mean the exact[] opposite of what is clearly stated." *Id*. Following that, Plaintiff filed his threadbare 7-sentence request for recusal (dkt. 156).

During the short duration for which the undersigned has been involved in this case, the court has had no interaction with Plaintiff, or Defendants, from which any reasonable observer could adduce even the slightest hint of either favoritism or antagonism – let alone one which might make rendering a fair judgment impossible. Contrary to Plaintiff's blusterous assertions, he has neither experienced bias nor partiality – nor will he. The only actions taken by the undersigned thus far can only be described as the very sort of "ordinary efforts at courtroom administration" that the Supreme Court has stated to be well beyond the ambit of disqualification and recusal motions. *See Liteky*, 510 U.S. at 555-56. As for Plaintiff's efforts to create such an appearance by threats to sue or by leveling *ad hominem* attacks at the court, those efforts cannot by themselves create a conflict. If that were the case, then any litigant could easily disqualify any presiding judge simply by calling them names or threatening to sue them. Thus, Plaintiff's "Demand for Voluntary Recusal" (dkt. 156) is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 30, 2022

ROBERT M. ILLMAN
United States Magistrate Judge