1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

RHAWN JOSEPH,

Plaintiff,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No.  19-cv-01294-RMI

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 110, 120, 160

Now pending before the court are cross motions for summary judgment – Plaintiff has

filed two such motions (dkts. 110, 120), and Defendants have filed one (dkt. 160). As for

Plaintiff's motions, Defendants have responded (*see* dkts. 113, 126), and Plaintiff has filed replies

(*see* dkts. 114, 127). As for Defendants' motion, Plaintiff has responded (dkt. 161), and

Defendants have not filed any reply. The matters, therefore, have been fully briefed and are ripe

for decision. The court finds that, pursuant to Federal Rule of Civil Procedure 78(b) and Civil

Local Rule 7-1(b), these matters are suitable for disposition without oral argument; and, for the

reasons stated herein, Plaintiff's motions are denied and Defendants' motion is granted.

## FACTUAL BACKGROUND

The record reflects the following facts to be undisputed unless otherwise indicated herein.

This case is rooted in a dispute between Plaintiff and his neighbor that appears to have originated

when Plaintiff's neighbor installed certain lighting equipment that had the effect of illuminating a

portion of Plaintiff's home, as well as several trees and vines on Plaintiff's property. *See* Second

Amend. Compl. ("SAC") (dkt. 45) at 3. To put it briefly, Plaintiff was somewhat displeased with

his neighbor's use of that lighting equipment so he erected certain large polyurethane panels to

United States District Court
Northern District of California

1   block the lights; when the City of San Jose complained that the panels (as well as Plaintiff's

2   cypress trees) were in violation of certain municipal code provisions, citations issued, and then

3   administrative proceedings ensued, and the ultimate result was that Plaintiff removed the

4   polyurethane panels himself but was not required to cut or remove his trees, or to pay any fines or

5   fees, and the instant lawsuit nevertheless ensued.

6         In response to the light intrusion onto his property, after unsuccessfully complaining about

7   his neighbor's lights, Plaintiff used "three sheets of 24-inch polyurethane" which he "erected" atop

8   or adjacent to his fence (*see id*.); it appears that the polyurethane panes were used to effectively

9   extend the height of Plaintiff's fence such as to block the unwanted intrusion of light from his

10   neighbor's property. *See* Pl.'s Mot., Exh. 3, (dkt. 110) at 183-84. Plaintiff believed that his

11   neighbor's "lights were damaging Plaintiff's trees by attracting pests, and [] Plaintiff was

12   concerned for the health of his trees which symbolized Plaintiff's religious beliefs as indicated by

13   the Celtic Crosses in Plaintiff's yard and set within and between Plaintiff's [c]ypress trees." SAC

14   (dkt. 45) at 4.

15         Then, without any detail, and in eminently conclusory fashion, Plaintiff alleged that his

16   neighbor hated him because of "perceptions about Plaintiff's race, religion, and sexual

17   orientation." *Id*. At this point, the tenor of the SAC began to reach crescendo with the allegation –

18   again, in conclusory and speculative fashion – that San Jose Code Inspector Jason Gibilisco

19   "likely solicited and accepted money from and entered into a conspiracy with [Plaintiff's

20   neighbor] to [] commit hate crimes against Plaintiff, based on [Plaintiff's neighbor's] perceptions

21   of Plaintiff's race, religion, sexual orientation, and Plaintiff's exercise of his 1st and 4th

22   Amendment rights and []to demand that Plaintiff remove his legal abatement so that [Plaintiff's

23   neighbor] could continue harming Plaintiff, and [] to file fake code violations against Plaintiff's

24   valuable [c]ypress trees and to illegally demand their destruction [] when in fact Plaintiff's trees

25   are protected by Municipal Code and San Jose Tree Policy." *Id*. at 4-5.

26         In any event, after code enforcement authorities received a complaint to the effect that

27   Plaintiff had erected some sort of large panels atop the fence in the side yard of his home, Sean

28   Flanagan (a city code inspector) inspected that part of Plaintiff's property from a public sidewalk

United States District Court
Northern District of California

1    on October 19, 2018; and, having confirmed the violation, he left his business card on the gate,

2    and took a photograph of the business card as he left it on the gate. *See* Defs.' Mot. (dkt. 160),

3    Exh. 4 (hereafter, "Flannagan Decl.") (dkt. 160-4) at 2, 4. Inspector Flannagan never entered

4    Plaintiff's property (*see id*. at 2), and Plaintiff concedes that he has no information to the contrary

5    other than later finding the business card in his yard several feet from the gate (*see* Defs.' Mot.

6    (dkt. 160) Exh. 2 (hereafter "Joseph Depo." (dkt. 160-2) at 8-9) (wherein Plaintiff concedes that he

7    has no actual knowledge of any of the Defendants ever trespassing onto his property other than

8    once finding a business card in his yard a few feet from his gate). After leaving his card on

9    Plaintiff's gate, Inspector Flannagan sent Plaintiff a letter a few days later informing him that he

10   would like to speak with him. *See* Flannagan Decl. (dkt. 160-4) at 2.

11        Shortly thereafter, code enforcement authorities received another complaint – this time

12   concerning overgrown trees and a fence that was too tall (both of which were in violation of local

13   municipal codes), this time on the front side of Plaintiff's property. Defs.' Mot. (dkt. 160), Exh. 3

14   (hereafter "Gibilisco Decl.") (dkt. 160-3) at 3. Inspector Gibilisco found that Plaintiff's cypress

15   trees were so tall and overgrown that they were acting in the nature of a fence and that they were

16   too high for the front setback of the property, thereby constituting another violation of the local

17   municipal code; accordingly, he took photographs of the overgrown vegetation from the public

18   sidewalk, and he never entered Plaintiff's property. *Id*. At no point did Inspector Gibilisco threaten

19   Plaintiff or attempt to solicit a bribe from him. *Id*. at 3, 4. Once again, Plaintiff conceded that he

20   had no evidence that would lead him to "draw the conclusion that [Inspector] Gibilisco had

21   trespassed." *See* Joseph Depo. (dkt. 160-2) at 9. Similarly, Plaintiff conceded that he had never

22   been asked for a bribe. *See id*. at 10 (Q: "Did he ever ask you to give him money?" A: "No.").

23        Code inspection authorities then sent Plaintiff another letter informing him that he was in

24   violation of San Jose Municipal Code Sections 20.10.030, 20.30.010B, 20.30.500, 20.30.600;

25   Plaintiff was directed to take corrective action on or before December 14, 2018, including the

26   removal of all structures on the side setback that were within 60 feet of the front property line, as

27   well as the removal or shortening of all fencing in the front yard to a height of three feet (which

28   was apparently meant to include the wrought iron fence, the wood fencing on the sides, and the

3

1    overgrown cypress trees). *See* Gibilisco Decl. (dkt 160-3) at 3, 6-10, 12-13.

2         Thereafter, when Inspector Gibilisco re-inspected Plaintiff's property, he confirmed that

3    Plaintiff had in fact reduced the height of the wrought-iron fence at the front of his property, but

4    that he had not altered his cypress trees; accordingly, authorities issued a "compliance order"

5    directing Plaintiff to take further action to bring his property into compliance with the municipal

6    code. *See id*. at 3, 15-18. Plaintiff objected and requested a hearing to dispute the directives and

7    mandates of the compliance order – the hearing took place in May of 2019; however, before the

8    hearing, Plaintiff removed the polyurethane panels, lowered his fence, and pruned his trees. *See id*.

9    at 3-4.

10        A few months later, the hearing officer (Defendant Mollie McLeod) rendered a decision in

11   which she modified the compliance order to the following effect: Plaintiff's violations of certain

12   municipal code provisions (20.10.030, 20.30.010 B, 20.30.500, and 20.30.600) were affirmed

13   requiring corrective action such as to remove unpermitted structures built on the side setback that

14   exceeds the height of the fence and is closer than 60 feet from the front property line, maintaining

15   the fence in the front setback at a height not to exceed three feet, the posts of which were not to

16   exceed four feet, and further pruning of the cypress trees to preserve visibility and to prevent

17   interlocking of the branches into the form and function of a fence. *See* Gibilisco Decl. (dkt. 160-3)

18   at 4, 20-26. Plaintiff once again objected and appealed that decision to an appeals hearing board

19   operated by the city; however, the appeals hearing board subsequently dismissed Plaintiff's appeal

20   as moot because his property was deemed to be compliant by that time, and no penalties or fines

21   were ever ultimately assessed against Plaintiff. *Id*. at 4. He admitted as such himself – he was

22   never required to pay any fine as a result of the events underlying this lawsuit. *See* Joseph Depo.

23   (dkt. 160-2) at 18, 19. In short, after he received the citation notices, Plaintiff removed the

24   polyurethane panels himself, he reduced the height of his fence himself, and he pruned the vines

25   between his trees himself. *See id*. at 11.

26        As a result of this course of events, Plaintiff concedes to have suffered no injury – neither

27   physical, nor mental, nor emotional. *See id*. at 7. Furthermore, he conceded that he never

28   witnessed any of the Defendants trespassing onto his property. *Id*. at 8. He also testified that he

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    has no knowledge that Inspector Flanigan even so much as reached inside his fence when placing

2    his business card on it, let alone setting foot on his property. *Id*. at 24. As mentioned above, he has

3    no evidence that would lead him to conclude that Inspector Gibilisco ever trespassed onto his

4    property; also, Plaintiff admitted that Inspector Gibilisco had never asked him for any money. *Id*.

5    at 9, 10.

6    　　　　　Plaintiff denies having any religious affiliation or – strictly speaking – any religious

7    beliefs, instead, he described himself as subscribing to a more generalized and nebulous

8    spirituality that he explained as being rooted in quantum physics and celestial mechanics as such:

9    
10   　　　　　[A]ctually they're more like spiritual beliefs and those beliefs are embedded in quantum physics in the sense that everything is related and everything is connected. The separation thing is an
11   illusion on the quantum physics level and I believe that plants and trees have consciousness. When I go out in the forest, I can almost, like, feel the consciousness. I think some people mistake that as being
12   fairies or ghosts, but I think there's a collective consciousness among trees and experiments have shown that plants are aware of threat.
13   Using galvanic monitoring of plants, somebody says I'm going to burn you and the plant responds. And we also know that there's
14   certain hormones and transmitters that plants – that are in the human brain or neurotransmitters involved of (sic) transition of though, and
15   we know that some people feel like talking to their plants can help their growth.
16   　　　　　So, I have beliefs that, spiritual beliefs about trees and it's related, again, to quantum physics and it's also related to celestial
17   mechanics. And in terms of trees, we know in Genesis there's the Tree of Life and then there's the Tree of Good and Evil, we know people
18   put up Christmas trees and put presents underneath it. So, belief in that trees have religious, spiritual significance is an age-old religious
19   belief shared by many.

20   　　　　　*Id*. at 16-17.

21   Plaintiff did suggest that he planted 12 cypress trees because he thinks the number 12 has both

22   religious and cosmic significance – citing the fact that there were 12 tribes of Israel, 12 disciples

23   of Christ, 12 hours in (part) of the day, 12 signs of the zodiac, and 12 gods of Olympus – he

24   claims that "12 has been seen as a mystical, magical and religious symbol, and again, it has

25   cosmological significance." *Id*. at 20. He added that "as a reflection of my own beliefs, I planted

26   12 and I made sure it was 12, and then I put [the] Celtic Cross as well as other religious symbols

27   such as a Buddha because I share Buddhist beliefs and those are right there in the front yard

28   between those trees." *Id*. In short, Plaintiff is quite adamant that his feeling towards his trees is not

5

United States District Court
Northern District of California

1    part of any set of religious beliefs – and certainly not part of any organized or recognized religion;

2    instead, to put it in his own words, he describes trees as such: "they're still religious symbols –

3    well, not religious, spiritual. Let's not use the word 'religious,' other people would because it is a

4    religious symbol, for me it's a spiritual . . . to me it's a spiritual symbol that happens to have

5    religious significance." *Id*. at 22. When asked by Defense Counsel if removing the vines prevented

6    him from being able to appreciate "the spiritualness" of his trees – Plaintiff responded, "No. No."

7    *Id*. at 23. Therefore, it appears that the vines, at least, were spiritually insignificant.

8           As a result of the events underlying this case, Plaintiff suggests that nothing has been taken

9    from him – or, to put it in his own words, nothing other than his civil rights and his dignity. *See id*.

10   at 28. It is unclear in what way and by what measure Plaintiff believes to have suffered a

11   diminution of dignity – nowhere in his papers or deposition does that come across in any concrete

12   or non-conclusory manner. As to his civil rights, it is undisputed – and he himself conceded – that

13   he was given notice and a meaningful opportunity to be heard at a hearing which he requested and

14   at which he was given every opportunity to contest the code violation allegations and present

15   evidence (*see id*. at 30-32); he was also afforded an avenue to appeal the hearing officer's decision

16   (*see id*. at 32); he was never coerced or physically threatened (*see id*. at 34-35); and he suffered no

17   loss or damage to his property other than having removed the polyurethane panels himself in order

18   to bring his property back into compliance with the city code (*id*. at 12, 33). In short, he was never

19   made to pay any fines or penalties; no one ever trespassed onto his property; no one ever asked

20   him for a bribe; no one ever threatened or coerced him; he was never made to trim or cut his trees;

21   and, he only made minor alterations to his fence, and to some spiritually insignificant vines such

22   as to comply with the city code. While Plaintiff's SAC was packed with scandalous allegations

23   that, *inter alia*, Inspectors Flanigan and Gibilisco "trespassed" onto his property (calling it an

24   illegal search), and also alleged that Inspector Gibilisco tried to "bribe him," Plaintiff's sworn

25   testimony at his deposition – as set forth above – clearly negated those and other such scandalous

26   allegations and established that they were devoid of any factual basis.

27   //

28   //

United States District Court
Northern District of California

1

**LEGAL STANDARD**

2          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

3    that there is "no genuine issue as to any material fact and that the moving party is entitled to

4    judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the

5    outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

6    material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

7    the nonmoving party. *Id*.

8          The party moving for summary judgment bears the initial burden of identifying those

9    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

10   issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party

11   will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

12   reasonable trier of fact could find other than for the moving party. But on an issue for which the

13   opposing party will have the burden of proof at trial, the moving party need only point out "that

14   there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

15         Once the moving party meets its initial burden, the nonmoving party must go beyond the

16   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

17   genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over

18   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

19   *Anderson*, 477 U.S. at 248. To carry this burden, the non-moving party must "do more than simply

20   show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*

21   *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of

22   evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find

23   for the [non-moving party]." *Anderson*, 477 U.S. at 252 (1986). If the nonmoving party fails to

24   make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*,

25   477 U.S. at 323.

26   //

27   //

28   //

7

**DISCUSSION**

While Plaintiff proceeds *pro se*, and while the court has afforded his pleadings the liberal construction to which *pro se* parties are entitled (interpreting his papers such as to raise the strongest arguments they could possibly suggest), Plaintiff appears to be a sophisticated party. He claims to have a doctorate-level education – a fact that he has trumpeted in nearly every single one of his many filings by peppering them with his credentials. Indeed, Plaintiff has taken profound exception to being once inadvertently called "Mister Joseph" rather than "Doctor." *See* Pl.'s Ltr. (dkt. 139) (wherein Plaintiff addresses the undersigned as such, "Mr. Illman . . . demeaned this Plaintiff by refusing to address him by his proper title of 'Dr.' and in so doing, Mr. Illman encouraged the Defendants to also treat Plaintiff with disrespect during the hearing."). Accordingly, while his pleadings and papers have indeed been construed liberally (as demonstrated below), the court finds that Plaintiff, as the nonmoving party (with respect to Defendants' motion) should be able to comfortably shoulder the burden of identifying, with reasonable particularity, the evidence that he believes precludes Defendants' entitlement to summary judgment. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *cf. Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (explaining that while *pro se* prisoners are exempt from "strict compliance" with the summary judgment requirements, even they are not entirely released from "any obligation to identify or submit some competent evidence supporting" their contentions).

As set forth herein, Plaintiff – who reportedly has a doctorate level education and is not a prisoner – has not even remotely discharged the obligation to identify or submit the sort of competent evidence supporting his contentions that *Soto* makes incumbent on *pro se* prisoners who have no such advantages. Because Plaintiff's efforts fall woefully short in this regard, and because there is no genuine issue of material fact warranting trial on any of his claims, Defendants are clearly entitled to judgment as a matter of law. Further, because Defendants are so clearly entitled to summary judgment, it is manifest that Plaintiff's own motions for summary judgment are wholly meritless and due to be denied by virtue of Defendants' clear entitlement to summary judgment.

United States District Court
Northern District of California

1    Initially, the court will note that Plaintiff's two summary judgment motions are little (if

2    anything) more than a rote rehash of his boisterous complaint in that they too are filled with

3    hyperbole, *ad hominem* attacks, conclusory statements masquerading as statements of fact along

4    with a generous smattering of irrelevant content. *See generally* Pl.'s Mots. (dkts. 110, 120). As for

5    Plaintiff's Opposition to Defendants' motion, it does nothing to identify any competent evidence

6    that could conceivably give rise to even a single genuine issue of material fact that would justify a

7    trial on any of his remaining claims. *See generally* Pl.'s Opp. (dkt. 161) at 8-32. Similarly, once it

8    is stripped of its hyperbole, its *ad hominem* attacks, its conclusory statements, and its irrelevant

9    statements, there is nothing left.

10    Initially, Plaintiff incorrectly contends that Defendants Sykes, Hughley, McLeod,

11    Flanagan, and Gibilisco have somehow defaulted because of an absurd argument that the City

12    Attorney's office is precluded from representing them (they are city employees being sued for

13    having performed their official duties) due to a purported failure of their counsel to obtain their

14    informed consent in order to authorize legal representation – which, Plaintiff suggests entitles him

15    to summary judgment. *See id*. at 8. Because there is no merit at all to this suggestion, Plaintiff's

16    request for a finding of default is **DENIED**. The remainder of Plaintiff's Opposition is nothing

17    more than a rote rehashing of the exaggerated and conclusory allegations of his operative

18    complaint, with a measure of irrelevant content added for good measure, all of which has either

19    been contradicted by his own deposition testimony, or by undisputed evidence presented by

20    Defendants, or is entirely irrelevant. *Compare* Pl.'s Opp. (dkt. 161) at 9-32) *with* SAC (dkt. 45) at

21    2-45.

22    Before turning to an analysis of Plaintiff's surviving claims in light of the undisputed

23    evidence set forth above, the court will note that Judge Koh previously rendered a series of rulings

24    in this case that should be noted at this juncture. In her Order of March 3, 2020, Judge Koh

25    rendered the following rulings: (1) Plaintiff's first claim for relief was dismissed with prejudice to

26    the extent that it asserts a claim under 42 U.S.C. § 1981; (2) his second claim for relief was

27    dismissed with prejudice in its entirety; (3) his third claim for relief was dismissed with prejudice

28    to the extent that it asserts a Fourth Amendment unlawful search claim against Defendants

9

1    Hughey and the City of San Jose; (4) his ninth claim for relief was dismissed with prejudice to the

2    extent that it asserts a violation of the Ralph Act (Cal. Civ. Code § 51.7); and, (5) his twelfth claim

3    for relief was dismissed in its entirety without prejudice. *See* Order of March 3, 2020 (dkt. 73) at

4    34-35. Plaintiff never ventured to amend the SAC such as to reformulate or re-present his twelfth

5    claim for relief – accordingly, it remains dismissed.

6    **PLAINTIFF'S FIRST CLAIM**

7            Plaintiff's first claim relies on the First Amendment and suggests that his "trees are

8    expressions, symbols of his religious beliefs and are a protected form of speech" and that

9    "Defendants' demand that Plaintiff destroy these trees is not only unlawful and without any legal

10   authority . . . but a violation of the First Amendment: Freedom of religion and freedom of speech .

11   . . Defendants must pay damages to Plaintiff, according to the formula of $2,500 per day per

12   defendant, per cause of action, to compensate for the injuries suffered." SAC (dkt. 45) at 29-30.

13           In order to make out a violation of the Free Exercise Clause, a plaintiff must establish that

14   the challenged conduct resulted in an impairment of his or her free exercise of genuinely held

15   beliefs. *See United States v. Lee*, 455 U.S. 252, 256-57 (1982). However, in evaluating such a

16   claim, courts need to be mindful that "every person cannot be shielded from all burdens incident to

17   exercising every aspect of the right to practice religious beliefs." *Id*. at 261. Indeed, "the right of

18   free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral

19   law of general applicability on the ground that the law proscribes (or prescribes) conduct that his

20   religion prescribes (or proscribes).'" *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990); *see also*

21   *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S.

22   661, 697 n.27 (2010) ("[T]he Free Exercise Clause does not inhibit enforcement of otherwise valid

23   regulations of general application that incidentally burden religious conduct."). Here, there is no

24   genuine issue of material fact because: (1) the San Jose Municipal Code provisions requiring trees

25   to be kept pruned and below a certain height are valid and neutral regulations of general

26   application that do not constitute a constitutionally cognizable or otherwise substantial burden on

27   the exercise of Plaintiff's beliefs as he has described them in his deposition; (2) Plaintiff

28   specifically disavows religion, and claims that his connection to his trees is rooted in a vague and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   indeterminate concept of spirituality, quantum physics, and cosmic mechanics; (3) Plaintiff has

2   failed to demonstrate that any of the actions complained of in his SAC ever actually impinged on

3   any of his beliefs; and, (4) Plaintiff conceded that he was neither even made to cut his trees, or that

4   he was ever assessed any fine or penalty related to his trees.

5         In order to state a free speech claim in this context, Plaintiff must show that the unfettered

6   growth of his 12 cypress trees is conduct "sufficiently imbued with elements of communication"

7   worthy of First Amendment free speech protection. *See Spence v. State of Washington,* 418 U.S.

8   405, 409 (1974). To that end, Plaintiff must demonstrate (1) an "intent to convey a particularized

9   message," and (2) that, "in the surrounding circumstances the likelihood was great that the

10   message would be understood by those who viewed it." *Id.* at 410-11. "[A] narrow, succinctly

11   articulable message is not a condition of constitutional protection," *Hurley v. Irish-American Gay,*

12   *Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995); instead, the message must be

13   "delivered by conduct that is intended to be communicative and that, in context, would reasonably

14   be understood by the viewer to be communicative." *Clark v. Cmty. for Creative Non-Violence*,

15   468 U.S. 288, 294 (1984). Plaintiff has not even alleged any such thing, let alone presented

16   competent evidence in support thereof. To put it mildly, the court is not persuaded that there is any

17   likelihood at all – let alone a "great likelihood" – that the unfettered growth of the 12 cypress trees

18   here would be intended by Plaintiff, or understood by anyone, to be communicative of anything or

19   to any degree. In other words, the record does not indicate that such conduct was either intended to

20   be, or that it would be perceived as being, at all expressive and, therefore, it is undeserving of

21   constitutional free speech protection. Accordingly, for these reasons, as well as those articulated

22   by Defendants (*see* Pl.'s Mot. (dkt. 160) at 15-18), because there exists no genuine issue of

23   material fact related to Plaintiff's free exercise claim or his conclusory free speech assertion

24   connected to his 12 trees, Defendants are entitled to judgment as a matter of law for Plaintiff's

25   First Amendment claim.

26   **PLAINTIFF'S THIRD CLAIM**

27         Through his third claim, Plaintiff contends that Inspectors Gibilisco and Flanigan "twice

28   trespassed into Plaintiff's locked and gated yard," as well as suggesting that Inspector Gibilisco

1    "solicited a bribe and attempted to extort money from Plaintiff," and also that Defendants effected

2    a seizure of his cypress trees. SAC (dkt. 45) at 31-32.

3          The Fourth Amendment does two things: it prohibits unreasonable searches and seizures

4    (*see United States v. Jones*, 565 U.S. 400, 404 (2012) (noting that a *physical* intrusion into a

5    property is a search under the Fourth Amendment); and, it specifies the conditions under which a

6    warrant can be issued. Thus, the Fourth Amendment protects not only one's broad interests in

7    privacy, but also the specific interest in being shielded from *physical* governmental intrusions. *See*

8    *Jones*, 565 U.S. at 406 ("[F]or most of our history the Fourth Amendment was understood to

9    embody a particular concern for government trespass upon the areas ('persons, houses, papers, and

10   effects') it enumerates."); *see also Florida v. Jardines*, 569 U.S. 1, 5 (2013) (noting that in

11   addition to privacy interests, the Fourth Amendment protects citizens' interests in being free from

12   *physical* intrusions).

13         In light of that, it should first be noted that the solicitation of bribes and the effectuation of

14   extortion – while being the subject of several criminal proscriptions – are not matters of concern

15   under the Fourth Amendment. It should also not go without mention here that Plaintiff plainly

16   admitted during his deposition that Inspector Gibilisco neither solicited a bribe from him, nor

17   attempted to extort him. More poignantly, Plaintiff admitted during his deposition that he had no

18   knowledge or evidence that either Inspector Flanigan or Inspector Gilibisco ever made any

19   physical entry onto his property – let alone conducted an unreasonable search or seizure therein.

20   Lastly, Plaintiff admitted at his deposition that he was never assessed any fine or penalty related to

21   his 12 cypress trees, or that anyone had ever seized his trees or any of his property. Accordingly,

22   for these reasons, as well as those advanced by Defendants (*see* Defs.' Mot. (dkt. 160) at 18-19),

23   there is no genuine issue of material fact as to this claim and Defendants are entitled to judgment

24   as a matter of law as to Plaintiff's Fourth Amendment claim.

25   **PLAINTIFF'S FOURTH CLAIM**

26         Plaintiff next presents a due process claim that appears convoluted and hopelessly devoid

27   of factual allegation. *See* SAC (dkt. 45) at 33-34. Once stripped of its hyperbole, its conclusory

28   assertions, and its legal pronouncements disguised as factual allegations – all that can be gleaned

United States District Court
Northern District of California

1    is that Plaintiff contends (without explanation) that "[t]he administrative hearing, scheduled by

2    and based on the arbitrary and capricious actions of these Defendants, is a violation of due process

3    and the 5th (as well as the 4th and 14th) Amendments" because "Defendant's (sic) conduct is a

4    direct assault on the Fifth Amendment which protects Plaintiff's rights to due process, as well as

5    life, liberty, and property, against the actions of the government which causes or will cause,

6    infringements of Plaintiff's Constitutional rights and individual liberty . . . Plaintiff has been and

7    continues to be harmed and injured by the conduct of these Defendants." *Id*.

8         To the extent that Plaintiff's conclusory and circular assertion of a deprivation of due

9    process refers to a procedural defect in the administrative proceedings that he requested and

10   enjoyed following the receipt of his citations, he would have needed (at this stage) to come

11   forward with competent evidence of a constitutionally cognizable deprivation by state action as a

12   result of a defective process. Once again, Plaintiff has not even alleged as much, let alone come

13   forward with competent evidence to support such statements. When "plaintiffs have alleged that

14   they were deprived of a constitutionally-protected [liberty or] property interest as a result of state

15   action, due process is implicated and the question becomes what process [they are] due." *See*

16   *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). To answer the question as to what

17   process is due, the Supreme Court has directed courts to consider three factors: (1) the private

18   interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such

19   interest through the procedures used, and the probable value, if any, of additional or substitute

20   procedural safeguards; and, (3) the state's interest, including the function involved and the fiscal

21   and administrative burdens that the additional or substitute procedural requirement would entail.

22   *See Mathews v. Eldridge*, 424 U.S. 319, 332, 355 (1976).

23        Defendants' analysis here gives the matter very short shrift by simply stating in two

24   sentences that the Fifth Amendment's due process guarantee only applies to the federal

25   government, and because the Defendants here are state actors, "Plaintiff's Fourth Claim fails." *See*

26   Defs.' Mot. (dkt. 160) at 19-20. Nevertheless, the court will take up the proverbial laboring oar in

27   order to give substantially more liberal construction to Plaintiff's argument by analyzing it without

28   regard to this pleading defect. The Fourteenth Amendment guarantees that a state cannot "deprive

United States District Court
Northern District of California

13

1    any person of . . . property[] without due process of law." U.S. Const., Amend. XIV. One of the

2    central and undisputed guarantees of due process in our jurisprudence is that, before the

3    government permanently deprives a person of a liberty interest or a property interest, that person

4    will receive – at a minimum – effective notice. *See Mullane v. Cent. Hanover Bank & Trust Co.*,

5    339 U.S. 306, 313 (1950); *see also Tulsa Pro. Collection Servs. v. Pope*, 485 U.S. 478 (1988);

6    *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *United States v. James Daniel Good Real*

7    *Prop.*, 510 U.S. 43, 48 (1993). Indeed, notice is so important because it operates to enable and

8    effectuate the subsequent opportunity to be heard – in part, proper notice is what transforms a

9    mere opportunity to be heard into a *meaningful* opportunity to be heard. *See Mullane*, 339 U.S. at

10   314; *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice

11   under the Due Process Clause is to apprise the affected individual of, and permit adequate

12   preparation for, an impending 'hearing.'"). A meaningful opportunity to be heard, in turn, provides

13   its own benefits, it operates to "minimize substantively unfair or mistaken deprivations." *Fuentes*

14   *v. Shevin*, 407 U.S. 67, 81 (1972). It also operates to preserve the "high value, embedded in our

15   constitutional and political history, that we place on a person's right to enjoy what is his [or hers],

16   free of governmental interference." *Id*. It also preserves a person's dignity to "choose for himself

17   [or herself] whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314. Without

18   proper notice, "[the] right to be heard has little reality or worth." *Id*. Therefore, notice must be

19   "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

20   of the action and afford them an opportunity to present their objections." *Id*.; *see also City of W.*

21   *Covina v. Perkins*, 525 U.S. 234, 240 (1999) (holding the form of notice must be sufficient to

22   ensure that the opportunity to be heard is "meaningful.").

23           Looking past Plaintiff's failure to even allege any defects in either the notice or the

24   procedure attending his hearing and his appeal; the undisputed evidence makes clear that his

25   notice was eminently adequate, that he was afforded a robust and sound procedure such that his

26   opportunity to be heard was eminently meaningful. In fact, so effective was the notice and

27   opportunity to be heard that was afforded to Plaintiff by the City of San Jose, that he was assessed

28   no fines, that his trees remain as overgrown as they were before the receipt of his first citations,

United States District Court
Northern District of California

14

1     and that he admitted during his deposition that he has suffered no damage to any of his property

2     interests, or to his mental state, or to his emotional state. Thus, because the court finds that there

3     exist no genuine issues of material fact that might even conceivably necessitate a trial on this

4     claim, Defendants are entitled to judgment as a matter of law on Plaintiff's fourth claim.

5     **PLAINTIFF'S FIFTH CLAIM**

6                In his sixth claim, Plaintiff contends that – during the administrative hearing process – he

7     was deprived of his Sixth Amendment right to confront and cross-examine the witnesses against

8     him. *See* SAC (dkt. 45) at 34. Of course, the Sixth Amendment, by its express terms, renders its

9     confrontation right applicable, "in all *criminal* prosecutions," as opposed to civil cases and other

10    types of proceedings. *See Austin v. United States*, 509 U.S. 602, 608 (1993) (noting prior decision

11    holding that the Confrontation Clause does not apply in civil cases); *see also United States v.*

12    *Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005) (same); *U.S. Steel, LLC v. Tieco, Inc.*, 261

13    F.3d 1275, 1287 n.13 (11th Cir. 2001) ("Of course, the Confrontation Clause is not applicable to

14    civil cases."). Further, to the extent that Plaintiff's fifth claim can be given liberal construction and

15    rendered into a due process claim such as to merit more discussion, it would be entirely

16    duplicative of the substance of his fourth claim discussed above. In any event, while Plaintiff

17    contended during his deposition that he was "not allowed to directly question anybody" at his

18    administrative hearing (*see* Joseph Depo. (dkt. 160-2) at 30), it is undisputed that he received the

19    hearing he requested upon adequate notice; that he was permitted to attend; that he brought and

20    presented documentary evidence; that he could have brought his own witnesses had he wished to

21    do so; that he was permitted to make arguments; and that he ultimately prevailed in that he was

22    assessed no fines or penalties and that he was ultimately never made to crop, trim, or shorten his

23    12 cypress trees. *Id*. at 30-31. As for the polyurethane panels, the lowering of the wrought-iron

24    fence, and the pruning of the spiritually insignificant vines, he remedied those conditions himself

25    prior to the hearing. Therefore, even giving Plaintiff's "confrontation clause" claim the most

26    liberal construction such as to render it into a procedural due process claim, the undisputed

27    evidence shows that, for the most part, Plaintiff prevailed in that hearing. Indeed, he has said so in

28    his own words at his deposition. *See id*. at 31 (Q: "Did you prevail in that hearing in your view?"

United States District Court
Northern District of California

15

1    A: "For everything except for the three sheets of polyurethane . . .").[1] Accordingly, even when cast

2    into the mold of a procedural due process claim, Plaintiff's fifth claim is devoid of any genuine

3    issue of material fact because one cannot credibly claim to have been deprived of procedural due

4    process following a hearing at which one been provided every right that is countenanced by law.

5    Thus, because Plaintiff's fifth claim is not attended with any genuine issue of material fact which

6    would necessitate a trial, Defendants are entitled to judgment as a matter of law.

7    **PLAINTIFF'S SIXTH CLAIM**

8    　　　　Plaintiff's sixth claim contends that he was subjected to excessive fines. *See* SAC (dkt. 45)

9    at 34-35. However, as set forth above, the undisputed facts in this case are that Plaintiff was never

10   assessed any fines or fees of any sort. He admitted as much during his deposition. *See* Joseph

11   Depo. (dkt. 160-2) at 18, 19. Because no reasonable jury could ever find that not being fined at all

12   constitutes an "excessive fine," Plaintiff's sixth claim cannot be the subject of any genuine issue of

13   material fact warranting a trial, therefore, Defendants are likewise entitled to judgment as a matter

14   of law on this claim.

15   **PLAINTIFF'S SEVENTH CLAIM**

16   　　　　Plaintiff's seventh claim is labeled as a Fourteenth Amendment Claim, however, it is

17   nothing more than an amalgamation and repetition of his other claims with one minor exception.

18   *See* SAC (dkt. 45) at 36-37. To the extent the claim complains of a conspiracy – that is duplicative

19   of claim two (*id*. at 30-31) which was dismissed with prejudice by Judge Koh. To the extent that it

20   complains of "trespass," it is duplicative of claim three, for which Defendants have been awarded

21   judgment as a matter of law herein. To the extent it rehashes Plaintiff's arguments about the

22   religious significance of his trees, it is duplicative of claim one, for which Defendants have been

23   awarded judgment as a matter of law herein. To the extent it accuses Inspector Gibilisco (or

24   anyone else) of bribery or extortion, those assertions have been clearly negated by Plaintiff

25   himself during his deposition (*see* Joseph Depo. (dkt. 160-2) at 10), and, therefore, there is no

26   genuine issue of material fact thereto. Lastly, to the extent that the SAC contains rote mention of

27

28
　　　[1] Of course, failing to prevail on all issues at a hearing does not trigger a due process claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "equal protection" in the abstract, putting aside the fact that Plaintiff has pleaded no concrete

2    allegations of fact thereunder, it is beyond dispute that he has failed to come forward with any

3    evidence in support of anything resembling a discrimination claim. Accordingly, for these reasons,

4    as well as those articulated by Defendants (*see* Defs.' Mot. (dkt. 160) at 21-23), there is no

5    genuine issue of material fact underlying Plaintiff's seventh claim, and Defendants are entitled to

6    judgement as a matter of law.

7    **PLAINTIFF'S EIGHTH CLAIM**

8    Plaintiff's eighth claim attempts to present a claim for municipal liability. *See* SAC (dkt.

9    45) at 37-41. Generally, speaking, "[a] government entity may not be held liable under 42 U.S.C.

10   § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force

11   behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

12   Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694

13   (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must

14   prove '(1) that [the plaintiff] possessed a constitutional right of which [he or] [s]he was deprived;

15   (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

16   plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional

17   violation.'" *Id*. (citation omitted).

18   A plaintiff may establish *Monell* municipal liability under § 1983 even where the

19   municipality does not expressly adopt the alleged policy. *See Webb v. Sloan*, 330 F.3d 1158, 1164

20   (9th Cir. 2003). There are three alternative ways such liability can attach: (1) "if an employee

21   commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the

22   person causing the violation has final policymaking authority;" (*id*.), and (3) "where the failure to

23   train amounts to deliberate indifference to the rights of persons with whom the police [or other

24   officials] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[I]t is not

25   enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."

26   *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate

27   that, through its deliberate conduct, the municipality was the 'moving force' behind the injury

28   alleged." *Id*. At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements

1     of a cause of action; instead, it must contain sufficient allegations of underlying facts" to provide

2     the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of*

3     *Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

4     2011)).

5              That is the precise problem with the SAC – Plaintiff has done nothing more than simply

6     recite the elements of a *Monell* cause of action without supporting them with any hint of concrete

7     allegations of underlying facts. In fact, aside from rote boilerplate, and a handful of rank

8     conclusory statements, the SAC offers nothing by way of concrete allegations in support of a

9     *Monell* claim. Neither has Plaintiff come forward with any evidence in support of his municipal

10    liability contentions. In fact, as explained elsewhere in this decision, Plaintiff has not suffered any

11    constitutionally cognizable injury whatsoever, it is therefore unsurprising that his *Monell* claim

12    amounts to nothing more than a threadbare recitation of the elements of such a claim combined

13    with nothing more than conclusory statements and irrelevant assertions. *See generally* SAC (dkt.

14    45) at 37-41; *see also* Pl.'s Opp. (dkt. 161) at 30-32. Accordingly, in addition to the reasons stated

15    by Defendants (*see* Defs.' Mot. (dkt. 160) at 23-24), and putting aside the fact that the SAC falls

16    woefully short of even stating a claim in this regard, the court finds that because there exists no

17    genuine issue of fact with regard to Plaintiff's municipal liability claim, Defendants are entitled to

18    judgment as a matter of law.

19    **PLAINTIFF'S NINTH CLAIM**

20             In the surviving portion of his ninth claim, Plaintiff asserts violations of the Bane Civil

21    Rights Act, which creates a private right of civil action for any person whose exercise of

22    constitutional rights becomes the subject of interference, or attempted interference, by threat,

23    intimidation, or coercion. *See generally* Cal. Civ. Code § 52.1(b)-(c). More specifically, the Tom

24    Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes, and

25    protects individuals from conduct that might be aimed at interfering with rights that are secured by

26    federal or state law, where such interference is carried out "by threats, intimidation or coercion."

27    *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040-41 (9th Cir. 2018) (citing *Venegas v. County*

28    *of Los Angeles*, 153 Cal. App. 4th 1230, 63 Cal. Rptr. 3d 741, 742 (Cal. Ct. App. 2007)). Thus,

United States District Court
Northern District of California

1    Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights

2    committed by 'threats, intimidation, or coercion.'" *Reese*, 888 F.3d at 1040-41 (citing *Chaudhry v.*

3    *City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1)) Claims

4    under section 52.1 may be brought against public officials who are alleged to interfere with

5    protected rights, and qualified immunity is not available for those claims. *Reese*, 888 F.3d at 1040-

6    41 (*citing Venegas*, 63 Cal. Rptr. 3d at 753).

7         In this regard, as explained herein, Plaintiff has failed to offer any evidence at all that

8    might indicate that he suffered any interference whatsoever with any of his state or federal

9    constitutional rights. Similarly, Plaintiff has also failed to offer any evidence that he has been the

10   victim of any form of threat, coercion or intimidation. In fact, the only competent evidence in this

11   regard is his own testimony to the contrary. *See* Joseph Depo. (dkt. 160-2) at 34-35. Therefore,

12   because there is no genuine issue of material fact underlying what remains of Plaintiff's ninth

13   claim, Defendants are entitled to judgment as a matter of law thereto.

14   **PLAINTIFF'S TENTH & ELEVENTH CLAIMS**

15        In his tenth claim, Plaintiff negligence and willful indifference as to "the violation of

16   Plaintiff's constitutional rights" – however, as has been the case throughout the SAC, Plaintiff's

17   tenth claim is nothing more than a rote recitation of the elements of common law negligence

18   peppered with boilerplate statements about the law. *See* SAC (dkt. 45) at 43-44. The same is true

19   for his eleventh claim which asserts a cause of action for "intentional infliction of emotional

20   distress, malice, [and] harassment." *See id*. at 45.

21        As was the case above, Plaintiff's pleading is wholly devoid of any concrete factual

22   allegations that might underly these claims. They have simply been asserted in rote fashion and

23   then padded with conclusory legal statements and generic boilerplate pretending to be facts.

24   Likewise, he has failed to come forward with any competent evidence that could create a genuine

25   issue of material fact concerning these claims – indeed, his Opposition fails to even address these

26   claims, or to address Defendants' arguments about them, thereby indicating his intention to

27   abandon these claims. *See generally* Pl.'s Opp. (dkt. 161) at 8-32. Thus, for the reasons articulated

28   by Defendants (*see* Defs.' Mot. (dkt. 161) at 25-27), and the fact that Plaintiff appears to have

United States District Court
Northern District of California

1   abandoned these claims, as well as because Plaintiff has failed to come forward with any

2   competent evidence that might give rise to any genuine issue of material fact as to his tenth &

3   eleventh claims, Defendants are likewise entitled to judgment as a matter of law as to these claims.

4   **DEFENDANTS' IMMUNITIES**

5   Defendants also claim that they are entitled to qualified immunity as a matter of law. *See*

6   Defs.' Mot. (dkt. 160) at 27-28. Because the court has already found that Defendants are entitled

7   to judgment as a matter of law as to the entire action due to Plaintiff's failure to come forward

8   with any competent evidence sufficient to create a genuine issue of material fact as to any of his

9   claims, the court finds it unnecessary to reach Defendants' arguments about the applicability of

10   qualified immunity. In other words, because Defendants have already secured all the relief they

11   seek, the court need not address their qualified immunity arguments. *See e.g., Ashwander v. TVA*,

12   297 U.S. 288, 346 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a

13   constitutional question although properly presented by the record, if there is also present some

14   other ground upon which the case may be disposed of.").

15   **CONCLUSION**

16   For the reasons stated herein, Defendants' Motion for Summary Judgment (dkt. 160) is

17   **GRANTED**, and Plaintiff's Motions for Summary Judgment (dkts. 110, 120) are **DENIED**. A

18   separate judgment shall issue.

19   **IT IS SO ORDERED.**

20   Dated: February 13, 2023.

21

22

23   ROBERT M. ILLMAN
     United States Magistrate Judge

24

25

26

27

28

*United States District Court*
*Northern District of California*